1  WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
   CHARLES J. HARDER (BAR NO. 184593)
2  NICHOLAS A. MERKIN (BAR NO. 219604)
   11400 West Olympic Boulevard, Ninth Floor
3  Los Angeles, California 90064-1582
   Telephone: (310) 478-4100
4  Facsimile: (310) 479-1422
   Email: charder@wrslawyers.com
5
   Attorneys for Plaintiffs and Counter-Defendants
6  GRASSHOPPER HOUSE, LLC and
   PASSAGES SILVER STRAND, LLC
7

8

9                 UNITED STATES DISTRICT COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11

12  GRASSHOPPER HOUSE, LLC, a          )  Case No.:
    California limited liability company )  2:09-cv-08128-DMG-PLA
13  doing business as "Passages Malibu," )
    PASSAGES SILVER STRAND, LLC, a     )  MEMORANDUM OF POINTS
14  California limited liability company, )  AND AUTHORITIES IN
                                         )  OPPOSITION TO
15              Plaintiffs,              )  DISCOVERY MOTION TO
                                         )  COMPEL RESPONSES TO
16         v.                            )  INTERROGATORIES
                                         )  WITHOUT OBJECTIONS AND
17  ACCELERATED RECOVERY               )  TO COMPEL FURTHER
    CENTERS, LLC, a Georgia limited      )  RESPONSES TO REQUEST
18  liability company,                   )  FOR PRODUCTION;
                                         )  DECLARATIONS OF
19              Defendant.               )  NICHOLAS A. MERKIN AND
                                         )  CHARLES J. HARDER
20                                       )
                                         )
21                                       )  Date:      August 17, 2010
                                         )  Time:      10:00 a.m.
22  _____ )  Location:  Courtroom G, 9th
                                         )  Floor
23  AND RELATED COUNTER-CLAIM          )
    _____ )
24

25                            I.

26                       INTRODUCTION

27       Plaintiffs and defendants are competitors in the drug and alcohol

28  rehabilitation industry.  Plaintiffs are in the process of dismissing all of the claims

                                    -1-
_____
      MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION
                            TO COMPEL
I:\17875\003\Pleadings\opp2m2compelrev1.wpd

1  in their First Amended Complaint in this action.  Yet, defendants persist in

2  pursuing overbroad and overreaching discovery that goes well beyond the issues

3  that may remain in their counterclaim (which is not yet at issue).  Plaintiffs and

4  defendants are market competitors - addiction treatment programs.  Defendants

5  appear to be maintaining their overbroad discovery for the sole purpose of seeking

6  trade secret information and otherwise seeking to gain an unfair competitive

7  advantage over plaintiffs.  Given the speciousness of defendants' discovery and

8  the fact that there is no operative pleading at the moment, the Court should deny

9  defendants' motion to compel.

10                              **II.**

11                 **SHORT PROCEDURAL SUMMARY**

12       A.  The operative pleadings.

13       Plaintiffs filed their initial complaint on November 5, 2009.  As a

14  professional courtesy, plaintiffs' former counsel stipulated to extend the time for

15  defendants to respond to the complaint.   On December 23, 2009, defendants filed

16  their answer and counterclaim.  Defendants stipulated to extend time for plaintiffs

17  to respond to the counterclaim.   On January 29, 2009, the corporate

18  counterdefendants filed a motion to dismiss the counterclaim.  On February 18,

19  2010, certain counterdefendants filed a motion to dismiss the counterclaim.

20  Plaintiffs/counterclaimants retained their current counsel of record, Wolf, Rifkin,

21  Shapiro, Schulman & Rabkin (the "Wolf Rifkin firm") on or about  March 15,

22  2010.

23       The Court granted the motions to dismiss in part, resulting in the filing of

24  the First Amended Counterclaim on  May 10, 2010. The operative complaint in

25  this action, the First Amended Complaint ("FAC") was also filed on May 10,

26  2010.  The FAC asserted four causes of action for unfair competition, false

27  advertising, unjust enrichment and injury to business reputation.  The gravamen of

28

---

-2-

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION
TO COMPEL**

1  the FAC was that defendants used plaintiffs' trademark and trade dress; namely,

2  "Passages," "Passages Malibu," and "Passages Silver Strand" to divert plaintiffs'

3  customers away from plaintiffs' website to defendants' website and engaged in a

4  false and misleading advertising campaign.

5      On July 23, 2010, plaintiffs submitted to defendants a stipulation to dismiss

6  the FAC. (See accompanying Declaration of Charles J. Harder, Ex. "4").

7      Defendants' first amended counterclaim against plaintiffs and certain

8  individuals seeks declaratory relief regarding whether defendants have infringed

9  on plaintiffs' trademarks and trade dress, and seeks an order that defendants' use

10  of the disputed marks does not constitute false designation of origin. Defendants

11  also assert that plaintiffs engaged in false advertising. On July 12, 2010, this Court

12  granted in part plaintiffs/counterdefendants' motion to dismiss the First Amended

13  Counterclaim and ordered that a Second Amended Counterclaim be filed no later

14  than July 27, 2010. It has not yet been filed.

15      Accordingly, as of the date of this opposition, the pleadings are not yet at

16  issue and much of the Counterclaim is now moot because it sought declaratory

17  relief which mirrored the claims in the FAC. Now that the FAC is dismissed and

18  there no longer is a dispute regarding counterclaim count 1 (non infringement), the

19  only remaining counterclaims are count 2 (for declaratory judgment of non-

20  registerability of marks) and count 3 (for federal unfair competition).

21  ### III.

22  ### PLAINTIFFS HAVE NOT WAIVED THEIR OBJECTIONS TO THE
23  ### INTERROGATORIES

24      Federal Rule of Civil Procedure 33(b)(4) provides that, upon a finding of

25  good cause, a Court may excuse the alleged untimely service of discovery

26  responses. There are several bases to justify a finding of good cause that would

27  excuse any alleged untimely service of the interrogatory responses. Discovery

28

-3-

I:\17875\003\Pleadings\opp2m2compelrev1.wpd

1  responses were served on predecessor counsel.  New counsel for plaintiffs (the

2  Wolf Rifkin firm) substituted in for predecessor counsel.  New counsel

3  immediately requested a brief extension of time to serve responses to the initial set

4  of interrogatories and requests for production.  However, not withstanding the fact

5  that the pleadings were not yet at issue, and the Wolf Rifkin firm was brand new to

6  the case, defendants' counsel, James Doroshow, refused any extension of time to

7  serve written responses to the discovery.  At the time, the Wolf Rifkin firm did not

8  have a hard copy of the interrogatories in its possession, and due to a clerical error,

9  only the date of the deadline to serve responses to the requests for production were

10  calendared.  Responses to the requests for production were timely served,

11  however, responses to the interrogatories inadvertently were not served within the

12  30-day statutory period.

13       Under these circumstances, good cause exists to excuse untimely service of

14  the interrogatory responses.

15                                 **IV.**

16  **THE  INTERROGATORY RESPONSES ARE SUFFICIENT GIVEN THE**

17  **STATE OF THE PLEADINGS AND IMPERMISSIBLY EXCEED THE**

18  **NUMBER OF PERMISSIBLE INTERROGATORIES**

19       While subparts may be permitted under certain circumstances, the 17

20  interrogatories propounded by defendants constitute <u>56 separate interrogatories</u> in

21  violation of the applicable rules.  See Plaintiffs' Responses to the Interrogatories

22  attached as **Exhibit "1"** to the accompanying Declaration of Nicholas Merkin.

23  Two examples of defendants' overreaching interrogatories are set forth below.

24  "**INTERROGATORY NO. 10:**

25  Describe fully all instances of actual confusion arising between or
   RELATING TO the MARKS IN ISSUE and/or DEFENDANT,
26  including without limitation, [28] any instance in which any of
   PLAINTIFFS' products or services were mistaken for or confused
27  with any of DEFENDANT'S products or services or vice versa, [29]
   in which PLAINTIFFS were mistaken for DEFENDANT or vice

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION
TO COMPEL**
I:\17875\003\Pleadings\opp2m2compelrev1.wpd

versa, [30] in which PLAINTIFFS were mistakenly associated or affiliated with DEFENDANT or vice versa, [31] in which PLAINTIFFS received COMMUNICATIONS intended for DEFENDANT or CONCERNING DEFENDANT'S products or services, or [32] surveys evidencing any instances of such actual confusion, and identify [33] all PERSONS with knowledge about and [34] all DOCUMENTS CONCERNING any such instances of actual confusion."

This interrogatory contains 7 disparate subparts (identified with brackets as numbers 28-34).

**INTERROGATORY NO. 12 :**

If PLAINTIFFS or their counsel have ever caused a consumer survey or any other study or analysis to be made, on a formal or informal bases, CONCERNING any of the MARKS IN ISSUE, including but not limited to a survey involving the likelihood of confusion RELATING TO said marks, [39] describe in detail the results of that survey, study or analysis and identify [40] all DOCUMENTS CONCERNING and [41] PERSONS knowledgeable about such survey, study or analysis.

These are simply two examples of the <u>many</u> interrogatories by defendants that violate the rules by containing multiple subparts.

Notwithstanding the deficiencies in the interrogatories, and the sheer number of interrogatories, plaintiffs provided substantive responses to all of the interrogatories, with the sole exception of Interrogatory Nos. 15 and 16. Interrogatory No. 15 demands that plaintiffs provide all facts to support their contention that they can "cure" drug or alcohol addition, and to identify all documents and persons who support such contention. Interrogatory No. 16 demands plaintiffs' success rate in curing alcohol or drug addiction, as well as all facts, documents and persons who will support such success rate.

Defendants seek this discovery in connection with their claims that plaintiffs are misleading the public by claiming to "cure" alcohol addiction. However, defendants themselves (and many other competitors, for that matter) make the same and similar claims. Defendants' own website advertising states:

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL**

1      "put alcohol addiction <u>behind you for good</u>."

2      "you can choose Accelerated Recovery Centers' non 12 Step treatment and

3      counseling program and <u>stop drinking for good</u>...."

4      "with success rates up to 8 times the national average, Accelerated offers a

5      <u>permanent solution</u> to the problem of alcoholism."

6      "At your 1 year anniversary, <u>you are done</u>.  <u>You are recovered</u>."

7  See Harder Decl., Ex. "5" (emphasis added.)  Given that defendants make the

8  **same** claims that they accuse plaintiffs of making, their discovery is nothing but a

9  thinly disguised tool designed to gain confidential information concerning a

10  competitor.  This kind of discovery should not be condoned, especially because

11  the First Amended Complaint is being dismissed, and the counterclaim is still not

12  at issue.

13  **V.**

14  **THE DOCUMENT DEMANDS ARE OVERBROAD AND PREMATURE**

15      The document demands impermissibly seek attorney work product, such as

16  all documents relied upon in preparing the complaint (Request for Production No.

17  1); all documents relied upon in preparing an answer (Request for Production No.

18  2 (also premature as no answer has yet to be prepared); all document used in

19  preparing a motion to dismiss (Request for Production No. 3); all documents and

20  exhibits intended to be used in trial (Request for Production No. 79); documents

21  relied upon by experts (Request for Production No. 72); reports prepared by

22  experts (Request for Production No. 73); documents provided to experts (Request

23  for Production No. 74); documents provided by experts to plaintiffs (Request

24  for Production No. 75); curriculum vitae for experts witnesses who may testify at trial

25  (Request for Production No. 76).

26      Other demands have been rendered moot by plaintiffs' dismissal of the First

27  Amended Complaint, such as Request for Production Nos. 6, 7, 8, 9, 10, 11, 15,

28

-6-

1   16, 17, 18, 19, 21, 22, 23, 24, 25, 26, 27, 28, 29, 34, 35, 42, 65, 67, 70, 88, 89
2   (document relating to allegations in the First Amended Complaint).

3        The remainder of the demands are simply designed to obtain confidential
4   and proprietary information concerning a competitor.  Examples include
5   documents relating to the keywords employed by plaintiffs for internet advertising
6   (Request for Production Nos. 34, 35 ); documents relating to advertising
7   campaigns (Requests for Production Nos. 36, 37, 38, 39);  fees charged for
8   treatment (Request for Production No. 42); documents relating to plaintiffs'
9   "curability" of addiction  (Request for Production Nos. 47, 48, 49, 50, 51, 52, 53,
10  91, 92); plaintiffs' marketing and sales plans (Request for Production Nos. 56, 57);
11  plaintiffs' annual advertising expenditures and gross and net profits and refunds
12  (Request for Production Nos. 58, 59, 60, 61, 62, 63); documents concerning
13  criticisms of plaintiffs' good and services (Request for Production No. 64); private
14  information concerning customers who died, had a relapse, or committed suicide
15  (Request for Production Nos. 94, 95).

16       The foregoing list is not exhaustive but is illustrative of the degree to which
17  defendants are misusing the discovery tools to obtain information concerning their
18  competitor.  Until the counterclaim is at issue, and the claims are identifiable,
19  defendants should not be permitted to use discovery to give them a competitive
20  advantage in business.  No protective order can adequately protect plaintiffs given
21  the extremely intrusive nature of the discovery.

22       Plaintiffs have asked defendants to withdraw the motion to compel, based
23  on the pending dismissal of the First Amended Complaint. [Harder Decl., Ex. 4.]
24  Defendants' counsel has not bothered to respond to the request.  Accordingly,
25  plaintiffs were required to incur the time and attorneys fees to prepare this
26  opposition brief.
27  ///
28  ///

-7-

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION
TO COMPEL**

1

## VI.

## CONCLUSION

For the reasons set forth above and in the accompanying Declarations and attached exhibits, plaintiffs request that the motion to compel be denied, and that defendants' request for sanctions be denied.

DATED: July 26, 2010          WOLF, RIFKIN, SHAPIRO
                              SCHULMAN, & RABKIN LLP


                              By:   /s/ Charles J. Harder
                                    CHARLES J. HARDER
                                    Attorneys for Plaintiffs and
                                    Counterdefendants
                                    GRASSHOPPER HOUSE, LLC,
                                    PASSAGES SILVER STRAND, LLC,
                                    CHRIS PRENTISS and
                                    PAX PRENTISS

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL**

I:\17875\003\Pleadings\opp2m2compelrev1.wpd

## DECLARATION OF NICHOLAS A. MERKIN

I, Nicholas A. Merkin, declare:

1.     I am over the age of eighteen and an attorney at law duly admitted to practice before the United States District Court for the Central District of California. I am an associate of the law firm of Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP ("WRSSR"), attorneys of record for plaintiffs and counter-defendants GRASSHOPPER HOUSE, LLC, PASSAGES SILVER STRAND, LLC (collectively, "Plaintiffs"). I have personal knowledge of the following facts, and if called ans sworn as a witness, I could and would testify competently thereto.

2.     Charles J. Harder, Esq. is the attorney handling this matter on behalf of the firm. I was requested on April 11, 2010, to assist with respect to discovery because Mr. Harder was unavailable.

3.     Prior to April 11, 2010, my involvement in this case was a discrete project involving the preparation of a motion for leave to amend Plaintiff's complaint.

4.     I knew that responses to requests for production were due on April 12, 2010. I obtained the discovery file from Mr. Harder's assistant and checked to make sure that responses to requests for production constituted the sole discovery due that date. The file contained <u>only</u> a request for production of documents. Consequently, responses to those requests were all that I prepared and caused to be served on that date.  I was unaware of the need to serve responses to interrogatories on that date.

5.     Immediately upon becoming aware of the need to file responses to interrogatories, I conferred with the client, drafted responses to the interrogatories and served the responses as soon as it was possible to do so. Attached hereto as **Exhibit "1"** is a true and correct copy of the interrogatory responses.

-1-

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL**

I:\17875\003\Pleadings\opp2m2compelrev1.wpd

6.    On or about May 11, 2010, I received a copy of defendant ACCELERATED RECOVERY CENTERS, LLC's ("Accelerated") "meet and confer" letter.

7.    On or about May 18, 2010, I responded to Mr. Doroshow's May 11, 2010 "meet and confer" letter via email and indicated that we would be happy to meet with him in our offices on May 21, 2010 at a mutually agreeable time to discuss the issues raised in his letter or at another date convenient to him.  Mr. Doroshow requested that we come to his office to conduct the meet and confer. As this was not convenient, I relayed this request to opposing counsel and we agreed to "meet and confer" via telephone at 10:00 a.m. on May 21, 2010.

26.    On or about 10:00 a.m. on May 21, 2010, opposing counsel and I conducted our initial "meet and confer" discussion via telephone.  During the course of the conversation, inter <u>alia</u>, Mr. Doroshow and I agreed to continue the "meet and confer" discussions to June 4, 2010.  Immediately upon the conclusion of our telephone conference, I transmitted an email to Mr. Doroshow confirming the same.  The email stated, in pertinent part:

> "Dear Jim:
>
> This shall confirm that we commenced our meet and confer discussions today, May 21, 2010, with respect to the discovery issues raised in your meet and confer letter, dated May 11, 2010.  Although the meet and confer process was conducted in good faith, during the course of these discussions, it became evident that we required additional time to formulate our responses to the contentions raised in your letter.  <u>As such, the parties have agreed to continue these meet and confer discussions, as well as all attendant dates under the applicable Federal Rules of Civil Procedure and related Local Rules, to 10:00 a.m. on June 4, 2010.</u>

-2-

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL**

I:\17875\003\Pleadings\opp2m2compelrev1.wpd

1   Attached hereto as **Exhibit "2"** is a true and correct copy of my email.

2       27. We had an additional meet and confer telephonic conference on June 3,

3   2010, which was followed by written correspondence.  Attached hereto as **Exhibit**

4   **"3"** is a true and correct copy of my June 4, 2010 letter to Mr. Doroshow

5   regarding the interrogatories and the document demand.  However, we did not

6   reach agreement on any of the disputed issues.

7       I declare under penalty of perjury under the laws of the United States of

8   America that the foregoing is true and correct.  Executed on July 26, 2010, in

9   Los Angeles, California.

NICHOLAS A. MERKIN

-3-

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL**

## DECLARATION OF CHARLES J. HARDER

I, Charles J. Harder, declare:

1.    I am over the age of eighteen and an attorney at law duly admitted to practice before the United States District Court for the Central District of California.  I am a partner of the law firm of Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP ("WRSSR"), attorneys of record for plaintiffs and counter-defendants GRASSHOPPER HOUSE, LLC and PASSAGES SILVER STRAND, LLC (collectively, "Plaintiffs").  I have personal knowledge of the following facts, and if called ans sworn as a witness, I could and would testify competently thereto.

2.    Our firm substituted in as counsel of record for Plaintiffs on or about March 15, 2010.  The interrogatories and demand for production that are the subject of this motion were served on my predecessor counsel.  We had not yet received a paper copy of the file at the time the responses were due on April 12, 2010.  The only copies of the discovery requests that our office had received at the time the responses were due were unsigned word versions of the discovery requests attached to an email which, due to a clerical error, did not both get filed and calendared.  Only the requests for production were calendared, and our office timely responded to those requests for production.

3.    Because I was brand new to the case, I asked opposing counsel, James Doroshow, for a brief extension of time to respond to the discovery.  Mr. Doroshow refused the request.  Accordingly, our office served responses to the requests for production, the only discovery that was on our calender to serve.

4.    We had not yet completed our investigation of the facts relevant to the case at the time the discovery was due.  Nor were any of the pleadings in the case yet "at issue."  In fact, as of this date, the counterclaim is still not at issue and plaintiffs are in the process of filing a dismissal of the First Amended Complaint, in its entirety.  A copy of my letter to Mr. Doroshow and draft stipulation for dismissal are attached hereto as **Exhibit "4"**.

-4-

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL**

I:\17875\003\Pleadings\opp2m2compelrev1.wpd

1         5.    Attached hereto as **Exhibit "5"** are true and correct copies of pages

2    from Accelerated Recovery Center's website which were printed on July 23, 2010.

3         I declare under penalty of perjury that the foregoing is true and correct and

4    that this declaration is executed this 26th day of July, 2010 at Los Angeles,

5    California.

6

7    _____

8                CHARLES J. HARDER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-5-

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL**

I:\17875\003\Pleadings\opp2m2compelrev1.wpd