**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| GRASSHOPPER HOUSE, LLC, <u>etc.</u>, et <u>al.</u>,<br><br>         Plaintiffs,<br><br>    v.<br><br>ACCELERATED RECOVERY CENTERS, LLC,<br><br>         Defendant.<br><br>and related counterclaim. | No. CV 09-8128-DMG (PLAx)<br><br>**ORDER RE: DEFENDANTS' MOTION TO COMPEL DISCOVERY AND MOTION FOR ENTRY OF PROTECTIVE ORDER** |

In this action, plaintiff and counterdefendant Grasshopper House, LLC ("Grasshopper"), an operator of an alcohol and drug addiction treatment facility, has asserted claims against competitor defendant and counterclaimant Accelerated Recovery Centers ("Accelerated") for trademark infringement and false advertising under the Lanham Act (15 U.S.C. § 1125(a)), based on the alleged infringing use of keywords in internet advertising and alleged misstatements by Accelerated concerning its alcoholism treatment programs. (Declaration of James E. Doroshow ("Doroshow Decl."), Exhibit ("Exh.") A). Accelerated filed a counterclaim alleging, <u>inter alia</u>, unfair competition under the Lanham Act based upon Grasshopper's allegedly false assertion in

advertising that it can "cure" alcoholism and drug addiction, and its unauthorized use of third parties' keywords in internet advertising. (Doroshow Decl., Exh. B). On July 19, 2010, Accelerated filed a motion to compel Grasshopper to provide further responses to Accelerated's interrogatories and requests for documents (the "Motion to Compel"). Accelerated, along with defendants Kevin Kelly and Jan Watkins Kelly, also filed a Motion for Entry of Protective Order (the "Motion for Protective Order"). On July 26, 2010, Grasshopper filed an Opposition to the Motion to Compel. On August 3, 2010, Accelerated filed a Reply. Grasshopper did not oppose the Motion for Protective Order. See Local Rule 7-12.

Accelerated has established that it served interrogatories and requests for production of documents on Grasshopper on March 8, 2010, that Grasshopper timely responded to the requests for documents on April 12, 2010, and that Grasshopper belatedly served its responses to the interrogatories on April 23, 2010. (Doroshow Decl. at ¶¶ 7-9, 11). Accelerated's efforts to resolve concerns it had regarding this production did not prove fruitful. Neither was it successful in getting Grasshopper to stipulate to the entry of a protective order concerning the production of information in this action. (Id. at ¶¶ 12-16). The Court also notes that Grasshopper did not deliver its portion of the Joint Stipulation to Accelerated as required by the Local Rules. (Id. at ¶ 17).

As a threshold matter, under Rule 26(b)(1) of the Federal Rules of Civil Procedure, discovery is permitted of "any nonprivileged matter that is relevant to any party's claim or defense." Generally, Rule 26(b) is to be "liberally interpreted to permit wide-ranging discovery of information," even if that information is not ultimately admitted at trial. See Comcast of Los Angeles, Inc. v. Top End International, Inc., 2003 WL 22251149, at *2 (C.D. Cal. July 2, 2003); see also Fed.R.Civ.P. 26(b)(1) ("Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."). Here, the burden is on Grasshopper, as the party resisting discovery, to show that discovery should not be allowed (Comcast, 2003 WL 22251149, at *2 (citing Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975)); it is not up to Grasshopper to decide what Accelerated needs to defend this action. Neither is it the role of the Court in this Motion to determine what evidence the District Judge will actually allow in at a trial in this case. See, e.g., Colonial Life & Accident Insur. Co. v.

Superior Court of Los Angeles County, 31 Cal.3d 785, 791, n. 8 (1982) (quoting Pacific Tel. & Tel. Co. v. Superior Court, 2 Cal.3d 161, 172-73 (1970) ("[Courts] may appropriately give the applicant [for discovery] substantial leeway, especially when the precise issues of the litigation of the governing legal standards are not clearly established [citation]; a decision of relevance for purposes of discovery is in no sense a determination of relevance for purposes of trial.") (brackets in original)).

### A.   Interrogatories

Accelerated asserts that Grasshopper has waived objections to the interrogatories because the responses were not served until April 23, 2010 (i.e., eleven days after the April 12, 2010, response deadline had passed). In the Opposition, Grasshopper explains that the discovery was propounded on March 8, 2010, to its predecessor counsel. Grasshopper's current counsel substituted in a week later, on March 15, 2010, and did not receive a paper copy of the case file prior to the April 12, 2010, response deadline. Although current counsel did receive an emailed version of the discovery requests, due to a clerical error only the requests for production were calendared. Grasshopper's response to the request for production was timely. Current counsel for Grasshopper requested an extension of time to respond to the interrogatories, which Accelerated refused to grant. (Declaration of Charles J. Harder ("Harder Decl.") at ¶¶ 2-3). Grasshopper ultimately provided unverified responses to the interrogatories on April 23, 2010, and provided the verification over a month later. (Doroshow Decl. at ¶ 11).

The Federal Rules of Civil Procedure indicate that a party upon whom interrogatories or requests for documents have been served shall serve a written response within thirty days after service. "A shorter or longer time may be stipulated to under Rule 29 or be ordered by the court." Fed.R.Civ.P. 33(b)(3), 34(b). "Any ground [for an objection] not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed.R.Civ.P. 33(b)(4). Thus, generally, in the absence of an extension of time or good cause, the failure to file a written response to discovery in the time fixed by the rule constitutes a waiver of any objection that Grasshopper might otherwise have had to the particular requests. See Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1473 (9th Cir. 1992). This includes the waiver of otherwise

applicable privileges. See Starlight International, Inc. v. Herlihy, 181 F.R.D. 494, 498 (D. Kan. 1998) (attorney's mistake in calendaring dates on which responses to interrogatories and requests for documents were due is not good cause for missing the deadline). A showing of good cause requires "at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice." Starlight at 496-97 (citation omitted). Rather, a showing must be made that despite due diligence, the scheduled deadline could not be met. "Carelessness is not compatible with a finding of diligence." Id. at 497 (quoting Deghand v. Wal-Mart Stores, Inc., 904 F.Supp. 1218, 1221 (D. Kan 1995)).

Based on the foregoing authority, the Court concludes that Grasshopper's counsel's clerical error in the miscalendaring of the discovery response deadline does not amount to good cause. The Court recognizes, however, that "the protections and sanctions found in the discovery rules are not absolute and contemplate use of judicial discretion." Davis v. City of New York, 1988 WL 42189, at *2 (S.D.N.Y. April 28, 1988). The Court further recognizes that an order deeming all meritorious objections and privileges waived could be "catastrophic" to a party. Walker v. Lakewood Condominium Owners Association, 186 F.R.D. 584, 587 (C.D. Cal. 1999). Accordingly, the Court exercises its discretion to relieve Grasshopper of waiver as to those documents withheld based on the attorney-client privilege and work product doctrine, and concludes that Grasshopper's other objections to the interrogatories are hereby deemed waived.[1]

---

[1] Although Grasshopper has waived all objections to the interrogatories, the Court notes that Grasshopper contends that the interrogatories are comprised of multiple subparts that exceed the limit of 25 interrogatories set by Rule 33(a). The term "discrete subparts" has been construed "as meaning that 'interrogatory subparts are to be counted as one interrogatory . . . if they are logically or factually subsumed within and necessarily related to the primary question.'" Safeco of America v. Rawstron, 181 F.R.D. 441, 445 (C.D.Cal. 1998) (citation omitted). If the subpart is independent of the other question and can "stand alone," it is not subsumed by the first question and can be counted as a separate interrogatory. See Kendall v. GES Exposition Services, Inc., 174 F.R.D. 684, 685-86 (D.Nev. 1997). However, even if the Court accepted Grasshopper's calculation and each purported subpart were treated as a separate interrogatory, the Court in its discretion may grant leave to allow service of additional interrogatories to the extent consistent with the principles set forth in Rule 26(b)(2). See Fed.R.Civ.P. 33(a). After reviewing the interrogatories at issue, the Court concludes that the additional interrogatories (under Grasshopper's calculation), if requested by Accelerated, would be warranted and allowed by the Court in this matter. Accordingly, Grasshopper's contention that Accelerated exceeded the limit of interrogatories is
(continued...)

1  In the Motion to Compel, Accelerated contends that Grasshopper's responses to the interrogatories are deficient because of the following: (1) Grasshopper's responses as to "time of usage of its alleged trademarks" are inadequate with respect to Interrogatories Nos. 1, 3, and 8; (2) Grasshopper's response to Interrogatory No. 13 regarding enforcement actions lacks specificity; (3) Grasshopper failed to identify documents in response to Interrogatories Nos. 1-5, 7, 8, 10, and 14-16, and failed to identify the persons with knowledge in response to Nos. 7-13; (4) Grasshopper gave evasive and incomplete responses with respect to Interrogatories Nos. 4, 9, 10, 11, and 12; and (5) Grasshopper improperly refused to answer based on privacy grounds with respect to Interrogatories Nos. 7, 15, and 16. (See Motion to Compel at 9-15).

The Court has reviewed the challenged interrogatories, as well as the contentions of both parties, and finds that Accelerated's arguments are well taken. First, as Accelerated points out, in response to numerous interrogatories, Grasshopper improperly failed to identify with specificity any relevant documents, and instead vaguely referred Accelerated to its response to the document requests as a whole. This is insufficient. See Fed.R.Civ.P. 33(d) ("[T]he responding party may answer by . . . specifying the records that must be reviewed, *in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could.*") (emphasis added). Grasshopper must identify which specific documents are responsive to which interrogatories. Grasshopper also failed to identify persons with knowledge in response to several interrogatories. Accelerated is entitled to this information. See Fed.R.Civ.P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense -- *including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.*") (emphasis added). Accordingly, Grasshopper must provide supplemental responses with respect to Interrogatories Nos. 1-5, 7, 8, 10, and 14-16 (regarding documents), and Nos. 7-13 (regarding persons).

---

[1](...continued)
rejected.

5

Next, Grasshopper must provide more specific responses to the interrogatories concerning the "time of usage" of the alleged trademarks. For example, Interrogatory No. 1 asks Grasshopper to identify "when [it] first used each of the [trademarks at issue]," to which Grasshopper responded: "At least as early as between Spring and Fall of 2001." (Doroshow Decl., Exh. G at 3-4). This vague time estimate is inadequate as Grasshopper has failed to specify a separate initial usage date for each of the trademarks at issue. (See also Grasshopper's response to Interrogatory No. 3, Doroshow Decl., Exh. G at 7-9). In addition, in response to Interrogatory No. 8, which asks Grasshopper to identify the dollar amount spent on advertising and marketing from the date of first use of the trademarks to the present, Grasshopper responded in relevant part: "Continuously since at least between Spring and Fall 2001, [it] has been paying for advertising on television, print, internet and other media, using the marks at issue, at a cost of millions of dollars." (See Doroshow Decl., Exh. G at 14-15). Again, this vague response is inadequate. Grasshopper must supplement these responses and provide specific dates and dollar amounts to the extent available.

The Court also agrees that Grasshopper must provide more complete answers to Interrogatories Nos. 4, 9, 10, 11, 12, and 13. For example, Interrogatory No. 4 asks for the bases of Grasshopper's contention that the parties use the same or similar marketing channels to sell their products. In its response, however, Grasshopper fails to identify the marketing channels. (See Doroshow Decl., Exh. G at 9-10). Interrogatory No. 9 asks for the identities of others who have registered, applied for registration, or who are using the trademarks claimed by Grasshopper, as well as the dates of registration. In its response, Grasshopper states that it is not aware of the complete list of applicants, and refers Accelerated to the United States Patent and Trademark Office. (See Doroshow Decl., Exh. G at 15-16). As Accelerated explains in the Motion to Compel, Interrogatory No. 9 seeks relevant information that "goes to the strength of the mark, which is a factor when considering trademark infringement," and that Grasshopper's response "does not answer the question of Grasshopper's knowledge, which is relevant not only to the validity of the marks at issue but also to Grasshopper's state of mind when adopting such marks." (Motion to Compel at 12). Grasshopper must specify the identities of all those of whom it is aware that fall

1  within the information requested in these interrogatories.  Grasshopper also fails to identify any
2  "instances of actual confusion" between the products/services of the parties in response to
3  Interrogatory No. 10.  In response to Interrogatory No. 11, which asks for specific information
4  about Grasshopper's licensees, Grasshopper responded that "there have been permissive uses
5  of the marks" by one entity, plaintiff Silver Strand LLC.  (See Doroshow Decl., Exh. G at 16-19).
6  As Accelerated explains in the Motion to Compel, this response is inadequate because
7  Grasshopper does not indicate if Silver Strand is the only permissive user, if an actual license is
8  in place, or the nature of the goods or services with respect to which Silver Strand is licensed.
9  (See Motion to Compel at 13).  Next, Grasshopper fails to provide specific information in response
10 to Interrogatory No. 12, which seeks information about any consumer surveys or studies
11 performed by Grasshopper.  And in response to Interrogatory No. 13, which seeks specific
12 information about Grasshopper's efforts to enforce, police, and protect its trademark rights,
13 Grasshopper only lists parties to which it sent cease and desist letters and against which it filed
14 lawsuits, but does not provide any other information requested, including the status of the
15 disputes. (See Doroshow Decl., Exh. G at 19-22).  As shown, because Grasshopper's responses
16 are lacking, it must supplement the foregoing interrogatories (i.e., Interrogatories Nos. 4, 9, 10,
17 11, 12, and 13), with complete responses that specifically address the information requested.

18         The Court has considered Accelerated's contention that Grasshopper improperly refused
19 to answer based on privacy grounds with respect to Interrogatories Nos. 7, 15, and 16.
20 Interrogatory No. 7 seeks the annual revenue for each product/service sold or otherwise marketed
21 under the trademarks in issue (and requests that Grasshopper identify relevant supporting
22 documents and the persons with knowledge regarding this issue).  (See Doroshow Decl., Exh. G
23 at 13).  Interrogatories Nos. 15 and 16 seek information regarding Grasshopper's contention "that
24 [it is] able to 'cure' drug or alcohol addi[c]tion," and facts regarding its success rate in curing
25 alcohol or drug addiction.  (See Doroshow Decl., Exh. G at 23-25).

26         Although Grasshopper has waived its objections other than the attorney-client privilege and
27 work-product doctrine, the Court nevertheless has balanced Grasshopper's asserted right to
28 confidentiality against the relevance of the information being sought by Accelerated.  See, e.g.,

7

1  Johnson v. Thompson, 971 F.2d 1487, 1497 (10th Cir. 1992) (citing Lukaszewicz v. Ortho
2  Pharmaceutical Corp., 90 F.R.D. 708, 709 (E.D.Wis. 1981)); Ragge v. MCA/Universal Studios, 165
3  F.R.D. 601, 604-05 (C.D. Cal. 1995) (requiring a balance of a party's right to privacy against the
4  importance of the information to the case).  The Court finds that Accelerated's discovery needs
5  here outweigh the undefined concerns of Grasshopper.  In any event, the Protective Order entered
6  concurrently with this Order strikes the appropriate balance between the need for the information
7  and the privacy concerns.  See, e.g., CEH, Inc. v. FV "Seafarer", 153 F.R.D. 491, 499 (D.R.I.
8  1994) ("[W]hile a party does have an interest in nondisclosure and confidentiality of its financial
9  records, this interest can be adequately protected by a protective order.").  Thus, Grasshopper
10 must supplement Interrogatories Nos. 7, 15, and 16 with responsive information.  To the extent
11 these responses involve confidential information, the Protective Order will provide sufficient
12 protection.

### B.   Requests for Documents

The Court now turns to Grasshopper's responses to the requests for documents.  In the Motion to Compel, Accelerated asserts that Grasshopper has produced "only 28 pages of print-outs of Yahoo! and Google searches, and about 450 pages of publicly available documents, namely, the prosecution histories of Grasshopper's federal trademark applications and various court [filings]." (Motion to Compel at 15).  Accelerated contends that this production is inadequate, and that Grasshopper's responses are deficient for the following reasons: (1) Grasshopper failed to produce documents identified in its responses to interrogatories (Requests Nos. 2, 36-39, and 46); (2) Grasshopper improperly withheld documents as privileged with respect to Requests Nos. 5, 7-11, 15, 16-25, 28-29, 33, 36-40, 43, 45, 47-54, 64, 83-84, 91-93, 95, and 97; (3) Grasshopper improperly asserted trade secret protections with respect to Requests Nos. 34, 35, 42, 55-63, 66, 89, 96, and 98; and (4) Grasshopper failed to produce any documents relating to its damages claim with respect to Requests Nos. 65, 67, 70, and 71.  (See Motion to Compel at 15-23).

After reviewing the discovery at issue and the parties' positions, the Court again finds Accelerated's arguments well taken.[2] First, to the extent Grasshopper referred to documents in its responses to the interrogatories, such documents must be produced (i.e., Requests Nos. 2, 36-39, and 46).

The Court next considers Grasshopper's claims of "work product and attorney-client privilege" asserted in response to Requests Nos. 5, 7-11, 15, 16-25, 28-29, 33, 36-40, 43, 45, 47-54, 64, 83-84, 91-93, 95, and 97. An entity that withholds discovery materials based on a privilege must provide sufficient information (i.e., a privilege log) to enable the requesting party to evaluate the applicability of the privilege or other protection. Fed.R.Civ.P. 26(b)(5); see Clarke v. American Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992). Failure to provide sufficient information may constitute a waiver of the privilege. See Eureka Financial Corp. v. Hartford Acc. & Indem. Co., 136 F.R.D. 179, 182-83 (E.D. Cal. 1991) (a "blanket objection" to each document on the ground of attorney-client privilege with no further description is clearly insufficient); Peat, Marwick, Mitchell & Co. v. West, 748 F.2d 540, 542 (10th Cir. 1984) (attorney-client privilege waived when defendant did not make a timely and sufficient showing that the documents were protected by privilege). The attorney-client privilege applies only when "(1) legal advice is sought (2) from a professional legal advisor in his capacity as such, and (3) the communications relating to that purpose (4) are made in confidence (5) by the client." Griffith v. Davis, 161 F.R.D. 687, 694 (C.D. Cal. 1995). Here, Grasshopper has set forth no evidence establishing that counsel was contacted for the purpose of providing legal advice about the documents to which it is objecting, and has failed to produce a privilege log identifying the documents withheld subject to this privilege.[3] Thus,

---

[2] The Court has taken into account Grasshopper's contention that many document demands are "rendered moot by plaintiffs' dismissal of the First Amended Complaint." (Opposition at 6). Counsel for Accelerated explains in the Reply, however, that although Grasshopper offered to dismiss the First Amended Complaint, Accelerated would only agree to the dismissal if it were with prejudice and if Grasshopper paid Accelerated's fees. To date, it appears that no agreement concerning the proposed dismissal has been reached. (See Doroshow Repy-Declaration at ¶¶ 2-4). No request for dismissal has been filed with the Court. Accordingly, contrary to Grasshopper's assertion, there is no indication that any discovery requests are now moot.

[3] Although Grasshopper contends in the Opposition that Requests Nos. 1, 2, 3, 72-76, and (continued...)

the purpose of the privilege -- to protect disclosures necessary to obtain informed legal advice and to encourage "full and frank disclosure by the client to his or her attorney" -- has not been shown to be implicated here. Clarke, 974 F.2d at 129.

Neither can the Court conclude that the work product doctrine protects any of the requested documents or information. Rule 26(b)(3) of the Federal Rules of Civil Procedure may "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney . . . concerning the litigation." The work product doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." United States v. Adlman, 134 F.3d 1194, 1196 (2nd Cir. 1998) (quoting Hickman v. Taylor, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). Furthermore, "[t]o be entitled to the protection of the work product rule, the material must have been generated in preparation for litigation. The prospect of future litigation is insufficient." Whitman v. United States, 108 F.R.D. 5, 9 (D.C. N.H. 1985). Absent a showing by Grasshopper that documents were generated in preparation of litigation, this doctrine does not shield the requested documents. Accordingly, with respect to Requests Nos. 5, 7-11, 15, 16-25, 28-29, 33, 36-40, 43, 45, 47-54, 64, 83-84, 91-93, 95, and 97, Grasshopper must supplement its responses and produce all non-privileged documents that are responsive to these requests. Grasshopper must also produce a detailed privilege log as to those documents, if any, that it is withholding based on its assertion of the attorney-client privilege and/or work-product doctrine.

Next, the Court considers Grasshopper's "trade secrets" objection asserted in response to Requests Nos. 34, 35, 42, 55-63, 66, 89, 96, and 98. These requests seek documents such as those relating to keywords (Requests Nos. 34 and 35), documents relating to Grasshopper's fees charged for treatment services (Request No. 42), organizational charts identifying certain corporate officers, directors, and employees of Grasshopper (Request No. 55), documents relating to annual advertising expenditures (Request No. 58), and documents relating to projected future

---

[3](...continued)
79 "impermissibly seek attorney work product" and are "premature" (Opposition at 6), none of these particular requests are at issue in the Motion to Compel.

sales and profits (Request No. 66). As mentioned above, the Protective Order entered concurrently with this Order is sufficient to safeguard any responsive confidential information. Accordingly, Grasshopper must supplement its responses to Requests Nos. 34, 35, 42, 55-63, 66, 89, 96, and 98, and provide all responsive documents in its possession, custody, or control.

Lastly, the Court considers Accelerated's contention that Grasshopper has failed to produce any documents relating to its damages claim with respect to Requests Nos. 65, 67, 70, and 71. In response to these requests, Grasshopper indicates that it has not completed its damages calculation, and instead refers Accelerated to its initial disclosures. (See Doroshow Decl., Exh. F at 19-20). The Court concludes that due to the relevance of the requested information, Grasshopper must substantiate its damages claim and provide Accelerated the available responsive documents. Thus, Grasshopper must supplement its responses to Requests Nos. 65, 67, 70, and 71.

Based on the foregoing, IT IS ORDERED THAT:

1. Accelerated's Motion to Compel is **granted**. Consistent with the Court's discussion set forth supra, Grasshopper is ordered to: (a) provide all supplemental responses to Accelerated's Interrogatories that are the subject of this Motion, **without objection** (see Fed.R.Civ.P. 33(b)(4); Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1473 (9th Cir. 1992)), **no later than ten (10) court days from the filing date of this Order**; and (b) provide all documents in its possession, custody, or control, responsive to the document requests that are the subject of this Motion, **no later than ten (10) court days from the filing date of this Order**. Grasshopper shall also produce a detailed privilege log as to those documents, if any, that it is withholding based on its assertion of the attorney-client privilege and/or work-product doctrine. To the extent Grasshopper produces any document or other information that is designated confidential in nature, such document or information may be produced pursuant to the Protective Order entered concurrently with this Order. Concurrently with this production of documents, Grasshopper shall submit a declaration, signed by a corporate officer under penalty of perjury, that all responsive documents in its possession, custody or control have been produced.

2.    Accelerated's Motion for Entry of Protective Order is **granted**. Concurrently with this Order, the Court will issue the proposed Protective Order submitted by Accelerated, **as modified by the Court**.

3.    Accelerated seeks monetary sanctions against Grasshopper in the amount of $44,358 -- based on approximately 108 hours of attorney time -- pursuant to Fed.R.Civ.P. 37(a)(5)(A), which authorizes the Court to order that the party whose conduct necessitates the motion to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. Based on its review of the documents filed in connection with the Motion to Compel, the Court awards Accelerated the amount of $5,000, which it finds to be the reasonable expenses, including attorney's fees, necessary to bring this straight-forward motion.[4] Grasshopper shall submit this amount to Accelerated **no later than ten (10) court days from the filing date of this Order**.

**IT IS SO ORDERED**.

DATED: August 27, 2010

                                  /s/ Paul L. Abrams
                                PAUL L. ABRAMS
                        UNITED STATES MAGISTRATE JUDGE

---

[4] As no hearing was held in connection with this Motion, it was not necessary for Accelerated to make an appearance.