# EXHIBIT A

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 2 of 110   Page ID
#:3942
Case 2:09-cv-08128-DMG-PLA   Document 95-3   Filed 10/05/10   Page 1 of 16   Page ID
#:3715

1   James E. Doroshow (State Bar No. 112920)
        jdoroshow@foxrothschild.com
2   Alan Chen (SBN 224420)
        achen@foxrothschild.com
3   FOX ROTHSCHILD LLP
    1800 Century Park East, Suite 300
4   Los Angeles, CA 90067-3005
    Tel 310.598.4150 / Fax 310.556.9828

5

6   Attorneys for Defendant/Counterclaimant
    Accelerated Recovery Centers, LLC

7

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11

| 12  GRASSHOPPER HOUSE, LLC, a | Case No. CV09-08128-DMG (PLAx) |
|---|---|

12   GRASSHOPPER HOUSE, LLC, a
     California limited liability company
13   doing business as Passages Malibu,
     PASSAGES SILVER STRAND, LLC,
14   a California limited liability company,

15              Plaintiffs,

16         v.

17   ACCELERATED RECOVERY
     CENTERS, LLC, a Georgia limited
18   liability company,

19              Defendant.

20

21

22

23

24

25

26   And Related Counterclaims.

27

28

Case No. CV09-08128-DMG (PLAx)

**DISCOVERY MATTER**
**MAGISTRATE PAUL L. ABRAMS**
**(LOCAL RULE 37)**

DECLARATION OF JAMES E.
DOROSHOW IN OPPOSITION TO
PLAINTIFFS' MOTIONS TO COMPEL
FURTHER RESPONSES TO
INTERROGATORIES AND
PRODUCTION OF DOCUMENTS;
AND IN SUPPORT OF
ACCELERATED'S REQUEST FOR
MONETARY SANCTIONS

Hearing Date:  October 26, 2010
Time:          10:00 a.m.
Courtroom:     Courtroom G, 9th Floor

Discovery Cut-Off: Nov. 1, 2010
Pretrial Conf.:    Jan. 25, 2011
Trial Date:        Feb. 22, 2011

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150   Fax: (310) 556-9828

1  I, JAMES E. DOROSHOW, declare and state as follows:

2  1.   I am a partner at the law firm of Fox Rothschild LLP, attorneys for

3  Defendant/Counterclaimant Accelerated Recovery Centers, LLC ("Accelerated") in

4  this action.  I am duly licensed to practice law in the State of California and the

5  United States District Court, Central District of California.  I know the following

6  facts based upon personal knowledge, and if called to testify as a witness, I could

7  and would testify competently to such facts.

8  <u>The Parties</u>.

9  2.   As it is set forth in the attached Declaration of my client, Kevin Kelly

10  (Exhibit 1 hereto), Defendant Accelerated Recovery Centers, LLC ("Accelerated")

11  is an alcohol treatment provider located in Atlanta, Georgia.  Accelerated

12  specializes in a unique treatment alternative to the traditional 12 step method of

13  treating alcoholism, featuring private, medically-supervised detoxification services,

14  and continuing with intensive individualized treatment and alcoholism counseling

15  programs tailored to the needs and schedules of each of its clients. Kelly Decl ¶ 2.

16  3.   In their Complaint, Plaintiffs Grasshopper House, LLC and Passages

17  Silver Strand, LLC (collectively, "Grasshopper") allegedly they are operators of

18  alcohol and drug treatment centers in Malibu, California.  *See* First Amended

19  Complaint ("FAC").  Based upon information I have obtained in this lawsuit, it is

20  my understanding that Grasshopper is owned and operated by Cross-defendants

21  Chris Prentiss and his son, Pax Prentiss.  In its FAC, Grasshopper claims to own

22  the unregistered marks "passages" and "passages malibu," including the right to

23  exclude others from using such marks in connection with the treatment of addictive

24  disease.  *See* First Amended Complaint at ¶¶ 15-27. [1]

25

---

26  [1]  Grasshopper maintains that Accelerated is engaged in "keyword advertising", and purchasing "sponsored links" so
27  that when Goggle, Yahoo! and Bing users searched the Internet using keywords such as "Passages" or "Passages
Malibu", "sponsored links" would appear in a special section of the Web page, allowing a user who had searched for
28  the term "passages" to click on a link that would take him to the Accelerated Website. Grasshopper alleges that such
keyword advertising constitutes unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), and state
law. (See FAC, D.I. 52, ¶¶ 15-27).

CASE NO. CV09-08128 DMG (PLAx)                                    Declaration of James E. Doroshow

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 4 of 110   Page ID
#:3944
Case 2:09-cv-08128-DMG-PLA   Document 95-3   Filed 10/05/10   Page 3 of 16   Page ID
#:3717

The Oregon Litigation.

4.     It is my understanding that this is the second lawsuit Grasshopper has filed against Accelerated based on allegations that Accelerated has violated the Lanham Act and other unfair competition laws through its use of keyword advertising using the "passages" and "passages malibu" marks. I am informed that Grasshopper filed its first lawsuit against Accelerated in the District of Oregon *in July 2009, more than a year ago.* Copies of the Complaint and docket sheet from the Oregon case are attached hereto as Exhibit 2.

5.     I understand that Grasshopper sued Accelerated in Oregon despite the fact that Accelerated had no contacts there. In his Opinion and Order dismissing the case for lack of jurisdiction, United States District Court Judge Haggerty wrote at page 6: "In fact, it appears the only connection this case has with the State of Oregon is the location of plaintiffs' counsel." A copy of Judge Haggerty's Opinion and Order is attached hereto as Exhibit 3.

The History of Grasshopper's Claims in this Litigation.

6.     As appears of record herein, on November 5, 2009, after the Court dismissed the Oregon case, Grasshopper sued Accelerated again in this Court, again asserting alleged violations of the Lanham Act based on Accelerated's keyword advertising tied to the words "passages" and "passages malibu" on the internet. Based upon my review of the allegations and claims in the Oregon Complaint and those in this action, most of the allegations in the complaint in this action are identical to those in Grasshopper's complaint in the Oregon action. (Compare D.I. 1 to Ex. 2 hereto.)

7.     On December 23, 2009, Accelerated filed an Answer denying the material allegations in Grasshopper's Complaint; together with Counter-claims against Grasshopper and its principals, Chris and Pax Prentiss (collectively, "Prentiss"), alleging, *inter alia*, false advertising under the Lanham Act (15 U.S.C. § 1125(a)) based upon Counterdefendants false assertion that they can "cure"

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150   Fax: (310) 556-9828

3

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150  Fax: (310) 556-9828

1   alcoholism and drug addiction when they know that there is no cure for such

2   addictive diseases.  On May 10, 2010, Accelerated filed its Amended Counter-

3   claims.

4        8.        On February 22, 2010, this Court (the Honorable Dolly M. Gee)

5   entered its Scheduling and Case Management Order for Jury Trial ("Scheduling

6   Order").  In the Scheduling Order, the Court ordered all discovery (including

7   hearings of *all* discovery motions) be completed no later than November 1, 2010.

8   The Court also included the following order with respect to discovery motions:

9              *"Any motion challenging the adequacy of response to*

10             *discovery must be filed, served and calendared sufficiently in*

11             *advance of the discovery cut-off date to permit the responses to*

12             *be obtained before that date, if the motion is granted."*

13             (Emphasis added).

14  *See* Scheduling Order at para. ¶ A. 3, pp. 2-3.

15       9.        Just five months ago, on April 5, 2010, almost a full year after

16  Grasshopper first filed its claims in Oregon, Grasshopper filed a motion for leave to

17  amend its claims in this case.  In the memorandum of points and authorities

18  submitted in support of this motion, plaintiffs' counsel represented that he had

19  recently substituted as counsel and then after "analyzing the facts and the law"

20  determined to seek leave to file the First Amended Complaint, including the same

21  unfair competition allegations related to keyword advertising Grasshopper

22  previously asserted in Oregon and in the original complaint in this case.  (D.I. 43 at

23  page 5 of 6, page *Id.*, #440, lines 2-5.)  Plaintiff's counsel's April 5, 2010

24  declaration in support of the motion similarly recites that the First Amended

25  Complaint reflected his analysis of the facts and the law.  (D.I. 43-1 at page 4 of 5,

26  page i.d .# 444, line 27.)

27       10.       The Court granted the motion for leave to amend, and on May 10,

28  2010, *just four months ago*, Grasshopper filed its First Amended Complaint, which

4

1  includes the same unfair competition allegations that formed the basis for the

2  Oregon case and the original complaint in this case, and which Grasshopper now

3  seeks to dismiss at this late date. (*See* D.I. 52.)

4          <u>Grasshopper's Recently Filed Motion to Dismiss Its First Amended</u>

5          <u>Complaint.</u>

6          11.    On July 23, 2010, Grasshopper's counsel sent me a letter enclosing a

7  proposed stipulation to dismiss its First Amended Complaint. A true and correct

8  copy of this July 23, 2010 letter and proposed stipulation from Plaintiffs' counsel is

9  attached hereto as Exhibit 4.

10         12.    As appears of record herein, Plaintiffs' counsel's July 23, 2010 letter

11 and proposed stipulation (Ex. 3) was sent to me three (3) days before Grasshopper

12 filed its Opposition to Accelerated's Motion to Compel Responses to Accelerated's

13 First Set of Interrogatories and First Set of Document Requests that resulted in this

14 Court's August 27, 2010 Discovery Order sanctioning Grasshopper and ordering

15 Grasshopper to respond fully to my client's outstanding discovery. *See*

16 Grasshopper's Memorandum of Points and Authorities in Opposition to

17 Accelerated's Discovery Motion dated July 26, 2010. Given the timing of

18 Plaintiffs' counsel's July 23, 2010 letter and proposed stipulation, and the filing

19 three (3) days later of Grasshopper's Opposition to my client's Motion to Compel,

20 it is clear that Grasshopper and its counsel offered to dismiss their claims in the

21 hopes of persuading this Court it would not be necessary to respond to a significant

22 amount of my client's outstanding discovery. In fact, among other arguments

23 Grasshopper made in opposing Accelerated's Motion to Compel, even though it

24 had not yet filed a Motion to Dismiss its First Amended Complaint, Grasshopper

25 argued:

26         "Other demands have been rendered moot by Plaintiffs'

27         dismissal of the First Amended Complaint, such as Request for

28         Production Nos. 6, 7, 8, 9, 10, 11, 15, 16, 17, 18, 19, 21, 22,

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150   Fax: (310) 556-9828

5

CASE NO. CV09-08128 DMG (PLAx)                    Declaration of James E. Doroshow

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 7 of 110   Page ID
#:3947
Case 2:09-cv-08128-DMG-PLA   Document 95-3   Filed 10/05/10   Page 6 of 16   Page ID
#:3720

1    23, 24, 25, 26, 27, 28, 29, 34, 42, 65, 67, 70, 88, 89 (document

2    [sic] relating to allegations in the First Amended Complaint)."

3        *Id.* At p. 6:2-7.2.[2]

4    13.    Despite telling this Court in its July 26, 2010 opposition to

5    Accelerated's Motion to Compel it was dismissing its First Amended Complaint,

6    *Grasshopper in fact waited six more weeks to file its Motion to Dismiss.*  In the end,

7    it was not until September 2, 1010, *after a year and a half of litigation and ten*

8    *months after this lawsuit was* filed, that Grasshopper filed a Motion with this Court

9    to dismiss all of its claims as stated in its First Amended Complaint.[3]

10    14.    Notwithstanding the Court's consideration and rejection of this

11    argument, Grasshopper remained defiant.  Thus, even though this Court (Hon.

12    Magistrate Abrams) granted Accelerated's Motion to Compel and ordered

13    Grasshopper, *inter alia*, to "provide all supplemental responses to Accelerated's

14    Interrogatories" that were the subject of the Motion, "without objections," no later

15    than ten (10) court days from the filing date of the Discovery Order (or on or before

16    September 13, 2010), on September 13, 2010, Grasshopper served Supplemental

17    Responses to Accelerated's Interrogatories stating, in two instances (in response to

18    Interrogatories Numbers 7 and 14) that:

19        "The information is relevant only to responding party's

20        first amended complaint.  Responding party has filed a Motion

21        to Dismiss its first amended complaint, which is set for hearing

---

[2]   This Court rejected this argument in its Discovery Order dated August 27, 2010, stated: "To date, it appears no
agreement [among counsel] concerning the proposed dismissal has been reached ... No request for dismissal has
been filed with this Court.  Accordingly, contrary to Grasshopper's assertion, there is no indication that any
discovery requests are now moot."  *See* Discovery Order, p. 9, fn 2.

[3]  The stated basis for Grasshopper's desire to dismiss its claims, *i.e.*, that Accelerated has stopped using keyword
advertising tied to Grasshopper's alleged trademarks, is a pretext.  As stated in my client's attached Declaration
(Exhibit 1 hereto), Accelerated continues to this day to place keyword advertisements on the Google, Yahoo!, and
Bing search engines.  (*See* Kelly Decl. ¶ 2.)  Accelerated's advertisements display when the user searches the
keywords "passages" and/or "passages malibu."  (*Id.*)Currently, as in the past, if one searches Google, Yahoo! or
Bing for the word "passages" or the words "passages malibu", depending on one's location, the time of day, and
other variables contained in those search engines' proprietary algorithms, one may see an advertisement for
Accelerated displayed along with the search results. *Id.* ¶ 3.

CASE NO. CV09-08128 DMG (PLAx)                    Declaration of James E. Doroshow

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150  Fax: (310) 556-9828

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 8 of 110   Page ID
#:3948
Case 2:09-cv-08128-DMG-PLA   Document 95-3   Filed 10/05/10   Page 7 of 16   Page ID
#:3721

1   on October 4, 2010.  If the motion is granted, the interrogatory

2   will be moot.  If the motion is denied, then responding party

3   will promptly provide the information required."

4   A true and correct copy of pages 13-14, 27-28 of Grasshopper's September 13,

5   2010 Supplemental Responses to Accelerated's First Set of Interrogatories is

6   attached hereto as Exhibit 5.  *To this day*, Grasshopper is still not in complete

7   compliance with this Court's Discovery Order.  Thus, among other records clearly

8   missing from Grasshopper's supplemental production, Grasshopper has failed to

9   produce underlying financial and accounting records since Grasshopper has merely

10  produced summaries of its revenues and profits, not the supporting accounting

11  records themselves.

12         16.     Thus, for its part, Grasshopper has refused to respond to Accelerated's

13  discovery (*even in the face of a Discovery Order directing it to comply*) while now

14  demanding (months after my client's responses were served) that Accelerated

15  respond fully to discovery, including discovery related to Grasshopper's claims as

16  found in its First Amended Complaint, and which Grasshopper has stated it

17  intended to dismiss.

18              The Discovery That Is Now the Subject of Plaintiffs

19              Belated Motions to Compel.

20         17.     Although this lawsuit was filed *almost eleven months ago on

21  November 5, 2009,* Grasshopper has done virtually nothing to prepare this action

22  for trial in February 2011.  In fact, it is apparent Grasshopper never intended to

23  bring this case to trial.  While apparently assuming Accelerated would fold and

24  settle as others had done before it, my office has aggressively defended this action.

25  Not only has Accelerated vigorously defended Grasshopper's trademark claims, it

26  filed counterclaims on its own alleging, *inter alia*, that Grasshopper and its owners

27  (Chris and Pax Prentiss) were engaged in false advertising, including by falsely

28  claiming that they can "cure" alcoholism and other addictive diseases.  However,

7

CASE NO. CV09-08128 DMG (PLAx)                          Declaration of James E. Doroshow

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150  Fax: (310) 556-9828

1   now that Grasshopper realizes it has no support for its trademark claims and is

2   facing serious liability on Accelerated's false advertising claims, Grasshopper is

3   now asking the Court to allow it to dismiss its claims in the hope this will force a

4   global resolution of the entire litigation.[4]

5        18.     While my client and my office have been busy trying to prepare this

6   case for trial, including serving and moving to obtain written discovery, as well as

7   taking depositions, for its part, Grasshopper has done virtually nothing in ten

8   months to prosecute this action.  In fact, until September 2010, two months before

9   the November 1, 2010 discovery cutoff, Grasshopper merely served two sets of

10  interrogatories (one on behalf of Plaintiff Grasshopper and a second on behalf of

11  Plaintiff Silver Strand); as well as one set of document requests (on behalf of

12  Grasshopper).

13       Grasshopper's First Set of Interrogatories (Nos. 1-25).

14       19.     On April 23, 2010, *over five months* ago Plaintiffs served Accelerated

15  with Grasshopper's First Set of Interrogatories.  These interrogatories, *which are*

16  *not the subject of Grasshopper current Motion to Compel*, relate to Accelerated's

17  thirteen affirmative defenses in this action, including Grasshopper's request for

18  information relating to facts, witnesses and documents that support my client's

19  affirmative defenses.  Accelerated responded to these interrogatories on *June 4,*

20  *2010, over four months ago.  For two months, Accelerated heard nothing from*

21  *Grasshopper relating to this discovery.*  In fact, as shown above, during this two

22

23  ────────────────────────

[4] Grasshopper knows Accelerated is being defended by an insurer in this litigation.  The reason why it now wants to
24  dismiss its claims one month before the discovery cutoff and four months before trial is because it hopes that by
    dismissing its claims, this will stop Accelerated's insurer from continuing to fund this litigation and force
25  Accelerated to settle its counterclaims.  If this were not already clear enough from the manner this litigation has been
    conducted by Grasshopper, it has now been laid to rest by the conduct of Grasshopper and its counsel after
26  Grasshopper filed it Motion to Dismiss its First Amended Complaint.  Indeed, after Grasshopper filed its Motion,
    Chris Prentiss and his counsel began a series of highly unethical *ex parte* communications with Accelerated's insurer
27  trying to convince the insurer to settle the litigation and stating that Accelerated was somehow being unreasonable in
    refusing to settle.  While my office has requested Prentiss' counsel to meet in advance of filing a motion for attorney
28  discipline based upon this ethical violation, counsel have failed to do so.  A true and correct copy of an email that I
    understand Chris Prentiss recently sent to my client's insurer (Hanover) after Plaintiffs filed their Motion to Dismiss
    is attached hereto as Exhibit 6 showing the improper *ex parte* communications with our insurers.

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150   Fax: (310) 556-9828

8

1   months of inactivity (*i.e.*, on July 23, 2010), Grasshopper's counsel contacted my

2   office proposing to dismiss its First Amended Complaint,

3       20.     Nevertheless, while Grasshopper was proposing to dismiss its claims,

4   and while refusing to respond to Accelerated's discovery (including arguing to this

5   Court in its *July 26, 2010* Opposition to Accelerated's Motion to Compel that it

6   need not respond to Accelerated's discovery because it was "moot" because of

7   Grasshopper's decision to dismiss its First Amended Complaint), Grasshopper

8   pressed my client for additional responses to Grasshopper's interrogatories, *even*

9   *though they related solely to Accelerated's defenses to Grasshopper's claims.*

10      21.     *On August 3, 2010*, over two months after Accelerated responded to

11  the discovery from my client, and while Grasshopper was refusing to respond to

12  any discovery relating to its claims, Grasshopper's counsel sent me an 8-page letter

13  demanding, *inter alia*, that my office confer with Grasshopper to discuss

14  supplementing its interrogatory responses relating to its affirmative defenses.  A

15  true and correct copy of counsel's August 3, 2010 letter is attached hereto as

16  Exhibit 7.

17      22.     If this were not unusual enough, when I made myself available to meet

18  with opposing counsel, and prepared myself to discuss this discovery with

19  opposing counsel, Grasshopper's counsel appeared at our August 20, 2010 meet

20  and confer and advised me *for the first time that he no longer needed the discovery*

21  *because Grasshopper intended to file a Motion to Dismiss its First Amended*

22  *Complaint.*  Immediately following the August 20, 2010 meeting, I sent

23  Grasshopper's counsel (Nicholas Merkin) the following confirming email:

24          "Your August 3, 2919 Correspondence and My Client's

25          Discovery Responses.  Even though you asked me to prepare

26          to discuss the discovery issues with you addressed in your

27          August 3rd correspondence, and I took time to prepare to do so,

28          you told me this morning that, because your client now

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150  Fax: (310) 556-9828

9

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 11 of 110   Page ID
#:3951
Case 2:09-cv-08128-DMG-PLA   Document 95-3   Filed 10/05/10   Page 10 of 16   Page ID
#:3724

1    intended to file a motion to dismiss it claims, you considered

2    any issues related to our interrogatory responses to be "moot."

3    As such, I now consider this issue dead.  In terms of my

4    client's documents, you insisted that you still needed some

5    documents from my client because our Counterclaims

6    continued.  However, when I asked you to inform me which of

7    your document requests you wanted documents for, you

8    indicated you could not tell me and gave no indication that you

9    would parse the discovery to take into account the fact that you

10   now wanted to dismiss your affirmative claims.

11   A true and correct copy of my August 20, 2010 email to Mr. Merkin is

12   attached hereto as Exhibit 8.

13         23.     Even though Grasshopper initially asked to meet to discuss

14   Accelerated's responses to Grasshopper's interrogatories, there has never been any

15   follow-up, including any request to respond further to these interrogatories.  Thus, I

16   now understand them to be without dispute as outlined in my August 26, 2010

17   email.  (Exhibit 9).

18         Silver Strand's First Set of Interrogatories (Nos. 1-13).

19         24.     On April 23, 2010, *over five months ago*, Plaintiff Silver Strand also

20   served Accelerated with a set of interrogatories.  These interrogatories, *which are*

21   *now the subject of one of Grasshopper's two Motions to Compel*, relate to

22   Accelerated's counterclaims, including asking for facts and witnesses that support

23   Accelerated's counterclaims.  *Accelerated also responded to this discovery on June*

24   *4, 2010, four months ago.*  However, even though Grasshopper asked Accelerated

25   to confer about Grasshopper's interrogatories in August 2010, and Silver Strand is

26   represented in this action by the same counsel as Grasshopper, *I never heard*

27   *anything from Silver Strand's counsel relating to these interrogatory responses,*

28

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150  Fax: (310) 556-9828

10

CASE NO. CV09-08128 DMG (PLAx)                    Declaration of James E. Doroshow

1    *including in counsel's August 3, 2010 correspondence asking that Accelerated meet*

2    *to discuss Plaintiffs' other written discovery.*[5]

3         25.    Instead, *it was not until September 20, 2010, six weeks before the*

4    *November 1, 2010 discovery cutoff, and almost four months after Accelerated*

5    *responded to Silver Strand's Interrogatories, that Grasshopper first asked me to*

6    *meet to discuss Accelerated responses to these Interrogatories.*   At that time, Silver

7    Strand's counsel sent me a letter stating for the first time that, in his opinion, "very

8    little" information had been provided in response to "Grasshopper's [sic]

9    interrogatories," and that his office had purportedly been "waiting months for

10   responses;" and demanding "[f]ull and complete" responses within five days.  In

11   fact, as noted, I heard nothing from Silver Strand's counsel on my client's

12   discovery responses for over four months after responding to Silver Strand's

13   interrogatories.  A true and correct copy of Silver Strand's counsel's September 20,

14   2010 letter to me is attached hereto as Exhibit 10.[6]

15        26.    The next day, on September 21, 2010, I met with Silver Strand's

16   counsel at his office before a court reporter.  Remarkably, *even though I had heard*

17   *nothing from Silver Strand's counsel on the subject of Silver Strand's*

18   *interrogatories for almost four months after they were served on June 4, 2010,*

19   Silver Strand's counsel (Charles J. Harder) stated during the meet and confer that

20   his client "always expected full and complete responses to the Interrogatories."  A

21   true and correct copy of relevant pages of the September 21, 2010 transcript

22   containing Mr. Harder's comments are attached hereto as Exhibit 11.

23

24   [5]  In a transparent and fabricated effort to try to "cover its tracks," Grasshopper's counsel sent me a letter on September 21, 2010 stating, *inter alia*, that he was supposedly following up on "previous meet and confer efforts

25   regarding this discovery" when in fact there had been none.  A true and correct copy of this September 21, 2010 letter is attached hereto as Exhibit 9.

26   [6]  Contrary to Local Rule 37-1, Silver Strand's letter failed to identify any specific issue on discovery requests in dispute, and failed to state Silver Strand's position other than counsel believed all of the interrogatories were

27   purportedly incomplete.  Accordingly, prior to meeting, I asked Silver Strand's counsel to send me a letter complying with these requirements of the rule.  Counsel failed to do so, instead demanding when I appeared at his

28   office on September 20, 2010 that I spend hours going through each and every discovery request (including 13 interrogatories and 133 document requests) to learn *for the first time* which specific discovery was in dispute.

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150   Fax: (310) 556-9828

CASE NO. CV09-08128 DMG (PLAx)                                    Declaration of James E. Doroshow

27.    Yet, when I asked Mr. Harder why he and his client had waited nearly *four months* after responses were served to raise any concerns about the responses, and to do for the first time on the even of the discovery cutoff, Mr. Harder had no explanation other than to state: "[T]he discovery is still ongoing.  The discover [sic] has not closed.  *I'm allowed to meet and confer with you anytime I want during the discovery period.*" *Id.*

28.    Having done nothing for four months, Silver Strand has now filed this Motion to Compel on October 5, 2010, *less than a month before the November 1, 2010 discovery cutoff*.  Making matters worse, this Court is now being asked to hear Silver Strand's Motion on October 26, 2010, *5 days before the November 1, 2010 discovery cutoff*.  The Motion is clearly untimely and brought in direct violation of the Court's Scheduling and Case Management Order dated February 22, 2010, which provides, in relevant part, that:  *"[a]ny Motion challenging the adequacy of responses to discovery must be filed, served and calendared sufficiently in advance of the [November 1, 2010] discovery cutoff date to permit the responses to be obtained before that date if the motion is granted.*"  *See* Scheduling Order at p. 2, ¶ 3 (emphasis added).

Grasshopper's Document Requests (Nos. 1-133).

29.    Like its two sets of interrogatories, Grasshopper served its First Set of Responses for Production of Documents ("Document Requests") on April 23, 2010, *over five months ago*.  As my client did with Plaintiffs' other written discovery, Accelerated responded to the Document Requests *on June 4, 2010, nearly four months ago*.

30    After serving Accelerated's Responses, I again heard nothing from Grasshopper's counsel asking for any documents to be produced *for two months until August 3, 2010*, when Accelerated's counsel demanded that all responsive documents be produced within fifteen (15) days.  *See* Exhibit 6 hereto.

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150  Fax: (310) 556-9828

12

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 14 of 110   Page ID
#:3954
Case 2:09-cv-08128-DMG-PLA   Document 95-3   Filed 10/05/10   Page 13 of 16   Page ID
#:3727

31.     Yet, as is evident from Grasshopper's Document Requests, many (if not most) of the Requests ask for documents relating to Plaintiffs' claims as stated in their First Amended Complaint. *See e.g.*, Request Nos. 5-22, 49-41, 45, 54, 112-117 (all relating to the term "passages" and other marks that are the subject of Plaintiffs' trademark claim); Request Nos. 23, 37, 131-132 (relating to Accelerated's online advertising and other marketing and sales activities, again all related to Plaintiffs' trademark claim;) Request Nos. 38-39 (relating to customer confusion, also relevant to Plaintiffs' trademark claim); Request No. 42 (relating to Plaintiffs' trademark claims); Request No. 42 (relating to potential customers and their degree of care in selecting a service provider, again relating to Plaintiffs' trademark claim); Request Nos. 46-57 (relating to Accelerated's revenues, profits and customers, again relating to Plaintiffs' trademark claim); and Request Nos. 101 (other lawsuits involving trademark claims against Accelerated).

32.     When I met with Grasshopper's counsel on August 20, 2010, as Grasshopper had done with its interrogatories relating to Accelerated's affirmative defenses, Grasshopper's counsel again told me that since it intended to dismiss its First Amended Complaint, Grasshopper did not need documents from Accelerated relating to Grasshopper's claims. Again, see my August 20, 2010 confirming email to Mr. Merkin's (Exhibit 8, para. 4) quoted in relevant part at paragraph 22 above. At the same time, Grasshopper's counsel was unprepared to parse its Documents Requests to designate any documents it still needed due to the continued pendency of Accelerated's counterclaims, including Accelerated's counterclaim for false advertising under the Lanham Act.

33.     Finally, due to the absence of a protective order at this time, I told Grasshopper's counsel at the August 20, 2010 meeting that, when and if documents were produced which were confidential in nature, the parties would need a protective order in advance of production, if any.[7]

---

[7]   Grasshopper is now trying to argue that the absence of a protective order *is the only reason* Grasshopper didn't

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150   Fax: (310) 556-9828

13

34.   In fact, although a protective order was entered by this Court on August 27, 2010, *Grasshopper did not even send me a meet and confer letter demanding any production until September 20, 2010, three weeks after the protective order was entered and five and one-half weeks before the discovery cut-off in this action.*  See Exhibit 9 hereto.

35.   Moreover, *contrary to the position that Grasshopper is now taking with this Court in its Motion about how it now wants all documents responsive to all 133 of its Requests*, in counsel's meet and confer letter dated September 20, 2010, *Grasshopper's counsel told me that he merely wanted documents relating to Accelerated's counterclaims.*[8]  In Mr. Harder's words: "'Passages' [Grasshopper's] Requests for Production to Accelerated request all documents *that support or relate to each of Accelerated's Counterclaims in this action.*  If no documents are going to be produced, then we request that Accelerated enter into a stipulation stating that it has no documents in its possession, custody or control *that support its Counterclaims.*  Otherwise, the documents should be produced by the end of this week." .

36.   This exact statement was repeated by Mr. Harder at counsel's meet and confer on September 21, 2010.  Again, in Mr. Harder's words:

"We've always expected full and complete Responses to the Request for the Production of Documents *as it pertains to the Counterclaims and all issues that have anything at all to do with the Counterclaims.*

*As to the Interrogatories and document requests that are specific that only deal with the First Amended Complaint only*

---

push for production earlier.  This is clearly inconsistent with my emails following the August 20, 2010 meeting memorializing what was discussed and agreed upon. *Id.,* Ex. 7 (para. 4).
[8]   Remarkably, at the same time that it has refused to engage in discovery relating to its claims because Grasshopper states it intends to dismiss those claims, Grasshopper still insists that Accelerated [albeit belatedly] respond to discovery relating to claims Plaintiffs state they now intend to dismiss.

14

CASE NO. CV09-08128 DMG (PLAx)                              Declaration of James E. Doroshow

1    *... [w]e agree to put that off until after the Court has ruled on*
2    *our motion to dismiss the First Amended Complaint.*"
3    A true and correct copy of the transcript from the September 21, 2010
4    meeting at which Mr. Harder made this statement to me is attached
5    hereto as Exhibit 12.  (See Tr. at p.10, line 15 – p. 11, line 2).
6        37.    Notwithstanding these unequivocal written and oral statement by
7    Grasshopper's counsel to me, *later that same day*, on September 21, 2010,
8    Grasshopper's counsel faxed me a letter stating that he now wanted (within 8 days)
9    "all...responsive, non-privileged documents to each of the 133 document requests."
10   See Exhibit 8 hereto.  When I again conferred with Mr. Harder on September 23,
11   2010, I reminded him that until his September 21, 2010 letter he and his client had
12   only asked for documents relating to Accelerated's Counterclaims, Mr. Harder took
13   the position with me *for the first time* that, in his new view of the world, all of 133
14   documents requests were somehow relevant to Accelerated's Counterclaims.  A
15   true and correct copy of the relevant pages from the September 23, 2010 meeting
16   where Mr. Harder made this statement to me are attached hereto as Exhibit 13.
17       38.    As such, having sat on its rights: (i) for *five months* after serving its
18   document requests *on April 23, 2010*; (ii) *four months* after Accelerated served its
19   responses on June 4, 2010; (iii) *one month* after this Court entered its protective
20   order on August 27, 2010; and (iv) having previously told me that it no longer
21   needed any documents on discovery relating to Grasshopper's claims because of its
22   intent to dismiss them; Grasshopper now appears before this Court *ten months after*
23   *this lawsuit was filed and five days before the November 1, 2010 discovery cutoff*
24   demanding that this Court order Accelerated to produce documents responsive to
25   all 133 separate document requests!
26       39.    Plaintiffs are in fact in the position they are in today because of their
27   own ten months of nonfeasance and delay in this action.  Having sat on their rights
28   until the eve of the discovery cutoff, there is no basis for compelling Accelerated to

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150  Fax: (310) 556-9828

15

CASE NO. CV09-08128 DMG (PLAx)                    Declaration of James E. Doroshow

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 17 of 110   Page ID
#:3957
Case 2:09-cv-08128-DMG-PLA   Document 95-3   Filed 10/05/10   Page 16 of 16   Page ID
#:3730

1   comply with discovery Plaintiffs could have moved on months ago and which they

2   told Accelerated they did not need.

3        40.   I have spent in excess of nine hours conferring and meeting with

4   Plaintiffs' counsel and in drafting this Opposition to Plaintiffs' Motion to Compel.

5   I expect to spend at least an additional two hours preparing to argue these Motions

6   and attending the hearing of these Motions.  My standard hourly rate is $550.

7   Accordingly, my client and my office request the sum of no less than $6,050 to

8   compensate them for the expense of having to oppose these Motions.

9        I declare under penalty of perjury under the law of the United States of

10   America that the foregoing is true and correct.

11        Executed this 4th day of October, 2010 at Los Angeles, California.

12

13                  By:  /s/ James E. Doroshow

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150  Fax: (310) 556-9828

16

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 18 of 110   Page ID
#:3958
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 1 of 80   Page ID
#:3731

# EXHIBIT 1

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 19 of 110   Page ID
#:3959
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 2 of 80   Page ID
#:3732

James E. Doroshow
(SBN 112920)
jdoroshow@foxrothschild.com
Alan Chen
(SBN 224420)
achen@foxrothschild.com
Eric C. Osterberg
*Pro Hac Vice*
eosterberg@foxrothschild.com

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: 310.598.4150
Facsimile: 310.556.9828

Attorneys for Defendant/
Counterclaimant Accelerated Recovery
Centers, LLC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| GRASSHOPPER HOUSE, LLC, a California limited liability company doing business as Passages Malibu, PASSAGES SILVER STRAND, LLC, a California limited liability company, | Case No.: 09-CV-08128-DMG-PLA |
| Plaintiff, | **DECLARATION OF KEVIN M. KELLY IN OPPOSITION TO PLAINTIFF ACCELERATED RECOVERY CENTERS, LLC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT WITHOUT PREJUDICE AND WITHOUT COSTS** |
| vs. | |
| ACCELERATED RECOVERY CENTERS, LLC, a Georgia limited liability company, | Hearing Date:   October 4, 2010 |
| Defendant. | Time:   9:30 a.m. |
| | Courtroom:   7 |
| | Discovery Cut-Off: Nov. 1, 2010 |
| | Pretrial Conf.:   Jan. 25, 2011 |
| | Trial Date:   Feb. 22, 2011 |
| | MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF JAMES E. DOROSHOW FILED UNDER SEPARATE COVER |
| And Related Counterclaims. | |

Case No: 09-CV-08128-DMG-PLA

Decl. of Kevin M.Kelly in Opp. to Plaintiff's
Motion To Dismiss FAC

ST1 15055v3 09/13/10.

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067
Tel:310.598.4150   Fax310.556.9828

I, KEVIN M. KELLY, declare and state as follows:

1. I am the President and Chief Executive Officer of Defendant/Counterclaimant Accelerated Recovery Centers, LLC ("Accelerated"). Except as otherwise stated, I know the following facts based upon personal knowledge, and if called to testify as a witness, I could and would testify competently to such facts.

2. Accelerated is an alcohol treatment provider located in Atlanta, Georgia. Accelerated specializes in a unique treatment alternative to the traditional 12 step method of treating alcoholism, featuring private, medically-supervised detoxification services, and continuing with intensive individualized treatment and alcoholism counseling programs tailored to the needs and the schedules of each of its clients.

3. Prior to this litigation and continuing to this day, Accelerated has been continuously using keyword advertisements on the Internet (including on Google and Yahoo!), that appear when the user searches the keywords "passages" and/or "passages malibu." The only exception to this use was approximately six-week period of time when Accelerated's Google keyword advertising program was disrupted for reasons which we suspect, but cannot fully confirm, involved foul play. Currently, as in the past, if one searches on Google or Yahoo! for the word "passages" or the words "passages malibu," depending on one's location, the time of day, and other variables contained in those search engines' proprietary algorithms, one will see a comparative advertisement for Accelerated displayed along with search results.

4. We have continued to advertise using the terms passages and passages malibu for purposes of comparative advertising in order to not only provide choice to the consumer, but also in an attempt to protect addicted consumers from Grasshopper's false claims of being able to "cure" addictive disease. Although Grasshopper still has no federally registered marks over a year after they filed their first lawsuit against Accelerated, we continue to carefully follow the tenets of

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067
Tel 310.598.4150 Fax 310.556.9828

Case No: 09-CV-08128-DMG-PLA                    2        Decl. of Kevin M.Kelly in Opp. to Plaintiff's Motion To Dismiss FAC

ST1 15055v3 09/13/10

Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 4 of 80   Page ID #:3734

1    nominative fair use in our attempts to protect the consumer while providing choice

2    and comparison in the market.

3           5.     I have read the declaration of Charles J. Harder filed by Grasshopper in

4    support of its motion to dismiss its First Amended Complaint.  Mr. Harder's

5    declaration reflects a fundamental misunderstanding of how keyword advertising

6    works.  The fact that an advertisement for Accelerated may not have appeared when

7    Mr. Harder searched certain terms from a computer in California at a particular time

8    of the day does not mean that Accelerated was not employing advertisements keyed to

9    the terms that are issue in this lawsuit.  Campaign settings, time of day exclusions,

10   geographic exclusions, and temporarily exceeded budgets might all cause an

11   advertisement not to run or appear in connection with a particular user search at any

12   given time or location.

13          6.     I do not keep track of my time in the manner that I understand lawyers

14   do, but I am confident estimating that, as the executive at Accelerated in charge of

15   consulting with defense counsel, and performing different tasks related to this

16   litigation (including gathering documents and information for use in this litigation and

17   discovery), that I have spent over 200 hours of my own time on this matter.  Other

18   members of my staff have also spent significant time in working on this litigation as

19   well, time that could have been spent with our patients or conducting business related

20   to our alcohol treatment center.

21          7.     This is the second lawsuit Plaintiff Grasshopper House, LLC

22   ("Grasshopper") has filed against Accelerated based on allegations that Accelerated

23   violated the Lanham Act and unfair competition laws through its use of keyword

24   advertising keyed to the terms "passages" and "passages malibu."  Grasshopper filed

25   its first lawsuit against Accelerated in the District of Oregon in July 2009, over a year

26   ago.  Copies of the Complaint and what I understand to be the docket sheet from the

27   Oregon litigation Grasshopper filed against Accelerated are attached hereto as Exhibit

28   1.

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067
Tel: 310.598.4150  Fax:310.556.9828

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 22 of 110   Page ID
#:3962
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 5 of 80   Page ID
#:3735

8.      Grasshopper sued Accelerated in Oregon despite the fact that Accelerated has absolutely no contacts with the State of Oregon.  Accelerated is a Georgia limited liability company and operates a treatment center in Atlanta, Georgia.  In his Opinion and Order dismissing Accelerated from the Oregon action for lack of jurisdiction, United States District Court Judge Haggerty wrote at page 6: "In fact, it appears the only connection this case has with the State of Oregon is the location of plaintiffs' counsel."  A true and correct copy of what I understand to be United States District Court Judge Haggerty's Opinion and Order dismissing Accelerated from the Oregon action is attached hereto as Exhibit 2.

9.      Accelerated incurred $9,925 in legal fees defending itself against Grasshopper's claims in Oregon, including in investigating, evaluating and ultimately dismissing the wrongfully filed Oregon litigation.

10.     To date, Accelerated has been defended in this action by the Hanover Insurance Group ("Hanover") under a Businessowners Insurance Policy (the "Hanover Policy").  This Policy was cancelled by Hanover shortly after this litigation began.  Also, the Policy only covers claims made against Accelerated during the Policy Period from May 24, 2009 to May 24, 2010.  As a result, if Grasshopper's claims are now dismissed, and re-filed at a later date, we expect Hanover will claim that any future claims are not covered under the Hanover Policy, and that Hanover has no duty to defend or indemnify Accelerated (its insured) in any subsequent lawsuit.

11.     While Accelerated now has a new General Liability and Businessowners Policy with another carrier that covers insured claims from May 24, 2010 to May 24, 2011, it only applies to covered "offense" committed during the "policy period," and has several exclusions that could exclude coverage if Grasshopper re-files suit against Accelerated in the future.  For example, the new policy excludes infringement of trademark and unauthorized use of another name, including a domain name or metatag.  It is also my understanding that most general liability carriers deny coverage for claims known to the insured before coverage was bound, including the claims

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067
Tel.310.598.4150  Fax310.556.9828

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 23 of 110   Page ID
#:3963
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 6 of 80   Page ID
#:3736

1   Grasshopper has brought against Accelerated in Oregon and California.  Thus, there is
2   also a substantial risk that Accelerated may not be defended or indemnified under its
3   new insurance policy should Grasshopper again sue Accelerated for a third time at a
4   future date.
5       I declare under penalty of perjury under the laws of the United States of
6   America that the foregoing is true and correct.
7       Executed on September 13, 2010, in Atlanta, Georgia.
8
9                                               Kevin M. Kelly
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067
Tel.310.598.4150 Fax310.556.9828

Case No: 09-CV-08128-DMG-PLA                5        Decl. of Kevin M. Kelly in Opp. to Plaintiff's
                                                     Motion To Dismiss FAC

ST1 15055v3 09/13/10

# EXHIBIT 2

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 25 of 110   Page ID
#:3965
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 8 of 80   Page ID
#:3738

**E. J. Simmons**, OSB 75341
ejs@SimmonsTrialPractice.com
621 SW Morrison, Ste. 1300
Portland OR 97205
(503) 221-2000
Facsimile (971) 223-4733

**Bradley Ganz**
brad@ganzlaw.com
Ganz Law PC
PO Box 2200
163 SE 2nd Avenue
Hillsboro, OR 97124
(503) 844-9009

Attorneys for Plaintiffs
Passages Silver Strand, LLC and
Grasshopper House, LLC

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **Grasshopper House, LLC**, a California limited liability company doing business as Passages Malibu, **Passages Silver Strand, LLC**, a California limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>**Accelerated Recovery Centers, LLC**, a Georgia limited liability company, **Renaissance Malibu Foundation**, a California non-profit corporation, and **Baldwin Research Institute, Inc.**, a New York non-profit corporation,<br><br>Defendants. | Civil Case No.: 3:09-CV-778-HA<br><br><br>**COMPLAINT**<br>Trademark Infringement<br>(15 US Code §1125)<br><br><br>DEMAND FOR JURY TRIAL |

Page 1 – COMPLAINT

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 26 of 110   Page ID
#:3966
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 9 of 80   Page ID
#:3739

1.

## PARTIES AND JURISDICTION

Plaintiffs are California limited liability companies. Defendant Accelerated Recovery

Centers, LLC is a  Georgia limited liability company. Defendant Renaissance Malibu

Foundation is a California non-profit corporation. Defendant Baldwin Research

Institute, Inc. is a New York non-profit corporation. This Court has federal-question

subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338

because this is an action for, among other things, trademark infringement and unfair

competition under the Lanham Act, 15 U.S.C. sections 1051 et seq. The Court has

supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.


2.

## FACTS

Plaintiff Grasshopper House, LLC operates a leading alcohol and drug addiction

treatment facility, with a national clientele. For many years, plaintiff Grasshopper

House, LLC has been doing business as Passages and Passages Malibu, and has used

Passages and Passages Malibu as its trademarks. Its marks are registered under

California State Registration numbers 65498 and 65499. It uses the domain name

passagesmalibu.com and maintains a website at http://passagesmalibu.com. Plaintiff

Passages Silver Strand, LLC is affiliated with plaintiff Grasshopper House, LLC, uses the

trademark Passages under a license agreement, and has its Passages Silver Strand mark

registered under California State Registration numbers 65510.


Page 2 – COMPLAINT

Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 10 of 80   Page ID
#:3740

3.

Defendants use various domain names in advertising their alcohol and drug addiction
facilities.

## Overview of Google AdWords Program

4.

Google is a well-known search engine which has emerged as the nationwide leader in
search queries by internet users. Yahoo has the second position in search queries. The
discussion below describes the Google advertising process, and the Yahoo process is
similar.

5.

In addition to retrieving "hits" based on search terms, Google also features "sponsored
links" on search results pages. These "sponsored links" are links that are paid for by
users through Google's AdWords advertising program. AdWords allows users to create
their own advertisements which will be displayed as "sponsored links" on Google's
search results web pages and on other websites that are part of Google's advertising
network. Both the content of the AdWords advertisement and the search terms, known
as "keywords", which trigger the appearance of the advertisement on the Google search
results page and other websites are controlled by the AdWords advertiser.

6.     Each advertisement consists of five parts, all of which are created by the
AdWords advertiser: (i) a headline of 25 or fewer characters; (ii) a first descriptive lines
of 35 or fewer characters; (iii) a second descriptive lines of 35 or fewer characters; (iv) a
display URL of 35 or fewer charaters; and (iv) a destination URL, which is linked to both

Page 3 – COMPLAINT

the display URL and to the advertisement's headline. These user-supplied components
are then incorporated to generate a text advertisement generally of the following form:

> EXAMPLE HEADLINE
>
> Example description line I
>
> Example description line 2
>
> www.??.com

7.      After creating an advertisement, the AdWords user sets up a list of keywords
(words or phrases) to be associated with the given advertisement or ad group. Google
uses the keywords to determine when the advertisement may appear on Google search
results pages, and website pages of a Google search partner or member of the Google
content network.

8.

"Sponsored" AdWords advertisements appear, among other places, on Google search
results pages, either alongside or above the search results, on Gmail webpages, and on
the pages of websites that are members of the Google Network.

9.

Whether an advertisement shows up on a page, and where that advertisement is
positioned in relation to the other advertisements, is determined in large part by the
keywords that the advertiser lists to associate with that advertisement.

10.

Defendants have and continue to use plaintiffs' trademarks, without authorization, in
their internet advertising in an attempt to trade on the goodwill of the plaintiffs'
Trademarks and trade name, trick customers into thinking that defendants' goods and

Page 4 – COMPLAINT

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 29 of 110   Page ID
#:3969
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 12 of 80   Page ID
#:3742

services are associated with plaintiffs. Defendants' unauthorized use of the plaintiffs'
trademarks and trade name also confuses potential customers searching for plaintiffs on
the internet and misdirects them to Defendants' websites instead of the plaintiffs'
websites.

11.

In particular, Defendants willfully and purposefully utilize plaintiffs' trademarks and
trade name in their Google AdWords and Yahoo advertising in such a way as to create a
likelihood of confusion among consumers that their goods and services are associated
with plaintiffs or otherwise lure them to Defendants' websites.

12.

Defendants have used and continue to use plaintiffs' trademarks in their internet
advertising in an effort to confuse the public.

13.

Defendants' websites contain no disclaimers that they are not affiliated or sponsored by
plaintiffs. Defendants' use of the plaintiffs' trademarks and trade name in their internet
advertising is an attempt to trade on the goodwill of plaintiffs' marks and confuse the
consumer.

14.

Upon information and belief, Defendants are willfully and purposely using the plaintiffs'
trademarks and trade name as a targeted keyword phrase in its internet advertising.


**FIRST CLAIM FOR RELIEF**

FEDERAL UNFAIR COMPETITION

Page 5 – COMPLAINT

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 30 of 110   Page ID
#:3970
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 13 of 80   Page ID
#:3743

(15 U.S.C. § 1125(a))

15.

Defendants have used, and continue to use, without authorization, the plaintiffs'
trademarks and trade dress, or confusingly similar names, marks and trade dress or
variations thereof, in interstate commerce falsely to represent, describe and designate
the origin of and other facts related to goods and services in a manner that is likely to
cause confusion, to cause initial interest confusion, to cause mistake, and/or to deceive
as to the affiliation, connection and association of the plaintiffs' trademarks and trade
dress and the origin, endorsement, sponsorship, or approval of those goods in violation
of § 43(a) of the Lanham Act, 15 U.S.C. 1125. Defendants' unauthorized use of the
plaintiffs' trademarks and trade dress , or confusingly similar names or variations
thereof, are also likely to cause consumer confusion or mistake with respect to
sponsorship or endorsement of Defendants' websites and the goods and services offered
on such websites, and to divert consumers away from plaintiffs' website in violation of
the Lanham Act.

16.

As a result of Defendants' wrongful and unfair acts, Defendants have been unjustly
enriched and it is inequitable to allow Defendants to retain this benefit under the
circumstances.

17.

Plaintiffs have suffered damages as a direct and proximate result of Defendants' use of
such false descriptions or representations, including confusion and deception of the
trade and purchasing public, incalculable injury to its goodwill and business reputation,
and the expenditure of attorneys' fees, for which plaintiffs have no adequate remedy at

Page 6 – COMPLAINT

Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 14 of 80   Page ID
#:3744

law. Plaintiffs will continue to suffer irreparable injury unless Defendants' acts of

infringement are enjoined by this Court.

18.

Defendants' acts of infringement, described above, were willful such as to justify the

award of treble damages and attorney fees to Plaintiffs.

## SECOND CLAIM FOR RELIEF

CALIFORNIA UNFAIR COMPETITION

(Cal. Bus. & Prof. Code § 17200 et seq.)

19.

Defendants' acts of using trademarks and trade dress that is substantially and

confusingly similar to plaintiffs' trademarks and trade dress constitutes unlawful,

unfair, and fraudulent business practices in violation of California Business &

Professions Code § 17200. Defendants' wrongful actions are unlawful because, among

other things, they violate the Lanham Act and constitute trademark and trade dress

infringement. Defendants' wrongful actions are also unfair and fraudulent, enabling

Defendants to sell more products and services than they otherwise would but for their

falsely imposed connection with Plaintiffs. Defendants' conduct is likely to and has

deceived and confuse the consuming public, including confusing the public as to

whether Defendants' websites, products and services originate from or are sponsored or

approved by Plaintiffs or otherwise affiliated with, connected to, or associated with

Plaintiffs and diverting consumers away from Plaintiffs' website to Defendants'

websites.

Page 7 – COMPLAINT

Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 15 of 80   Page ID #:3745

20.

As a result of Defendants' wrongful acts, as alleged herein, Defendants have been unjustly enriched and it is inequitable to allow Defendants to retain this benefit under the circumstances.

21.

Plaintiffs have suffered irreparable harm as a result of Defendants' conduct, and will continue to suffer irreparable harm that cannot be adequately remedied at law unless Defendants and all persons acting in concert with them are enjoined from engaging in any further acts of unfair competition. The consuming public also has and will continue to suffer injury as a result of being misled and confused by Defendant's unfair practices. This harm to Plaintiffs and the public has resulted in unjust enrichment to Defendants. Upon information and belief, Plaintiffs alleges that Defendants will continue to use unfair business practices if not otherwise enjoined.

## THIRD CLAIM FOR RELIEF

UNJUST ENRICHMENT

22.

Defendants have used and continue to use Plaintiffs' Trademarks and trade dress without authorization in connection with the advertisement, sale and offering for sale of their competitive goods and services.

23.

Page 8 – COMPLAINT

Defendants' wrongful and unauthorized use of the Plaintiffs Trademarks and trade dress is likely to cause confusion as to the source or sponsorship of Defendants' goods and services and further is likely to cause the consumer confusion when searching for Plaintiffs on the internet and to divert the consumers to Defendants' websites and services rather than those of Plaintiffs.

24.

As a result of their wrongful acts, as alleged herein, Defendants have been unjustly enriched and it is inequitable to allow Defendants to retain this benefit under the circumstances.


**PRAYER FOR RELIEF**

Wherefore plaintiffs pray to the Court that it grant the following relief:

1. That this Court permanently enjoin Defendants, and their officers, directors, employees, agents, servants, and all persons, firms, corporations, franchisees and associates in concert or participation with Defendants from doing any of the following:

a.       conducting or doing business, in any capacity, using plaintiffs' trade dress or trademarks, or any confusingly similar marks, trade dress, designations or variations thereof;

b.       using the plaintiffs' Trademarks or trade dress, or any confusingly similar marks, trade dress, derivative or form thereof, in connection with the advertisement, sale or offering for sale of goods and services, including the use in any internet advertising programs (including as text, headlines or keywords), promotional materials, and web sites ;

Page 9 – COMPLAINT

Case 2:09-cv-08128-DMG-PLA    Document 100-1    Filed 10/08/10    Page 34 of 110    Page ID
#:3974
Case 2:09-cv-08128-DMG-PLA    Document 95-4    Filed 10/05/10    Page 17 of 80    Page ID
#:3747

c.    falsely or inaccurately describing or designating the origin of or other facts

related to any goods or services in any manner that is likely to cause confusion, mistake

or deception as to the affiliation, connection and association of Defendants with

Plaintiffs;

d.    engaging in any conduct violative of 15 U.S.C. § 1125(a);

e.    engaging in any conduct violative of Cal. Bus. & Prof Code § 17200

2. That this Court require Defendants to pay plaintiffs damages in a sum to be proven at

trial, but in any event no less than $250,000, and including Defendants' profits and the

actual damages suffered by plaintiffs as a result of Defendants' acts;

3.    That Defendants pay treble damages because of the willful acts described in this

Complaint, all of which were in disregard of Plaintiffs' rights;

4.    For restitution and disgorgement of all profits and other benefits unjustly

obtained by Defendants as a result of their wrongful actions;

5.    That this Court award Plaintiffs their reasonable attorneys' fees; and

6.    That this Court grant such other and further relief as is just.


Signed July 7, 2009.

s/ E. J. Simmons

E. J. Simmons, OSB 75341
(503) 221-2000
Bradley Ganz, OSB 94076
(503) 844-9009
Attorneys for Plaintiffs Grasshopper House, LLC
and Passages Silver Strand, LLC


Plaintiffs demand a jury trial for their claims against defendants.


Page 10 — COMPLAINT

Signed July 7, 2009.

*s/ E. J. Simmons*

_____

E. J. Simmons, OSB 75341
(503) 221-2000
Bradley Ganz, OSB 94076
(503) 844-9009
Attorneys for Plaintiffs Grasshopper House, LLC
and Passages Silver Strand, LLC

# EXHIBIT 3

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 37 of 110   Page ID
#:3977
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 20 of 80   Page ID
#:3750

Case 3:09-cv-00778-HA   Document 67   Filed 07/19/10   Page 1 of 6   Page ID#: 706

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

GRASSHOPPER HOUSE, LLC, a
California limited liability company
doing business as Passages Malibu;
PASSAGES SILVER STRAND, LLC, a
California limited liability company,

       Plaintiffs,                     Civil No. 09-778-HA

       v.                          ORDER

ACCELERATED RECOVERY CENTERS,
LLC, a Georgia limited liability company;
RENAISSANCE MALIBU FOUNDATION,
a California non-profit corporation; and
BALDWIN RESEARCH INSTITUTE, INC.,
a New York non-profit corporation,

       Defendants.

---

HAGGERTY, District Judge:

      Plaintiffs Grasshopper House, LLC and Passages Silver Strand, LLC allege that

defendants used their trademarks and trade dress in violation of Section 43(a) of the Lanham

Act, 15 U.S.C. § 1125, and that defendants' acts constitute unlawful, unfair, and fraudulent

business practices pursuant to California Business & Professions Code § 17200.  Plaintiffs

obtained a Default Judgment [48] and a permanent injunction against defendant Renaissance

Malibu Foundation (defendant).  Plaintiffs seek an order finding defendant, associated entities,

and defendant's chief executive officer in contempt of court for violating the permanent

1 -- ORDER

injunction.  Defendant filed a Motion to Vacate the Default Judgment and Dismiss for Lack of Personal Jurisdiction [59].  An evidentiary hearing was held on July 15, 2010.  For the following reasons, defendant's Motion to Vacate the Default Judgment and Dismiss for Lack of Personal Jurisdiction is GRANTED.

## BACKGROUND

Plaintiffs operate an alcohol and drug addiction treatment facility in California. Plaintiffs have been doing business as "Passages" and "Passages Malibu" for many years and have used "Passages" and "Passages Malibu" as their trademark.  Defendant is a non-profit corporation affiliated with plaintiffs' competitors.  Those affiliated competitors and their officers allegedly use plaintiffs' trademarks and trade dress in their internet advertising campaigns.  From evidence adduced at the evidentiary hearing, it appears defendant itself does nothing.  Defendant was established as a 501(c)(3) charitable organization established in California, but it has never carried out its mission statement and exists entirely on paper and as a part of an affiliate's website.

## STANDARDS

Under Federal Rule of Civil Procedure 55(c), a district court "may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Rule 60(b) allows a court to set aside a default judgment "for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . (4) the judgment is void . . . (6) any other reason that justifies relief."  Although there is a policy in favor of the finality of judgments, under Rule 60(b)(6), courts can "vacate judgments whenever such action is appropriate to accomplish justice."  *Klapprott v. United States*, 335 U.S. 601, 615 (1949).  "It is well-established that

2 -- ORDER

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 39 of 110   Page ID
#:3979
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 22 of 80   Page ID
#:3752

Case 3:09-cv-00778-HA   Document 67   Filed 07/19/10   Page 3 of 6   Page ID#: 708

judgment entered without personal jurisdiction over the [defendant] is void." *Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica*, 614 F.2d 1247, 1255 (9th Cir. 1980) (citations omitted).

To determine whether personal jurisdiction exists, the court may consider the pleadings and evidence presented through affidavits, and may also order limited discovery to develop jurisdictional facts. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001); *Data Disc, Inc. v. Sys. Tech. Assoc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).

Plaintiffs bear the burden of establishing that this court has personal jurisdiction over defendant. *See Fireman's Fund Ins. Co. v. Nat'l Bank of Coop.*, 103 F.3d 888, 893 (9th Cir. 1996) (nonmoving party has burden of establishing personal jurisdiction). Plaintiffs need only make a *prima facie* showing of facts that support exercising jurisdiction over defendant. *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1168 (9th Cir. 2006).

Personal jurisdiction over a non-resident defendant is tested under a two-prong analysis: the exercise of jurisdiction must: (1) satisfy the requirements of the long arm statute of the state in which the district court sits; and (2) comport with principles of federal due process. *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 559 (9th Cir. 1995); *Ziegler v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995).

The due process clause of the United States Constitution protects persons from being subject to the binding judgments of a forum with which they have "established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (citing *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 319 (1945)). Due process requires that a defendant have "minimum contacts with the forum state such that the exercise of personal

3 -- ORDER

jurisdiction does not offend traditional notions of fair play and substantial justice." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 839 (9th Cir. 1986) (citing *Int'l Shoe Co.*, 326 U.S. at 316). Minimum contacts encompasses two types of jurisdiction: general and specific. *See Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).

For a defendant to be subject to general personal jurisdiction, the defendant must have such "continuous and systematic contacts with the forum that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Reebok Intern. Ltd. v. McLaughlin*, 49 F.3d 1387, 1391 (9th Cir. 1995). The standard for general jurisdiction is high, requiring that the contacts in the forum "approximate physical presence." *Tuazon*, 42 F.3d at 1169.

Alternatively, specific jurisdiction exists where: (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself or herself of the privileges of conducting activities in the forum; (2) the claim arises out of, or results from, the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Bancroft & Masters, Inc. v. Augusta National Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). If the plaintiffs meet the first and second elements, the burden shifts to the defendant to present a compelling case that the exercise of jurisdiction would be unreasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citing *Burger King*, 471 U.S. at 476-78)).

In analyzing whether a defendant purposefully availed itself to a forum, the Ninth Circuit has used the "Calder effects test." *Schwarzenegger*, 374 F.3d at 803. Under the "Calder effects test" a plaintiff must demonstrate that the defendant (1) committed an intentional act, (2)

4 -- ORDER

expressly aimed at the forum state, (3) causing harm that defendant knows is likely to be suffered in the forum state. *Schwarzenegger*, 374 F.3d at 803 (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

To determine whether an internet site contributes to the establishment of minimum contacts, courts use a "sliding scale" analysis. *Millennium Enterprises, Inc. v. Millennium Music, LP*, 33 F. Supp. 2d 907, 916-17 (D. Or. 1999). Under this sliding scale, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Id.* at 915 (citing *Zippo Mfg. Co. v. Zippo Dot Com*, 33 F. Supp. 2d 1119, 1124 (W.D. Pa. 1997). In *Millennium*, this court declined to adopt a "broad view of personal jurisdiction" regarding internet sites, and instead recognized that there should be a deliberate action within the forum state "in the form of transactions between the defendant and residents of the forum or conduct of the defendant purposefully directed at the residents of the forum state." *Id.* at 921 (citing *Calder*, 465 U.S. at 788-90). Because the *Millennium* defendant did not have a substantial connection with Oregon, and did not "purposefully target its activities at Oregon," the court concluded that the exercise of personal jurisdiction was improper. *Id.* at 921-22.

**DISCUSSION**

The tenuous connection defendant has with Oregon is that its corporate officers, on behalf of associated companies (not named as defendants), have aimed some of their advertising at Oregon. Defendant itself, however, has done nothing in Oregon. Aside from creating a mission statement in California, it has done nothing at all. This court concludes that it lacks personal jurisdiction over defendant pursuant to Fed. R. Civ. P. 12(b)(2). Accordingly, the

5  -- ORDER

Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 25 of 80   Page ID #:3755

Case 3:09-cv-00778-HA   Document 67   Filed 07/19/10   Page 6 of 6   Page ID#: 711

Default Judgment against defendant, and the permanent injunction, are void and must be vacated. Because this court lacks personal jurisdiction over defendant, this case must be dismissed.

## CONCLUSION

For the reasons provided, this court GRANTS defendants' Motion to Vacate the Default Judgment and Dismiss for Lack of Personal Jurisdiction [59]. The Default Judgment [48] and permanent injunction are vacated. This case is dismissed without prejudice.

IT IS SO ORDERED.

DATED this   19   day of July, 2010.


　　　　　　　　　　　　　　　　　／s／ Ancer L. Haggerty
　　　　　　　　　　　　　　　　　Ancer L. Haggerty
　　　　　　　　　　　　　　　　United States District Court

6 -- ORDER

# EXHIBIT 4

W R S & S, LLP        Fax:3104791422



LAW OFFICES

WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP

Charles J. Harder                                                          File No.
charder@wrslawyers.com                                                     17875-003

July 23, 2010

<u>Via Email, Facsimile and U.S. Mail</u>

James E. Doroshow, Esq.
Fox Rothschild LLP
1800 Century Park East Suite 300
Los Angeles, California 90067

   Re: <u>Grasshopper House v. Accelerated Recovery Centers, LLC</u>
     USDC Case No.: 09-CV-08128-DMG-PLA

Dear Mr. Doroshow:

  Enclosed please find a proposed stipulation for the dismissal of the claims asserted by plaintiffs in the Grasshopper House v. Accelerated Recovery Centers matter. If the enclosed is acceptable, please sign and return the document to me for e-filing, or alternatively let me know if we have your approval to e-file the document, with your electronic signature.

  In light of the fact that most of the discovery that is the subject of Accelerated's motion to compel further responses to interrogatories and document requests is now moot, based on the pending dismissal of plaintiffs' claims, please confirm that you will take off calendar the motion to compel, and provide us with a new draft stipulation limited to the discovery pertaining only to the remaining counterclaims being asserted by your clients (following the Court's recent dismissal of certain counterclaims and several named counterdefendants).

W R S & S, LLP          Fax:3104791422          Jul 23 2010  15:33          P.03

James Doroshow, Esq.
July 23, 2010
Page 2

We also encourage your client to consider a voluntary dismissal of its remaining counterclaims, because there is no evidence to support them, and they are legally deficient in any event.  We are available to discuss this issue further at your convenience.

Very truly yours,

WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP

CHARLES J. HARDER

CJH:sbp

Enclosure

cc:  Mr. Chris Prentiss
     Thomas Nitti, Esq.
     Roy Rifkin, Esq.
     Denise Parga, Esq.
     Nicholas Merkin, Esq.

I:\17875\003\Letters\CJH – Doroshow Letter Re Dismissal of Claim 072310.wpd

W R S & S, LLP         Fax:3104791422         Jul 23 2010  15:33         P.04

1  CHARLES J. HARDER (BAR NO. 184593)
   charder@wrslawyers.com
2  NICHOLAS A. MERKIN (BAR NO. 219604)
   nmerkin@wrslawyers.com
3  WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
   11400 West Olympic Boulevard, Ninth Floor
4  Los Angeles, California 90064-1582
   Telephone: (310) 478-4100   Facsimile:  (310) 479-1422
5
   Attorneys for Plaintiffs and Counter-Defendants
6  GRASSHOPPER HOUSE, LLC and
   PASSAGES SILVER STRAND, LLC
7
8  JAMES E. DOROSHOW (BAR NO. 112920)
   jdoroshow@forxrothschild.com
9  FOX ROTHSCHILD LLP
   1800 Century Park East, Suite 300
10 Los Angeles, California 90067-3005
   Telephone: (310) 598-4150   Facsimile:  (310) 556-9828
11
   Attorneys for Defendants and Counter-Complainants
12 ACCELERATED RECOVERY CENTERS, LLC,
   KEVIN M. KELLY, and JAN HOLT WATKINS
13
14              UNITED STATES DISTRICT COURT
15             CENTRAL DISTRICT OF CALIFORNIA
16
17 GRASSHOPPER HOUSE, LLC, a          Case No.: 2:09-CV-08128-DMG (PLAx)
   California limited liability company
18 doing business as "Passages Malibu,"
   PASSAGES SILVER STRAND, LLC, a     STIPULATION FOR DISMISSAL
19 California limited liability company,    OF FIRST AMENDED
                                         COMPLAINT
20              Plaintiffs,
                                         Federal Rule of Civil Procedure
21         v.                            41(a)(1)(A)(ii)
22 ACCELERATED RECOVERY
   CENTERS, LLC, a Georgia limited
23 liability company,
24              Defendant.
25
   AND RELATED COUNTER-CLAIM
26
27       The parties hereto, through their counsel of record, hereby stipulate to the
28 dismissal of the first amended complaint and each claim therein.  The parties

                                    -1-
   STIPULATION BY DISMISSAL OF FIRST AMENDED COMPLAINT
I:\17875\003\Pleadings\Stipulation by Dismissal.wpd

W R S & S, LLP          Fax:3104791422          Jul 23 2010 15:34          P.05

1  further stipulate that the counterclaim shall remain pending for independent
2  adjudication.

3

4                                        WOLF, RIFKIN, SHAPIRO, SCHULMAN
                                         & RABKIN, LLP
5

6

7  DATED: July ___, 2010           By: _____
                                       CHARLES J. HARDER
8                                      Attorneys for Plaintiffs
                                       GRASSHOPPER HOUSE, LLC and
9                                      PASSAGES SILVER STRAND, LLC

10

11                                       FOX ROTHSCHILD LLP

12

13 DATED: July ___, 2010           By: _____
                                       JAMES E. DOROSHOW
14                                     Attorneys for Defendants
                                       ACCELERATED RECOVERY CENTERS,
15                                     LLC., KEVIN M. KELLY, and JAN HOLT
                                       WATKINS
16

17

18

19

20

21

22

23

24

25

26

27

28

                                        -2-
           STIPULATION BY DISMISSAL OF FIRST AMENDED COMPLAINT
I:\17875\003\Pleadings\Stipulation by Dismissal.wpd

# EXHIBIT 5

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 49 of 110   Page ID
#:3989
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 32 of 80   Page ID
#:3762

1  WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
   CHARLES J. HARDER (BAR NO. 184593)
2  NICHOLAS A. MERKIN (BAR NO. 219604)
   11400 West Olympic Boulevard, Ninth Floor
3  Los Angeles, California  90064-1582
   Telephone: (310) 478-4100
4  Facsimile:  (310) 479-1422

5  Attorneys for Plaintiffs/Counterdefendants
   GRASSHOPPER HOUSE, LLC,
6  PASSAGES SILVER STRAND, LLC,
   and Counterdefendant PAX PRENTISS
7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  GRASSHOPPER HOUSE, LLC, a          )  Case No.: CV 09-08128 DMG (PLAx)
    California limited liability company )
12  doing business as "Passages        )
    Malibu,"PASSAGES SILVER           )  PLAINTIFF/COUNTER-
13  STRAND, LLC, a California limited   )  DEFENDANT GRASSHOPPER
    liability company,                 )  HOUSE, LLC'S SUPPLEMENTAL
14                                      )  RESPONSE TO DEFENDANT /
                Plaintiffs,            )  COUNTERCLAIMANT
15                                      )  ACCELERATED RECOVERY
         v.                            )  CENTERS, LLC'S FIRST SET OF
16                                      )  INTERROGATORIES
    ACCELERATED RECOVERY             )
17  CENTERS, LLC, a Georgia limited    )
    liability company,                 )
18                                      )
                Defendant.             )
19                                      )
                                       )
20  AND RELATED COUNTER-CLAIM  )
                                       )
21

22  PROPOUNDING PARTY:     Defendant/Counterclaimant ACCELERATED
                           RECOVERY CENTERS, LLC
23
    RESPONDING PARTY:      Plaintiff/Counterdefendant GRASSHOPPER
24                         HOUSE, LLC

25  SET NO.:               ONE

26      TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD

27  HEREIN:

28  ///

                              -1-
─────────────────────────────────────────────────
      GRASSHOPPER HOUSE LLC'S SUPPLEMENTAL RESPONSES TO ACCELERATED
           RECOVERY CENTER'S FIRST SET OF INTERROGATORIES
   F:\17875\003\Discovery\Grasshopper Supp Responses to Rogs D2.wpd

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 50 of 110   Page ID
#:3990
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 33 of 80   Page ID
#:3763

1      Responding party is without personal knowledge, but assumes that

2 ultimate purchasers exercise at least a reasonable degree of care in the purchase

3 decision of whether or not to check into an alcohol or drug addiction facility, the

4 particular facility to attend, whether or not to purchase a book on alcoholism

5 and/or drug addiction, and if so, which book to purchase, and whether or not to

6 purchase the supplements that are sold at www.passagesmalibu.com.  Ultimate

7 purchasers had addictions and, when in the throes of addiction are not

8 sophisticated or discerning purchasers, particularly when using keyword

9 searches to seek information on treatment.

10      Witnesses that will support such contention are Chris Prentiss and Pax

11 Prentiss.

12      Responding party is unaware of documents relating to this issue.

13      The factual investigation of this matter, however, is still ongoing, and

14 responding party reserves the right to supplement this response if and when new

15 facts and/or documentation are discovered.

16

17 **INTERROGATORY NO. 7:**

18      For each type or category of product and/or service sold or otherwise

19 provided or marketed using or under the MARKS IN ISSUE, state separately,

20 the annual gross and net revenue, in units and in dollars, from the use of such

21 MARKS from the DATE of their first use to present and identify all

22 DOCUMENTS CONCERNING and all PERSONS knowledgeable about such

23 annual revenues.

24 **RESPONSE TO INTERROGATORY NO. 7:**

25      The aforementioned Interrogatory is compound and comprised of several

26 separate questions, in violation of the Federal Rules of Civil Procedure.  Without

27 waiver of the above-stated violation, responding party responds as follows

28 below.

-13-

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 51 of 110   Page ID
#:3991
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 34 of 80   Page ID
#:3764

1     Subject to the acknowledgment and understanding that: (1) this case is not

2   yet at issue as of the date of these responses; (2) despite this, propounding party

3   has refused responding party any extension to allow responding party to

4   complete its investigation and analysis in connection with this interrogatory; and

5   (3) responding party reserves its right to supplement and/or amend these

6   responses as it completes its investigation and analysis in connection with this

7   interrogatory, responding party answers as follows below.

8     Objections:  The interrogatory is compound and vague and ambiguous as

9   posed.  Responding party also incorporates herein by reference each of the

10  General Objections set forth above.  Subject to and without waiver of these

11  objections, responding party answers as follows:

12     Responding party declines to answer as the interrogatory for the responses

13  stated above as well as because it seeks information protected by responding

14  party's right to privacy. *See, e.g.*, <u>Johnson by Johnson v. Thompson</u>, 971 F2d.

15  1487, 1497 (10th Cir. 1992); <u>DeMasi v. Weiss</u>, 669 F2d 114, 119–120 (3rd Cir.

16  1982).

17  *SUPPLEMENTAL* RESPONSE TO INTERROGATORY NO. 7:

18     Responding Party incorporates by reference Responding Party's original

19  response to this interrogatory.  In addition, Responding Party responds as

20  follows:

21     The information requested is relevant only to responding party's first

22  amended complaint.  Responding Party has filed a Motion to Dismiss its first

23  amended complaint, which is set for hearing on October 4, 2010.  If the motion

24  is granted, the interrogatory will be moot.  If the motion is denied, then

25  responding party will promptly provide the information requested.

26     The factual investigation of this matter, however, is still ongoing, and

27  responding party reserves the right to supplement this response if and when new

28  facts and/or documentation are discovered.

-14-

GRASSHOPPER HOUSE LLC'S SUPPLEMENTAL RESPONSES TO ACCELERATED
RECOVERY CENTER'S FIRST SET OF INTERROGATORIES
J:\17875\003\Discovery\Grasshopper Supp Responses to Rogs D2.wpd

1   The factual investigation of this matter, however, is still ongoing, and

2   responding party reserves the right to supplement this response if and when new

3   facts and/or documentation are discovered.

4

5   **INTERROGATORY NO. 14:**

6   Describe in detail all alleged harm suffered by PLAINTIFFS as a result of

7   ACCELERATED'S alleged use of the MARKS IN ISSUE, including PERSONS

8   knowledgeable about such alleged harm, and all DOCUMENTS CONCERNING

9   such alleged harm.

10  **RESPONSE TO INTERROGATORY NO. 14:**

11  The aforementioned Interrogatory exceeds the number of separate

12  interrogatories permitted by Federal Rules of Civil Procedure (twenty-five).  The

13  aforementioned Interrogatory also is compound and comprised of several

14  separate questions, in violation of the Federal Rules of Civil Procedure.  Without

15  waiver of the above-stated violation, responding party responds as follows

16  below.

17  Subject to the acknowledgment and understanding that: (1) this case is not

18  yet at issue as of the date of these responses; (2) despite this, propounding party

19  has refused responding party any extension to allow responding party to

20  complete its investigation and analysis in connection with this interrogatory; and

21  (3) responding party reserves its right to supplement and/or amend these

22  responses as it completes its investigation and analysis in connection with this

23  interrogatory, responding party answers as follows below.

24  Objections:  The interrogatory is compound and vague and ambiguous as

25  posed.  Responding party also incorporates herein by reference each of the

26  General Objections set forth above.  Subject to and without waiver of these

27  objections, responding party answers as follows:

28  ///

-27-

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 53 of 110   Page ID
#:3993
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 36 of 80   Page ID
#:3766

1    Without limitation: trademark dilution, initial interest confusion, actual

2  confusion, likelihood of confusion (based on passing off, misappropriation,

3  contributory passing-off, and infringing purchases of keywords).  Responding

4  party is in the process of identifying witnesses and evidence responsive to this

5  interrogatory.

6  **_SUPPLEMENTAL_ RESPONSE TO INTERROGATORY NO. 14:**

7    Responding Party incorporates by reference Responding Party's original

8  response to this interrogatory.  In addition, Responding Party responds as

9  follows:

10    The information requested is relevant only to responding party's first

11  amended complaint.  Responding Party has filed a Motion to Dismiss its first

12  amended complaint, which is set for hearing on October 4, 2010.  If the motion

13  is granted, the interrogatory will be moot.  If the motion is denied, then

14  responding party will promptly provide the information requested.

15    The factual investigation of this matter, however, is still ongoing, and

16  responding party reserves the right to supplement this response if and when new

17  facts and/or documentation are discovered.

18

19  **INTERROGATORY NO. 15:**

20    Identify all facts supporting PLAINTIFFS contention that YOU are able to

21  "cure" drug or alcohol addition, and identify all DOCUMENTS and PERSONS

22  which or who YOU believe will support such contention.

23  **RESPONSE TO INTERROGATORY NO. 15:**

24    The aforementioned Interrogatory exceeds the number of separate

25  interrogatories permitted by Federal Rules of Civil Procedure (twenty-five).  The

26  aforementioned Interrogatory also is compound and comprised of several

27  separate questions, in violation of the Federal Rules of Civil Procedure.  Without

28

-28-

GRASSHOPPER HOUSE LLC'S SUPPLEMENTAL RESPONSES TO ACCELERATED
RECOVERY CENTER'S FIRST SET OF INTERROGATORIES
I:\17875\003\Discovery\Grasshopper Supp Responses to Rogs D2.wpd

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 54 of 110   Page ID
#:3994
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 37 of 80   Page ID
#:3767

# EXHIBIT 6

Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 38 of 80   Page ID
#:3768

Dear Mr. Colleton:

As per my telephone conversation with you today, attached are several documents pertaining to the many efforts that I and my legal counsel have made to try to settle this case with Kevin Kelly, CEO of Accelerated Recovery Services and his attorney, James Doroshow. These efforts have included multiple settlement offers, from September 2009 and March 2010, proposing a "walk away" settlement in which no money would be paid, and all sides would dismiss their claims and refrain from using one another's names in paid internet advertising.  Attached are two of those written offers.  Unfortunately, our offers were rejected; Accelerated's response was to demand large payments from us, and other onerous terms.

More recently, we asked Accelerated and its counsel in late July 2010 to agree to allow us to voluntarily dismiss all of our claims against Accelerated -- but allowing Accelerated to continue to pursue its counterclaims against us.  Accelerated refused, which required us to file a motion to voluntarily dismiss our claims against Accelerated.  Accelerated and its counsel are aggressively opposing that motion.  Paragraph 3 of Mr. Doroshow's declaration attached to the Opposition papers (attached) seems to summarize the reasons for the refusal – because if our claims are dismissed, Hanover will stop paying Accelerated's (Doroshow's) enormous legal bills, which are being used to fund Accelerated's Counterclaims against us.  Doroshow's declaration states at paragraph 13 that he has billed **$203,000** as of the end of July 2010 (when we asked him to allow us to voluntarily dismiss our claims).  I would expect that he has billed another $100,000 or more since July.  My estimate is that the great majority of his billing is spent on Accelerated's counterclaims against us, rather than defending our claims against his client -- because we stopped pressing our suit long ago.

9/22/2010

Sincerely,

Chris Prentiss, Director
Grasshopper House, LLC

CONFIDENTIALITY NOTICE:
This e-mail message, including all attachments, is for the sole use of the intended recipient(s) and may contain confidential and
privileged information. If you are not the intended recipient, you may NOT use, disclose, copy or disseminate this information.
Please contact the sender by reply e-mail immediately and destroy all copies of the original message including all attachments. Your
cooperation is greatly appreciated.

This e-mail, including attachments, is intended for the exclusive use of the addressee and may contain
proprietary, confidential or privileged information. If you are not the intended recipient, any dissemination, use,
distribution or copying is strictly prohibited. If you have received this e-mail in error, please notify me via return e-
mail and permanently delete the original and destroy all copies.

9/22/2010

# EXHIBIT 7

W R S & S , LLP        Fax:3104786363        Aug  3 2010  15:33      P.02



LAW OFFICES

## WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP

Nicholas A. Merkin                                                      File No.
nmerkin@wrslawyers.com                                                  17875-003

August 3, 2010

**VIA FACSIMILE (310) 556-9828**
**AND U.S. MAIL**

James E. Doroshow, Esq.
Fox Rothschild LLP
1800 Century Park East, Suite 300
Los Angeles, California 90067

Re:   **Grasshopper House v. Accelerated Recovery Centers, LLC**
       USDC Case No.: 09-CV-08128-DMG-PLA

Dear Mr. Doroshow:

This letter shall serve as our initial effort to meet and confer regarding the defective responses served by Accelerated Recovery Centers, LLC ("Accelerated") on or about June 4, 2010 to the First Set of Requests for Production of Documents and the First Set of Interrogatories (collectively, the "Discovery"), in accordance with the Federal Rules of Civil Procedure, applicable local rules, and the February 22, 2010 Scheduling and Case Management Order for Trial entered by the Court in the above-referenced matter.

Below, I have itemized the specific responses to the Discovery that are objectionable.

**REQUESTS FOR PRODUCTION OF DOCUMENTS ("RFPD")**

1.     In Response Nos. 2–133, inclusive, you state that ". . . Accelerated will not produce any documents that post-date the filing of this lawsuit."

No basis for this objection is provided.  Pursuant to FRCP 34(a)(1) Accelerated is required to produce all specified relevant and non-privileged documents or other things which are in its "possession, custody, or control."

In addition, the documents Accelerated agreed to produce in its response have not yet been produced.  We would request that you provide such documents within fifteen (15) days.

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 59 of 110   Page ID
#:3999
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 42 of 80   Page ID
#:3772

W R S & S, LLP        Fax:3104786363        Aug  3 2010  15:33      P. 03

James E. Doroshow, Esq.
Fox Rothschild LLP
August 3, 2010
Page 2

**INTERROGATORIES**

Accelerated was required to serve complete responses with the interrogatories, which it failed to do in connection with all but one interrogatory propounded. Specifically:

1    Interrogatory No. 1:   "State all facts that support your first affirmative defense."

     Response No. 1    "...Plaintiffs are referred to the Complaint filed in this action on
                       November 5, 2009. The Complaint has failed to allege facts
                       sufficient to state a claim upon which relief can be granted."

This response is improper and fails to comply with Federal Rule of Civil Procedure Rule 33(b)(1).  "It is well established that an answer to an interrogatory 'must be responsive to the question. **It should be complete in itself and should not refer to the pleadings**, or to depositions or other documents, or to other interrogatories, at least where such references make it impossible to determine whether an adequate answer has been given' without an elaborate comparison of answers. (Citations omitted.)" (Emphasis added). U.S. ex rel. O'Connell v. Chapman University 245 F.R.D. 646, 650 (C.D.Cal.,2007).

2    Interrogatory No. 3:   "State all facts that support your second affirmative defense."
     Response No. 3    "...Plaintiffs engaged in exactly the same conduct that they allege
                       violates the Lanham Act.  Plaintiffs use without authorization
                       Accelerated's trademark as well as third-parties' trademarks in
                       connection with their on-line advertising campaigns and engaged
                       in the forms of unfair competition and trademark infringement.
                       Moreover, Plaintiffs make false and misleading statements in
                       commerce that they know how to "cure" alcohol and drug
                       addiction, which unfairly divert consumers from Accelerated."

This response is evasive and bad faith.  You fail to identify the alleged use of "third-parties' trademarks in connection with their on-line advertising campaigns" and the manner in which our client "engaged in the forms of unfair competition and trademark infringement." The response is merely a recitation of the vague allegations as set forth in Accelerated's First Amended Counterclaim.  "...an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Federal Rules of Civil Procedure Rule 37 (4); see also, AT & T Wireless Services of Cal. LLC v. City of Carlsbad, Cal. 2002 WL 34537564, 8 (S.D.Cal.) (S.D.Cal.,2002).

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 60 of 110   Page ID
#:4000
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 43 of 80   Page ID
#:3773

W R S & S, LLP          Fax:3104786369          Aug  3 2010  15:33      P.04

James E. Doroshow, Esq.
Fox Rothschild LLP
August 3, 2010
Page 3

3    Interrogatory No. 5:    "State all facts that support your third affirmative defense."
     Response No. 5          "...Plaintiffs knew or should have known of Accelerated's
                             advertisements for a lengthy period of time prior to filing suit,
                             and Accelerated is informed and believes that, despite such
                             knowledge, Plaintiffs delayed in taking legal action in an attempt
                             to enforce their purported rights"

       Again, this response is evasive and fails to state "all" facts as required by the
interrogatory.

4    Interrogatory No. 7:    "State all facts that support your fourth affirmative defense."
     Response No. 7          "...Accelerated refers Plaintiffs to its Response to Interrogatories
                             Numbers 3 and 5  above, which are incorporated herein by this
                             reference."
       See objection to responses to interrogatories 3 and 5 above.

5    Interrogatory No. 9:    "State all facts that support your fifth affirmative defense."
     Response No. 9          "...Accelerated's complained-of ads make it clear that neither
                             Accelerated nor the advertised goods or services come from
                             Plaintiffs or are sponsored by Plaintiffs or otherwise associated
                             with Plaintiffs."

       Again, this response is evasive and fails to state "all" facts as required by the
interrogatory.  What advertised goods or services is Accelerated referring to?  Accelerated has
failed to state "all facts" that support this contention.

6    Interrogatory No. 13:   "State all facts that support your seventh affirmative defense."
     Response No. 13         "...There is case law holding that the alleged use of the marks in
                             the manner alleged in Plaintiffs' Complaint does not constitute a
                             use in commerce."

       This response is evasive and bad faith  You rely on "case law" yet you fail to identify
such case law.  If Accelerated is relying on such "case law" as an affirmative defense,
Grasshopper is entitled to the identification of such law.  See, Federal Rules of Civil Procedure
Rule 37(4).

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 61 of 110   Page ID
#:4001
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 44 of 80   Page ID
#:3774

W R S & S, LLP          Fax:3104786363          Aug  3 2010  15:34          P.05

James E. Doroshow, Esq.
Fox Rothschild LLP
August 3, 2010
Page 4

7     Interrogatory No. 15:  "State all facts that support your eighth affirmative defense."
      Response No. 15          "Plaintiffs' purported marks are, at best, descriptive of their
                               services and have not acquired secondary meaning.  Accordingly,
                               they are not entitled to protection under the Lanham Act."

        This response is evasive and fails to state "all" facts as required by the interrogatory.
Accelerated's response is evasive; it is a conclusion of law and not a statement of facts, as
required by the interrogatory.  In what way are Plaintiff's marks descriptive of their services?
On what basis does Accelerated conclude, even if the marks could be considered descriptive,
that the marks are merely descriptive and without secondary meaning?

8     Interrogatory No. 17:  "State all facts that support your ninth affirmative defense."
      Response No. 17          "...Plaintiffs' purported marks are not entitled to protection under
                               the Lanham Act. Even if they were, Accelerated has not infringed
                               Plaintiffs' purported marks."

        This response is evasive and fails to state "all" facts as required by the interrogatory.
Specifically, why if the Lanham Act applied do you claim that Accelerated has not infringed
Plaintiffs' marks?

9     Interrogatory No. 19:  "State all facts that support your tenth affirmative defense."
      Response No. 19          "...Plaintiffs' purported marks are not entitled to protection under
                               the Lanham Act. Even if they were, Accelerated has not infringed
                               Plaintiffs' purported marks and they do not create confusion and,
                               in fact, avoid any potential confusion between Accelerated's
                               products and services and Plaintiffs' products or services so to
                               avoid any mistake that Accelerated is somehow  associated with
                               Plaintiffs."

        This response is evasive and fails to state "all" facts as required by the interrogatory.
Specifically, how do Accelerated's purported marks avoid any potential confusion between
Accelerated's products and services and Plaintiffs' products or services?  No facts are set forth
as required by the interrogatory.

W R S & S, LLP          Fax:3104786363          Aug  3 2010  15:34      P.06

James B. Doroshow, Esq.
Fox Rothschild LLP
August 3, 2010
Page 5

10      Interrogatory No. 21:   "State all facts that support your eleventh affirmative defense."
        Response No. 21        "...Plaintiffs have not suffered any harm as a result of
                                Accelerated's complained-of conduct. Accelerated has not
                                infringed Plaintiffs' purported marks or engaged in any unfair
                                competition, and thus there is no basis for an injunction."

        This response is evasive and fails to state "all" facts as required by the interrogatory.
Specifically, on what basis does Accelerated allege that Plaintiffs have not suffered any harm
as a result of Accelerated's conduct?

11      Interrogatory No. 23:   "State all facts that support your twelfth affirmative defense."
        Response No. 23        "...Plaintiffs have not suffered any damages as a result of
                                Accelerated's complained-of conduct. Accelerated has not
                                infringed Plaintiffs' purported marks or engaged in any unfair
                                competition, and thus there is no basis for awarding damages to
                                Plaintiffs, which are speculative at best."

        See objection to item number 10 above.

12      Interrogatory No. 25:   "State all facts that support your thirteenth affirmative defense."
        Response No. 25        "...Accelerated has not infringed Plaintiffs' purported marks or
                                engaged in unfair competition in violation of the Lanham Act, but
                                conducted its business in a reasonable and lawful manner."

        See objection to item number 10 above.  Furthermore, on what factual basis does
Accelerated state that it did not violate unfair competition law?

13      Interrogatories Nos. 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, 22, 24:
            "State all facts that support your thirteenth affirmative defense."
        Response Nos. 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, 22, 24:
            "Subject to the above objections and without waiving any other objections,
            Accelerated refers Plaintiffs to Accelerated's Initial Disclosures pursuant to Rule
            26."

James E. Doroshow, Esq.
Fox Rothschild LLP
August 3, 2010
Page 6

This response is improper and fails to comply with Federal Rule of Civil Procedure Rule 33(b)(1). "It is well established that an answer to an interrogatory 'must be responsive to the question. It should be complete in itself and should not refer to the pleadings, or to depositions or other documents, or to other interrogatories, at least where such references make it impossible to determine whether an adequate answer has been given without an elaborate comparison of answers. (Citations omitted.)" (Emphasis added). U.S. ex rel. O'Connell v. Chapman University 245 F.R.D. 646, 650 (C.D.Cal.,2007).

Additionally, Rule 26(b)(1)(A) of the Federal Rules of Civil Procedure requires that the name and, if known, the address and telephone number of each individual likely to have discoverable information relevant to the disputed facts be provided to the other party.

We have no way of ascertaining which witnesses identified in Accelerated's Initial Disclosures pursuant to Rule 26 have specific information relating to each interrogatory propounding.  Do all witnesses have the same information on each interrogatory propounded? Grasshopper need not speculate.  Such a response is evasive.

It is our hope that we can resolve these discovery disputes without the need for Court intervention.  Pursuant to Federal Rules of Civil Procedure Rules 26-37 and Local Rule 37-1, I would like to arrange for conference at my office in which we can discuss our objections raised above within ten (10) days of the date of this letter.  Please contact me to schedule the same.

If we are unable to reach an agreement with respect to supplemental response after such time, we will be forced to file a motion to compel supplemental responses, seek related sanctions under Federal Rule of Civil Procedure 37, and seek to recover the fees and costs incurred in connection therewith.

W R S & S, LLP          Fax:3104786363          Aug  3 2010  15:35      P. 08

James E. Doroshow, Esq.
Fox Rothschild LLP
August 3, 2010
Page 7

    Nothing contained herein or omitted herefrom is intended, nor shall be construed, to operate as an admission, limitation, or waiver of any of my client's rights, remedies or defenses, at law and/or in equity, all of which are hereby expressly reserved.

Very truly yours,

WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP

NICHOLAS A. MERKIN

NAM:slf
cc:    Client
I:\17875\003\Letters\Doroshow M&C.wpd

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 65 of 110   Page ID
#:4005
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 48 of 80   Page ID
#:3778

W R S & S, LLP          Fax:3104786363          Aug  3 2010  15:32          P.01



LAW OFFICES                                    Los Angeles
**WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP**          Las Vegas
11400 Olympic Boulevard, 9th Floor, Los Angeles, California 90064-1582
Tel 310-478-4100          Fax 310-479-1422

                                               File No.
                                               17875-003

### FACSIMILE TRANSMISSION COVER

| | |
|---|---|
| DATE: | August 3, 2010 |
| TO: | James Doroshow, Esq.<br>Fox Rothschild LLP |
| FAX NO.: | 310.556.9828 |
| PHONE NO.: | 310.598.4150 |
| FROM: | Nicholas A. Merkin |
| RE: | **Grasshopper House v. Accelerated Recovery Centers, LLC**<br>USDC Case No.: 09-CV-08128-DMG-PLA |
| # PAGES: | 8  (including this page) |

Please contact Nancy at extension 204 if you do not receive all the pages indicated above.

MESSAGE:

          Please see attached correspondence

This fax is intended only for the use of the individual or entity to whom it is addressed and may contain information that is privileged, confidential, or exempt from disclosure under applicable law. If you are not the intended recipient, any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this fax in error, please notify us immediately by telephone and return the original to us at the above address by U.S. mail. Thank you.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by U.S. Treasury Regulation Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 66 of 110   Page ID
#:4006
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 49 of 80   Page ID
#:3779

# EXHIBIT 8

## LeBrane, Claudia A.

**From:**    Doroshow, James E.
**Sent:**    Friday, August 20, 2010 8:57 AM
**To:**     'Nicholas A. Merkin'
**Cc:**     LeBrane, Claudia A.; Osterberg, Eric C.; Lewis, M. Michael
**Subject:** Accelerated: This Morning's Meet and Confer Session

Mr. Merkin:

I want to summarize what occurred at our meet and confer session at my office at 8 am this morning:

1.    Motion to Extend Deadlines in the Case by 90 Days. Even though I had written your office a letter and emails in advance of our meeting, and you told me you had been authorized by your office and your client to appear today, you informed me for the first time this morning that you did not have authority (and Mr. Nitti did not have authority) to agree to extend any deadlines in this case and would need to confer with Mr. Harder and your client before letting us know your position. Obviously, this made the meeting a complete waste of time. As such, I am reserving the right to seek sanctions against your firm and your client for its conduct.

2.    Prentiss Deposition Questions. You also told me this morning that your client was not prepared to answer any of the questions he was asked at his deposition with one exception. When I pointed out to you that he had testified in Oregon in open court at the recent Renaissance hearing what he charges clients on a monthly basis, and that this information can presumably be learned by merely calling the Grasshopper center, you indicated you would ask him whether he is prepared to answer questions regarding what Plaintiffs charge for "treatment." Apart from this one question, you told me that because our clients are competitors, and your client "is not comfortable" sharing information with me even under an Attorney's Eyes designation, your client will not answer any questions that were objected to on grounds of confidentiality or privacy. You also indicated that he would not answer any of the other questions he refused to answer based on various other objections as stated in the record. Under these circumstances, we will be filing a motion to compel and for sanctions.

3.    The Perry v. Schwerneger case. During our discussion, I told Mr. Nitti I had read the Perry decision he cited during Mr. Prentiss' deposition as purported authority for his assertion that he believes Plaintiffs and Counter-Defendants have an absolute First Amendment right to make whatever statements they want (accurate or misleading) in a book or over the internet. When I pointed out to Mr. Nitti that there was nothing in the Perry decision supporting this position, and asked him to cite me to specific language in the decision (which he had with him), he was unable to do so. I also told Mr. Nitti that I would suggest he read the law on this subject since there is no First Amendment right to engage in false and misleading advertising (otherwise the exception would swallow the law under the Lanham Act). In response, Mr. Nitti told me he was an "expert" in this field and I should review his Supreme Court record. Again, I would invite you or Mr. Nitti to cite law to me that supports your blanket claim of First Amendment immunity, if you have it.

4.    Your August 3, 2010 Correspondence and My Client's Discovery Responses. Even though you asked me to prepare to discuss the discovery issues with you addressed in your August 3rd correspondence, and I took time to prepare to do so, you told me this morning that, because your client now intended to file a motion to dismiss its claims, you considered any issues related to our interrogatory responses to be "moot." As such, I now consider this issue dead. In terms of my client's documents, you insisted that you still needed some documents from my client because our Counterclaims continued. However, when I asked you to inform me which of your document requests you wanted documents for, you indicated you could not tell me and gave no indication that you would parse the discovery to take into account the fact that you now wanted to dismiss your affirmative claims. I told you that one of the reasons we had yet to produce documents was because of the absence of a protective order (which is the subject of a current motion given your office's and your client's refusal to stipulate to one). However, after a protective order is entered I told you we are prepared to produce responsive, non-privileged documents, and expected your office to do the same.

I trust this accurately memorializes our discussion this morning. If anything is inaccurate, in whole or in part, please let me know immediately. Again, given the manner which this conference was conducted by your office

10/4/2010

Page 2 of 2

and your co-counsel we intend to ask for sanctions to compensate us for the unnecessary expense of having to
prepare for and attend what was largely a wasteful exercise.

JIm Doroshow

**James E. Doroshow**
Attorney at Law
**Fox Rothschild LLP**
1800 Century Park East, Suite 300
Los Angeles, CA 90067
310.228-6990 -Direct
310.556.9828 -Fax
jdoroshow@foxrothschild.com
www.foxrothschild.com

10/4/2010

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 69 of 110   Page ID
#:4009
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 52 of 80   Page ID
#:3782

# EXHIBIT 9

**From:** Doroshow, James E.
**Sent:** Friday, August 20, 2010 8:57 AM
**To:** 'Nicholas A. Merkin'
**Cc:** LeBrane, Claudia A.; Osterberg, Eric C.; Lewis, M. Michael
**Subject:** Accelerated: This Morning's Meet and Confer Session

Mr. Merkin:

I want to summarize what occurred at our meet and confer session at my office at 8 am this morning:

10/1/2010

1.    Motion to Extend Deadlines in the Case by 90 Days. Even though I had written your office a letter and emails in advance of our meeting, and you told me you had been authorized by your office and your client to appear today, you informed me for the first time this morning that you did not have authority (and Mr. Nitti did not have authority) to agree to extend any deadlines in this case and would need to confer with Mr. Harder and your client before letting us know your position. Obviously, this made the meeting a complete waste of time. As such, I am reserving the right to seek sanctions against your firm and your client for its conduct.

2.    Prentiss Deposition Questions. You also told me this morning that your client was not prepared to answer any of the questions he was asked at his deposition with one exception. When I pointed out to you that he had testified in Oregon in open court at the recent Renaissance hearing what he charges clients on a monthly basis, and that this information can presumably be learned by merely calling the Grasshopper center, you indicated you would ask him whether he is prepared to answer questions regarding what Plaintiffs charge for "treatment." Apart from this one question, you told me that because our clients are competitors, and your client "is not comfortable" sharing information with me even under an Attorney's Eyes designation, your client will not answer any questions that were objected to on grounds of confidentiality or privacy. You also indicated that he would not answer any of the other questions he refused to answer based on various other objections as stated in the record. Under these circumstances, we will be filing a motion to compel and for sanctions.

3.    The Perry v. Schwerneger case. During our discussion, I told Mr. Nitti I had read the Perry decision he cited during Mr. Prentiss' deposition as purported authority for his assertion that he believes Plaintiffs and Counter-Defendants have an absolute First Amendment right to make whatever statements they want (accurate or misleading) in a book or over the internet. When I pointed out to Mr. Nitti that there was nothing in the Perry decision supporting this position, and asked him to cite me to specific language in the decision (which he had with him), he was unable to do so. I also told Mr. Nitti that I would suggest he read the law on this subject since there is no First Amendment right to engage in false and misleading advertising (otherwise the exception would swallow the law under the Lanham Act). In response, Mr. Nitti told me he was an "expert" in this field and I should review his Supreme Court record. Again, I would invite you or Mr. Nitti to cite law to me that supports your blanket claim of First Amendment immunity, if you have it.

4.    Your August 3, 2010 Correspondence and My Client's Discovery Responses. Even though you asked me to prepare to discuss the discovery issues with you addressed in your August 3rd correspondence, and I took time to prepare to do so, you told me this morning that, because your client now intended to file a motion to dismiss its claims, you considered any issues related to our interrogatory responses to be "moot." As such, I now consider this issue dead. In terms of my client's documents, you insisted that you still needed some documents from my client because our Counterclaims continued. However, when I asked you to inform me which of your document requests you wanted documents for, you indicated you could not tell me and gave no indication that you would parse the discovery to take into account the fact that you now wanted to dismiss your affirmative claims. I told you that one of the reasons we had yet to produce documents was because of the absence of a protective order (which is the subject of a current motion given your office's and your client's refusal to stipulate to one). However, after a protective order is entered I told you we are prepared to produce responsive, non-privileged documents, and expected your office to do the same.

I trust this accurately memorializes our discussion this morning. If anything is inaccurate, in whole or in part, please let me know immediately. Again, given the manner which this conference was conducted by your office and your co-counsel we intend to ask for sanctions to compensate us for the unnecessary expense of having to prepare for and attend what was largely a wasteful exercise.

Jim Doroshow

**James E. Doroshow**
Attorney at Law
**Fox Rothschild LLP**
1800 Century Park East, Suite 300
Los Angeles, CA 90067
310.228-6990 -Direct
310.556.9828 -Fax
jdoroshow@foxrothschild.com
www.foxrothschild.com

10/1/2010

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 72 of 110   Page ID
#:4012
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 55 of 80   Page ID
#:3785

# EXHIBIT 10



LAW OFFICES

## WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP

Charles J. Harder
charder@wrslawyers.com

File No.
17875-003

September 20, 2010

**Via email and U.S. Mail**
James E. Doroshow, Esq.
Fox Rothschild LLP
1800 Century Park East, Suite 300
Los Angeles, California 90067

Re:   **Grasshopper House v. Accelerated Recovery Centers, LLC**
      USDC Case No.: 09-CV-08128-DMG-PLA

Dear Mr. Doroshow:

In response to your request, this will set forth the topics that we will discuss tomorrow at 10:00 a.m.

1.      Accelerated Recovery Center, Inc. has not produced a single document in this case. This is in violation of Rule 26(a), and also is a complete failure to comply with Accelerated's discovery obligations. Passages' Requests for Production of Documents to Accelerated request all documents that support or relate to each of Accelerated's Counterclaims in this action. If no documents are going to be produced, then we request that Accelerated enter into a stipulation stating that it has no documents in its possession, custody or control that support its Counterclaims. Otherwise, the documents should be produced by the end of this week.

2.      Accelerated provides very little information in its Rule 26(a) Initial Disclosures supporting its Counterclaims, and also provides very little information in response to Grasshopper's Interrogatories requesting "all facts" that support each of Accelerated's Counterclaims. We request that full and complete responses be provided. We intend to move for summary judgment and/or summary adjudication as to each of Accelerated's Counterclaims, on grounds that, among other things, Accelerated cannot produce evidence to support its Counterclaims. Therefore, to the extent any evidence exists to support the Counterclaims, it should be provided within the interrogatory

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 74 of 110   Page ID
#:4014
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 57 of 80   Page ID
#:3787

James E. Doroshow, Esq.
Fox Rothschild LLP
September 20, 2010
Page 2

responses.  Any other information required to be provided pursuant to Rule 26(a) also
must be furnished within the disclosures.  Morever, interrogatory responses cannot refer
to the Rule 26(a) disclosures; the interrogatory responses should be full and complete
without reference to other documents.  Full and complete interrogatory responses, Rule
26(a) disclosures, and all responsive documents should be provided by the end of this
week.  We have been waiting months for this information to be produced.

Very truly yours,

WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP

CHARLES J. HARDER

CJH\ds

cc:    Thomas Nitti, Esq.
       Nicholas Merkin, Esq.

I:\17875\003\Letters\Doroshow ltr 092010.wpd

Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 58 of 80   Page ID #:3788

# EXHIBIT 11

Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 59 of 80   Page ID
#:3789

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA


GRASSHOPPER HOUSE, LLC, a            )
California limited liability         )
company, doing business as           )
"Passages Malibu," PASSAGES          )
SILVER STRAND, LLC, a California     )
Limited Liability Company,           )
                                     )
                  Plaintiffs,        ) CASE NO.
                                     ) 2:09-cv-08128-DMG-PLA
          vs.                        )
                                     )
ACCELERATED RECOVERY CENTERS,        )
LLC, a Georgia limited liability     )
company,                             )
                                     )
                  Defendant.         )
_____)
                                     )
AND RELATED COUNTER-CLAIM            )
_____)



TRANSCRIPT OF PROCEEDINGS, taken on
behalf of the Plaintiffs and Counter-Defendants, at 11400
West Olympic Boulevard, Ninth Floor, Los Angeles,
California, commencing at 10:09 a.m., on Tuesday,
September 21, 2010, by SHANTI ELLIS, CSR NO. 13205.


Pages 1 - 36

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 77 of 110   Page ID
#:4017
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 60 of 80   Page ID
#:3790

**Page 10**

1      MR. HARDER: Okay.
2      MR. DOROSHOW: -- just lower your voice and calm
3  down just a bit.
4      MR. HARDER: Okay. I'm not -- you're saying
5  "calm down." I'm perfectly calm. I'm just trying to --
6      MR. DOROSHOW: You're --
7      MR. HARDER: -- finish a sentence without you
8  interrupting. You constantly interrupt me. So please, if
9  you could just do me the courtesy of not talking for the
10  next few seconds so that I could finish my thought.
11      I've stated before, and I'm going to state it
12  again -- and Mr. Merkin's letter or e-mail is consistent
13  with this -- that discovery as to Counterclaims have --
14  has always been outstanding. We've always expected full
15  and complete Responses to the Interrogatories. We've
16  always expected full and complete Responses to the Request
17  For the Production of Documents as it pertains to the
18  Counterclaims and all issues that have anything at all to
19  do with the Counterclaims.
20      As to Interrogatories and document requests that
21  are specific that only deal with the First Amended
22  Complaint only, such as produce all documents that support
23  your first affirmative defense or state the complete
24  factual basis for your first affirmative defense.
25      We agree to put that off until after the Court

**Page 11**

1  has ruled on our motion to dismiss the First Amended
2  Complaint --
3      MR. DOROSHOW: Okay. Charles --
4      MR. HARDER: -- otherwise, as to all other
5  discovery, it's active. We have expected full and
6  complete Responses, and that's why we're here today, to
7  see if you will agree to provide full and complete
8  Responses to the Interrogatories I just mentioned and also
9  all of the document requests excepting those that pertain
10  to -- that mention specifically First Amended -- excuse
11  me -- that mention specifically affirmative defenses.
12      MR. DOROSHOW: Is there a reason you couldn't put
13  this in a letter to me before we met today --
14      MR. HARDER: I put it in a letter yesterday.
15      MR. DOROSHOW: Did you mention these specific
16  Interrogatories in your letter?
17      MR. HARDER: I believe I did.
18      MR. DOROSHOW: You did? Can you please provide
19  me with a copy --
20      MR. HARDER: Well, I gave you a copy yesterday.
21  I don't have a copy with me right now.
22      MR. DOROSHOW: You think you mentioned each
23  specific Interrogatory that is the subject of what you
24  want to --
25      MR. HARDER: Okay. I'm not going to -- because

**Page 12**

1  we don't have a letter, Interrogatory No. 2, "State all
2  facts" --
3      MR. DOROSHOW: Sir --
4      MR. HARDER: -- "that support" --
5      MR. DOROSHOW: -- sir, sir, you're now
6  interrupting me. I'm in the middle of a sentence --
7      MR. HARDER: Oh, I thought you were finished.
8      MR. DOROSHOW: No, sir --
9      MR. HARDER: Okay. Go ahead --
10      MR. DOROSHOW: -- I've asked you a question. Why
11  did you not send me a letter yesterday, as I requested,
12  telling me which specific discovery you felt was at issue
13  here?
14      MR. HARDER: I did --
15      MR. DOROSHOW: Where --
16      MR. HARDER: -- now to talk about the
17  discovery --
18      MR. DOROSHOW: No, you're not going to --
19      MR. HARDER: -- I sent it to you yesterday. You
20  didn't bring a copy. I didn't bring it with me here. The
21  Interrogatory is --
22      MR. DOROSHOW: You're interrupting me, sir. Can
23  I --
24      MR. HARDER: No, I -- you finished, and now I'm
25  talking, and now you're interrupting --

**Page 13**

1      MR. DOROSHOW: Charles, you --
2      MR. HARDER: -- so --
3      MR. DOROSHOW: -- haven't stopped talking --
4      MR. HARDER: -- Interrogatory -- Interrogatory
5  No. 2 --
6      THE REPORTER: Hang on. Hang on --
7      MR. DOROSHOW: -- lower your voice and relax.
8  You're squeezing your pen. You're raising your voice.
9  You're clearly upset; and I'm sorry this is causing you to
10  be upset --
11      MR. HARDER: I'm not upset all, Mr. Doroshow --
12      MR. DOROSHOW: Can I speak --
13      MR. HARDER: -- I'm just trying to finish a
14  sentence.
15      No, you can't speak for just one second because
16  it's my turn to speak --
17      MR. DOROSHOW: Are you going to allow me to
18  speak? Otherwise, I'm leaving.
19      MR. HARDER: Are you leaving? Go ahead and
20  leave.
21      MR. DOROSHOW: Charles, you're obviously upset.
22  You were supposed to send me -- .
23      MR. HARDER: You're standing --
24      MR. DOROSHOW: I am indeed --
25      MR. HARDER: -- and leering over me --

4  (Pages 10 to 13)

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 78 of 110   Page ID
#:4018
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 61 of 80   Page ID
#:3791

Page 22

1    MR. HARDER: No, no, I'm going to respond to
2  that.
3         The discovery is still ongoing. The discover has
4  not closed. I'm allowed to meet and confer with you
5  anytime I want during the discovery period --
6    MR. DOROSHOW: That's --
7    MR. HARDER: -- that's what I'm doing. I would
8  like the documents and the Discovery Responses from
9  Accelerated. Am I going to get those? Yes or no?
10    MR. DOROSHOW: Can I please get a letter in
11  advance of meeting and conferring with you in accordance
12  with the local rules? I'll be with you in one minute --
13    MR. HARDER: I sent you a letter yesterday.
14    MR. DOROSHOW: It doesn't specify any
15  discovery --
16    MR. HARDER: Well, that's why I'm talking about
17  it today --
18    MR. DOROSHOW: But that's not the -- you don't do
19  it that way, Charles. The rule is very clear. I sent you
20  a copy of the rule. I even wrote it out in an e-mail
21  saying in the local rule, you're supposed to specifically
22  designate the particular discovery items you think are in
23  dispute and state the reasons why you think you're
24  entitled to the information.
25    MR. MERKIN: Let me just interject. This is a

Page 23

1  continued conference from the initial meet and confer
2  conference that we had back on August 20th --
3    MR. DOROSHOW: Good. Go ahead.
4    THE WITNESS: -- that my letter clearly sets out
5  all the Discovery Responses that we were going to -- all
6  the Document Request Responses that we are going to
7  discuss. We agreed back at that conference that, since
8  there was a motion for protective order pending and your
9  Discovery Responses stated that you were not willing to
10  produce without that motion -- without a protective order,
11  we agreed that we would continue the discussion in order
12  to allow the Court to rule on the motion for protective
13  order, which it did, and it granted it in substantial
14  part.
15         And as it says in that e-mail where I
16  underlined -- it's actually the second page, the page you
17  haven't read yet -- that we would agree to continue this
18  discussion after the ruling on the protective order; and,
19  you know, your Responses themselves say that you have
20  responsive documents, you will produce them pursuant to
21  the protective order. It's now been several weeks -- I
22  think it's been almost a month -- since the protective
23  order's been entered, and we still have no documents.
24         I don't see why either me or Charles would have
25  to write an entirely new letter just duplicating what is

Page 24

1  said about the Request For Production in my previous
2  letter. There's only one production request by one party.
3  It's not a big mystery as to which one we were talking
4  about today and which Responses.
5    MR. DOROSHOW: May I respond?
6    MR. MERKIN: Please do.
7    MR. DOROSHOW: Okay. Mr. Merkin, your letter to
8  August 3rd, which I'm going to ask the court reporter to
9  mark as Exhibit 2 right now. I will hand you a copy of
10  it.
11         (The document referred to was marked as Exhibit 2
12         for identification.)
13    MR. DOROSHOW: Deals with the entire universe of
14  discovery that you served on us.
15         I asked Mr. Harder yesterday to send me a letter
16  explaining which specific discovery items you continue to
17  believe were important to this case -- given your
18  decision, not mine -- to move to dismiss the Complaint in
19  this action. That was the reason that I wrote a letter in
20  an e-mail to him. Mr. Harder has failed to tell me this
21  morning which discovery you guys are still interested in
22  receiving. I am not going to --
23    MR. HARDER: That's not true. I have --
24    MR. DOROSHOW: Can I --
25    MR. HARDER: -- I'm trying to go through it with

Page 25

1  you, Mr. Doroshow --
2    MR. DOROSHOW: I'm not --
3    MR. HARDER: -- I have it in my hand. I have
4  your Responses to our Requests for Production: Request
5  No. 1, Request No. 2, Request No. 3. I'm going to go
6  through it all with you, sir, this morning --
7    MR. DOROSHOW: You are supposed --
8    MR. HARDER: Please don't interrupt. Please
9  don't interrupt --
10    MR. DOROSHOW: You interrupted me.
11    MR. HARDER: No, I didn't.
12    MR. DOROSHOW: Yes, you did, Charles --
13    MR. HARDER: No, I didn't --
14    MR. DOROSHOW: I'm --
15    MR. HARDER: -- I waited until you stopped.
16    MR. DOROSHOW: Look --
17    MR. HARDER: Are you -- are you --
18    MR. DOROSHOW: -- I want to --
19    MR. HARDER: -- going to discuss with me or not
20  the Request --
21    MR. DOROSHOW: Yes --
22    MR. HARDER: -- for Production --
23    MR. DOROSHOW: -- I'll discuss it as soon as
24  you --
25    MR. HARDER: Okay. Then let's start talking

7  (Pages 22 to 25)

# EXHIBIT 12

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRASSHOPPER HOUSE, LLC, a California limited liability company, doing business as "Passages Malibu," PASSAGES SILVER STRAND, LLC, a California Limited Liability Company,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>ACCELERATED RECOVERY CENTERS, LLC, a Georgia limited liability company,<br><br>                    Defendant.<br>_____<br><br>AND RELATED COUNTER-CLAIM<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) CASE NO.<br>) 2:09-cv-08128-DMG-PLA<br>)<br>)<br>)<br>)<br>)<br>).<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

TRANSCRIPT OF PROCEEDINGS, taken on behalf of the Plaintiffs and Counter-Defendants, at 11400 West Olympic Boulevard, Ninth Floor, Los Angeles, California, commencing at 10:09 a.m., on Tuesday, September 21, 2010, by SHANTI ELLIS, CSR NO. 13205.

Pages 1 - 36

## Page 10

1    MR. HARDER: Okay.
2    MR. DOROSHOW: -- just lower your voice and calm
3    down just a bit.
4    MR. HARDER: Okay. I'm not -- you're saying
5    "calm down." I'm perfectly calm. I'm just trying to --
6    MR. DOROSHOW: You're --
7    MR. HARDER: -- finish a sentence without you
8    interrupting. You constantly interrupt me. So please, if
9    you could just do me the courtesy of not talking for the
10   next few seconds so that I could finish my thought.
11   I've stated before -- and I'm going to state it
12   again -- and Mr. Merkin's letter or e-mail is consistent
13   with this -- that discovery as to Counterclaims have --
14   has always been outstanding. We've always expected full
15   and complete Responses to the Interrogatories. We've
16   always expected full and complete Responses to the Reques
17   For the Production of Documents as it pertains to the
18   Counterclaims and all issues that have anything at all to
19   do with the Counterclaims.
20   As to Interrogatories and document requests that
21   are specific that only deal with the First Amended
22   Complaint only, such as produce all documents that support
23   your first affirmative defense or state the complete
24   factual basis for your first affirmative defense.
25   We agree to put that off until after the Court

## Page 11

1    has ruled on our motion to dismiss the First Amended
2    Complaint --
3    MR. DOROSHOW: Okay. Charles --
4    MR. HARDER: -- otherwise, as to all other
5    discovery, it's active. We have expected full and
6    complete Responses, and that's why we're here today, to
7    see if you will agree to provide full and complete
8    Responses to the Interrogatories I just mentioned and also
9    all of the document requests excepting those that pertain
10   to -- that mention specifically First Amended -- excuse
11   me -- that mention specifically affirmative defenses.
12   MR. DOROSHOW: Is there a reason you couldn't put
13   this in a letter to me before we met today --
14   MR. HARDER: I put it in a letter yesterday.
15   MR. DOROSHOW: Did you mention these specific
16   Interrogatories in your letter?
17   MR. HARDER: I believe I did.
18   MR. DOROSHOW: You did? Can you please provide
19   me with a copy --
20   MR. HARDER: Well, I gave you a copy yesterday.
21   I don't have a copy with me right now.
22   MR. DOROSHOW: You think you mentioned each
23   specific Interrogatory that is the subject of what you
24   want to --
25   MR. HARDER: Okay. I'm not going to -- because

## Page 12

1    we don't have a letter, Interrogatory No. 2, "State all
2    facts" --
3    MR. DOROSHOW: Sir --
4    MR. HARDER: -- "that support" --
5    MR. DOROSHOW: -- sir, sir, you're now
6    interrupting me. I'm in the middle of a sentence --
7    MR. HARDER: Oh, I thought you were finished.
8    MR. DOROSHOW: No, sir --
9    MR. HARDER: Okay. Go ahead --
10   MR. DOROSHOW: -- I've asked you a question. Why
11   did you not send me a letter yesterday, as I requested,
12   telling me which specific discovery you felt was at issue
13   here?
14   MR. HARDER: I did --
15   MR. DOROSHOW: Where --
16   MR. HARDER: -- now to talk about the
17   discovery --
18   MR. DOROSHOW: No, you're not going to --
19   MR. HARDER: -- I sent it to you yesterday. You
20   didn't bring a copy. I didn't bring it with me here. The
21   Interrogatory is --
22   MR. DOROSHOW: You're interrupting me, sir. Can
23   I --
24   MR. HARDER: No, I -- you finished, and now I'm
25   talking, and now you're interrupting --

## Page 13

1    MR. DOROSHOW: Charles, you --
2    MR. HARDER: -- so --
3    MR. DOROSHOW: -- haven't stopped talking --
4    MR. HARDER: -- Interrogatory -- Interrogatory
5    No. 2 --
6    THE REPORTER: Hang on. Hang on --
7    MR. DOROSHOW: -- lower your voice and relax.
8    You're squeezing your pen. You're raising your voice.
9    You're clearly upset; and I'm sorry this is causing you to
10   be upset --
11   MR. HARDER: I'm not upset all, Mr. Doroshow --
12   MR. DOROSHOW: Can I speak --
13   MR. HARDER: -- I'm just trying to finish a
14   sentence.
15   No, you can't speak for just one second because
16   it's my turn to speak --
17   MR. DOROSHOW: Are you going to allow me to
18   speak? Otherwise, I'm leaving.
19   MR. HARDER: Are you leaving? Go ahead and
20   leave.
21   MR. DOROSHOW: Charles, you're obviously upset.
22   You were supposed to send me --
23   MR. HARDER: You're standing --
24   MR. DOROSHOW: I am indeed --
25   MR. HARDER: -- and leering over me --

4  (Pages 10 to 13)

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 82 of 110   Page ID
#:4022
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 65 of 80   Page ID
#:3795

# EXHIBIT 13

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 83 of 110   Page ID
#:4023
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 66 of 80   Page ID
#:3796

Grasshopper House v. Accelerated Recovery          Transcript of Proceedings

```
 1            REPORTER'S TRANSCRIPT OF PROCEEDINGS

 2         taken at 1800 Century Park East, Suite 300,

 3         Los Angeles, California, on Thursday,

 4         September 23, 2010, at 11:53 a.m., before

 5         R. Jerrod Jones, CSR No. 11750

 6

 7

 8      APPEARANCES:

 9

10      FOR THE PLAINTIFFS, GRASSHOPPER HOUSE, LLC, dba
        PASSAGES MALIBU; PAX PRENTISS:
11
               WOLFE, RIFKIN, SHAPIRO, SCHULMAN &
12             RABKIN, LLP
               BY:  CHARLES J, HARDER, ESQ.
13             11400 West Olympic Boulevard
               9th Floor
14             Los Angeles, California  90064
               (310) 478-4100
15

16      FOR THE DEFENDANT, ACCELERATED RECOVERY CENTERS, LLC:

17
               FOX, ROTHSCHILD, LLP
18             BY:   JAMES E. DOROSHOW, ESQ.
               1800 Century Park East
19             Suite 300
               Los Angeles, California  90067
20             (310) 228-6990

21

22      ALSO PRESENT:

23             (None)

24

25
                                                        2
```

Grasshopper House v. Accelerated Recovery        Transcript of Proceedings

```
 1        LOS ANGELES, CALIFORNIA; THURSDAY, SEPTEMBER 23, 2010

 2                          11:53 A.M.

 3

 4             MR. DOROSHOW:  Mr. Harder, there are

 5   several issues that we need to discuss this morning.

 6   As a courtesy to you, I just received a letter from

 7   you this morning, and I'm prepared to address those

 8   issues with you today --

 9             MR. HARDER:  Okay.  Great.

10             MR. DOROSHOW:  -- in the hope that we can

11   reach some closure.  Let's take those first, if we

12   can.

13             In terms of our expert disclosures, we

14   disagree with your position.  The reason why Mr. Roth

15   at this point is not able to prepare his report is

16   because you have yet to produce financial information

17   to us.  So it's your failure to produce financial

18   records to us that makes us incapable of preparing a

19   damage report for you at this point.

20             MR. HARDER:  Well, let me ask you this,

21   though:  You have counterclaims in this case.  As far

22   as our claims, there's a pending motion to dismiss

23   those claims.  As far as your counterclaims against

24   us --

25             MR. DOROSHOW:  We need your financial
```

3

Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 68 of 80   Page ID
#:3798

Grasshopper House v. Accelerated Recovery                Transcript of Proceedings

1    records.

2              MR. HARDER:  -- you need our financial

3    records --

4              MR. DOROSHOW:  Of course.

5              MR. HARDER:  -- in order to have your

6    expert prepare?  Can you explain why?

7              MR. DOROSHOW:  Sure.  Under the Atlanta

8    Act for unfair competition, among other remedies,

9    there's a remedy for discouragement of profits based

10   on false statements.  We have not gotten any

11   financial profit information from your client today.

12   I can't have a damage expert prepare a report on what

13   discouragement is appropriate or what amount of

14   damages should be awarded until I have that financial

15   data made available to me.

16             MR. HARDER:  Okay.  And then once you get

17   the financial data, I'm going to get the expert

18   report?

19             MR. DOROSHOW:  Assuming we get everything

20   we need in one shot, and we don't have to do this

21   piecemeal, that's true.

22             MR. HARDER:  In what time frame?

23             MR. DOROSHOW:  We can probably do that

24   within 30 days after receiving your data, assuming we

25   get everything we need.

                                                      4

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 86 of 110   Page ID
#:4026
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 69 of 80   Page ID
#:3799

Grasshopper House v. Accelerated Recovery                    Transcript of Proceedings

1          MR. HARDER:  Well, 30 days is more than 30

2     days after the expert disclosure cutoff.

3          MR. DOROSHOW:  Counsel, I've stated my

4     position.  If you want to disagree with me, that's

5     fine.

6          MR. HARDER:  Well, I do disagree with it.

7     What about section two of your disclosures?

8          MR. DOROSHOW:  The same problem.

9          MR. HARDER:  What's the problem?

10          MR. DOROSHOW:  The problem is we don't

11     have your discovery.  We're still waiting for

12     discovery responses from you.

13          MR. HARDER:  You do have some discovery

14     responses.  What specifically do you need in order to

15     be able to designate an expert as to the industry

16     with respect to the term cure?  I don't understand

17     that.

18          MR. DOROSHOW:  Do you want me to explain

19     it to you?

20          MR. HARDER:  I do.  But let me say one

21     more thing.  You have Chris Prentiss's book.  You

22     have copies of the Passages' website and prior

23     versions of it.  You have the discovery that would

24     allow you to identify an expert on this topic.  And

25     you didn't do it by the discovery disclosure

                                                          5

Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 70 of 80   Page ID #:3800

Grasshopper House v. Accelerated Recovery                    Transcript of Proceedings

1    deadline.  So I just -- you know, I don't see any

2    excuse for this one.

3              MR. DOROSHOW:  Okay.  Do you want me to

4    speak now?

5              MR. HARDER:  Well, yes, you can.

6              MR. DOROSHOW:  Okay.  All right.  Your

7    client has not had his deposition taken yet, and

8    neither as Pax Prentiss.  And the reason we haven't

9    taken their depositions yet is because you are not

10   complying with the discovery order.  We don't have

11   all of your documents.  We only get one chance to

12   depose your clients.

13             The reason that we've waited to depose

14   them at the end of this discovery period is because

15   of your failure to produce records.  I want to do a

16   complete examination.  Until I get all of your

17   preliminary discovery, which was served over six

18   months ago in this case, have a chance to review it

19   and to take an examination of your clients, which I

20   was intending to do next week, until you told me they

21   were not available, we can't have an expert prepared

22   or ready to designate in this case in terms of

23   exactly what they are going to be saying and provide

24   an expert report.  That's the problem.

25             So by delaying and producing preliminary

6

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 88 of 110   Page ID
#:4028
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 71 of 80   Page ID
#:3801

Grasshopper House v. Accelerated Recovery          Transcript of Proceedings

1   discovery in this case for months, you are backing up

2   everything.   That's why I asked your office to

3   stipulate to extend the deadlines in this case.   When

4   you declined to do so, I did my best to designate who

5   I could at this point with the limited information I

6   have available.

7          MR. HARDER:   I'm reserving my right to

8   strike section two of your disclosure --

9          MR. DOROSHOW:   You have that right.

10          MR. HARDER:   -- and also whatever remedies

11   are available as to section one as well.

12          MR. DOROSHOW:   You have that right.   You

13   have that right.   You can reserve your rights.   I'm

14   reserving mine.

15          All right.   I'm going on now to the second

16   topic, unless you have anything more to add on that

17   subject?

18          MR. HARDER:   I don't.

19          MR. DOROSHOW:   Okay.   The depositions of

20   your clients scheduled for next week, when are your

21   clients available for their deposition?

22          MR. HARDER:   Well, they would be

23   available -- I'd have to check their schedules

24   precisely.   But once I can get your clients' depos --

25   if your clients' depositions happen in Atlanta, then

7

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 89 of 110   Page ID
#:4029
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 72 of 80   Page ID
#:3802

Grasshopper House v. Accelerated Recovery              Transcript of Proceedings

1    I will ask my clients for their availability right

2    after that trip.

3              MR. DOROSHOW:  Well, I need specific dates

4    today or --

5              MR. HARDER:  Okay.  You give me specific

6    dates, and I'll give you --

7              MR. DOROSHOW:  You have specific dates.

8              MR. HARDER:  What are the specific dates?

9              MR. DOROSHOW:  I'm willing to work with

10   you on the dates you've selected.

11             MR. HARDER:  Okay.  So the five people

12   that I've noticed are going to be at their deposition

13   in Atlanta on the dates and times that I --

14             MR. DOROSHOW:  It's my understanding as we

15   sit here today, that's correct.

16             MR. HARDER:  Great.

17             MR. DOROSHOW:  Okay.  So what's --

18             MR. HARDER:  I'll get you dates for after

19   the 8th.

20             MR. DOROSHOW:  Okay.  I'm not agreeing to

21   put off the deposition dates unless and until you and

22   I agree on acceptable dates prior to November 1 to

23   depose your clients, okay?  Are we clear on that one?

24   Otherwise, I'm going to go forward with them on

25   those --

8

Grasshopper House v. Accelerated Recovery                Transcript of Proceedings

1          MR. HARDER:  I'll get you alternative

2   dates that are after the 8th.

3          MR. DOROSHOW:  Okay.  In terms of your

4   discovery, the discovery at this point -- the

5   interrogatories we are prepared to supplement and

6   will be happy to do so within two weeks' period of

7   time.

8          MR. HARDER:  All of them?

9          MR. DOROSHOW:  Let me just pull them up

10  and see what we've got.

11         MR. HARDER:  And I want full and complete

12  responses.

13         MR. DOROSHOW:  Like you've given me?

14         MR. HARDER:  Well, like the magistrate has

15  ordered us to provide.  And we have provided what we

16  can so far.  And we're in the process of doing more.

17         MR. DOROSHOW:  "So far" is not going to

18  work.  We're going to deal with that issue later.

19  We'll be sending you -- are you going to be

20  hand-serving the supplemental discovery tomorrow?

21         MR. HARDER:  That is my intention, Jim.

22         MR. DOROSHOW:  And are we getting

23  additional documents as far as --

24         MR. HARDER:  Yes, you will be.

25         MR. DOROSHOW:  Very good.  So we're going

                                                    9

Grasshopper House v. Accelerated Recovery          Transcript of Proceedings

1    to give you our best answers to the interrogatories.

2    And I will go ahead and supplement those.

3           In terms of your request for additional

4    documents, again, you having told me and Mr. Merkin

5    having told me that you only wanted discovery related

6    to our counterclaims, you've now taken the position

7    in your September 21st letter that you want documents

8    responsive to the entire set of document requests,

9    which are, as you know, 133 requests.

10          MR. HARDER:  Well, I think that they are

11   all either pertinent to, I think that they are all

12   relevant to the issues of your counterclaims or

13   reasonably calculated to lead to admissible evidence.

14   As far as I know, there's never been a waiver as to

15   any of the document requests.

16          My understanding was that there was an

17   initial hesitation with respect to the

18   interrogatories that were propounded by, I think,

19   Grasshopper that were asking for responses as to

20   Accelerated's 1st through 13th affirmative defenses,

21   and based on the magistrate's order that discovery is

22   still fair game until there's been a dismissal.

23          That's why we are pressing forward on that

24   now following the magistrate's order.  But as far as

25   the document request, there's never been a waiver or

                                                          10

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 92 of 110   Page ID
#:4032
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 75 of 80   Page ID
#:3805

Grasshopper House v. Accelerated Recovery                Transcript of Proceedings

1   relinquishment of any of the document requests

2   because I think that they are all pertinent.

3             MR. DOROSHOW:  Well, we disagree with you.

4   And we also think that there has been a waiver.  And

5   that is that you have told the court and you've told

6   us that because you are dismissing your claims, you

7   didn't need documents from us, except to the extent

8   that they related to our counterclaims.  And in doing

9   so, you didn't specify that in any manner related to

10  your claims.

11            In fact, you told us the opposite, which

12  is that given that you intended to dismiss your

13  claims, that we needn't produce any documents that we

14  felt were relevant to your claims in this case.  And

15  I have relied on that representation.  And for you to

16  now ask me a month before the discovery cutoff in

17  this case, to now take on the gargantuan task of

18  responding to 133 document requests is not

19  reasonable.  And I think the magistrate will agree.

20            So if you want to parse this and you want

21  to send me a letter that says, I need documents that

22  specifically relate to specific subjects, I'll be

23  happy to look at it, Charles.  But if it's a global

24  request, I'm not going to agree to it.

25            MR. HARDER:  How about this, Jim:  As to

                                                            11

Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 76 of 80   Page ID
#:3806

Grasshopper House v. Accelerated Recovery                    Transcript of Proceedings

1    each document request where Accelerated states that

2    it will produce responsive, nonprivileged documents,

3    will Accelerated agree to produce its documents?

4                MR. DOROSHOW:  No.

5                MR. HARDER:  Then we're going to have to

6    move to compel.

7                MR. DOROSHOW:  Perfect.  Go for it.

8    That's fine.  Are we done?  The only other thing I've

9    got -- and I've got one more thing, unless you have

10   more on your letter -- is this communication that

11   your client had with our insurance company.

12               Were you aware of that communication?

13               MR. HARDER:  I have learned about it from

14   you.

15               MR. DOROSHOW:  Okay.  You were not aware

16   of it at the time that your client made the

17   communication; is that right?

18               MR. HARDER:  Look, I'm not being deposed.

19   I'm not going to disclose to you any attorney-client

20   communications that I've had.  I have seen what

21   you've told me, or what you've told the court is a

22   communication that Chris Prentiss made to the

23   insurance company.  And I read it when I read your

24   second supplemental declaration yesterday.

25               MR. DOROSHOW:  And just so I'm clear, is

                                                           12

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 94 of 110   Page ID
#:4034
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 77 of 80   Page ID
#:3807

Grasshopper House v. Accelerated Recovery                Transcript of Proceedings

1  it your position that no lawyer representing

2  Mr. Prentiss or any of the parties in this lawsuit,

3  including from your office or Mr. Netty's office, was

4  aware of that communication before or at the time

5  that it was made?

6          MR. HARDER:  I'm not disclosing any

7  attorney-client communications or internal workings

8  of my client.  To the best of my knowledge, there's

9  been no communication from any attorneys to any of

10 your clients directly, only through you.

11         MR. DOROSHOW:  Again, you know the Rules

12 of Professional Conduct.  You can circumvent them

13 easily by having a client make direct communications

14 at the behest, the understanding, the direction or

15 knowledge of a lawyer.  That is unethical under the

16 California Rules of Professional Conduct.

17         I'm asking for representation from you.

18 I'm not asking you to divulge information.  I'm

19 asking you to tell me whether you, Mr. Netty, or

20 anyone else representing Chris Prentiss, Grasshopper,

21 or any of the other parties in the suit knew that

22 that communication was occurring or had occurred at

23 the time that it was taking place?

24         MR. HARDER:  I'm not going to answer your

25 question.  It calls for attorney-client

                                                        13

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 95 of 110   Page ID
#:4035
Case 2:09-cv-08128-DMG-PLA   Document 95-4   Filed 10/05/10   Page 78 of 80   Page ID
#:3808

Grasshopper House v. Accelerated Recovery                    Transcript of Proceedings

1    communications.  And I haven't -- do you have any

2    citations to legal authorities for your position?

3    Can you send them over to me today?

4              MR. HARDER:  Are we going to get any first

5    amendment authority that I've been waiting for a

6    month for?  You'll read this when she file the motion.

7              MR. HARDER:  So you are not going to give

8    me any legal authority?

9              MR. DOROSHOW:  You can take a look at the

10   California Rules of Professional Conduct that

11   prohibit ex parte communications of the party known

12   to represent.  Do you need me to cite you to that

13   rule?

14             MR. HARDER:  No, I'm familiar with it.

15             MR. DOROSHOW:  That's the rule.

16             MR. HARDER:  So nothing beyond the rule

17   that you are aware of?

18             MR. DOROSHOW:  That's case law

19   interpreting that, Charles.

20             MR. HARDER:  Yeah.  But what is it,

21   though?  You are meeting and conferring, but you

22   don't want to tell me what the case law is?  Do you

23   want to tell it to the magistrate?

24             MR. DOROSHOW:  The magistrate?  This isn't

25   a discovery issue.  This is the thing that's going to

                                                    14

Grasshopper House v. Accelerated Recovery                    Transcript of Proceedings

1    go in front of the court and perhaps elsewhere.

2             Do you really need me to cite you to cases

3    that say you cannot communicate through a client or

4    indirectly with someone knowingly represented by

5    counsel, or that I have an attorney-client

6    relationship with an insurance company?

7             MR. HARDER:  Well, Jim, I'm just telling

8    you that --

9             MR. DOROSHOW:  I think you'd better deal

10   with the substance of the problem rather than the

11   procedures, so --

12            MR. HARDER:  So you don't want to tell me?

13            MR. DOROSHOW:  I'm happy to share it with

14   you.

15            MR. HARDER:  Well, then, share it with me.

16   Send it to me today, and don't be argumentative with

17   me.

18            When can I get a copy of this last meet

19   and confer that we've had?

20            THE REPORTER:  Can we go off the record

21   for a minute?

22            MR. HARDER:  Yes.

23            (Discussion off the record.)

24            MR. HARDER:  An electronic copy of this

25   section sent later today is fine.

                                                        15

Grasshopper House v. Accelerated Recovery                Transcript of Proceedings

1          MR. DOROSHOW:  That's fine for me too.

2       (The statement of counsel concluded at

3       12:06 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                    16

# EXHIBIT B



**Fox Rothschild** LLP
ATTORNEYS AT LAW

1800 Century Park East, Suite 300
Los Angeles, CA 90067-1506
Tel 310.598.4150  Fax 310.556.9828
www.foxrothschild.com

James E. Doroshow
Direct Dial:  (310) 228-6990
Email Address:  jdoroshow@foxrothschild.com

October 6, 2010

**VIA FACSIMILE, EMAIL AND U.S. MAIL**

Charles J. Harder, Esq.
Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
11400 W. Olympic Boulevard, 9th Floor
Los Angeles, CA   90064
Fax:  310-479-1422

Re:     **Grasshopper House LLC v. Accelerated Recovery Centers**

Dear Mr. Harder:

I am responding to your letter dated October 5, 2010.  Again, I would respectfully request that you please try to be accurate in statements you make to me and the Court.

As I have repeatedly stated, and in fact demonstrated to you in case you overlooked it, my clients' depositions were not cancelled this past weekend.  As you know, we noticed your clients' depositions to take place during the first week of October 2010, before your clients' depositions the second week of October 2010.  Although we properly noticed the depositions, you refused to produce your clients for their depositions on the dates we selected, and demanded that my clients' depositions be taken first.  I agreed to allow you to do *on the express condition that you provide me with mutually convenient dates for your clients' depositions last week.* Despite repeated follow-up requests by me, you failed to do so.

A Pennsylvania Limited Liability Partnership

California     Connecticut     Delaware     Florida     Nevada     New Jersey     New York     Pennsylvania

A Pennsylvania Limited Liability Partnership

California     Connecticut     Delaware     Florida     Nevada     New Jersey     New York     Pennsylvania

Charles J. Harder, Esq.
October 6, 2010
Page 2

Accordingly, on Monday, September 27, 2010, a week before you claim you first learned the
Georgia depositions would not proceed on the dates you selected, I sent you an email stating
that: *"You'll get dates from me [for my clients' depositions] when I get yours....* Otherwise tell
them [your clients] to show up this week [for their depositions] as noticed." (Emphasis added).
That same day, I sent you a second email stating:

> "My client Kevin Kelly will be in Los Angeles next Monday for the
> hearing on your motion. *I'm going to suggest you depose him next
> Tuesday [in Los Angeles] as a Rule 306b witness and individually rather
> than in Atlanta.*
>
> *I'm reserving the right to produce the remainder of the people you want
> to depose until after we coordinate your clients depositions.*" (Emphasis
> added).

Despite these emails, you did not respond and failed to provide me with dates for
your clients' depositions last week. Accordingly, on October 2, 2010, I sent you
another email confirming what I had clearly told you a week earlier on September
27, 2010:

> "Since  your have not agreed to produce your clients for their depositions
> *as I told* you, we will not be producing ours next week. This was your
> decision not mine. *I postponed your clients depositions last week with
> the understanding I would have new dates from you last week. They
> haven't been provided. We are therefore not producing our clients for
> depositions in Atlanta next week.*" (Emphasis added).

Given these clear communications, your statements about how you supposedly
learned this "past weekend" for the first time that my clients' depositions would not
take placed this week is, of course, ridiculous and completely contrived.

Equally false is your assertion that: "yesterday you agreed to a meet and confer
conference today at 1:00 p.m. at my office to discuss this issue, but then you
cancelled the meeting earlier today, before it occurred." As you well know, I was
fully prepared to come to you office yesterday at 1:00 p.m. to discuss deposition
scheduling, and merely asked that Mr. Nitti attend the meeting before a court

Charles J. Harder, Esq.
October 6, 2010
Page 3

reporter so that we could discuss your office's and Mr. Nitti's improper *ex parte* communications with our insurer at the same time. As my emails on this subject plainly state, this was done so that we could avoid the cost of having two court reporters attend two separate meetings. As you know, I have been asking you and Mr. Nitti for weeks to meet to discuss this matter, yet you have failed and refused to do so in clear violation of Local Rule 7-3.

As you have repeatedly been told, *I stand ready, willing and able to meet to this day with you and Mr. Nitti this week to discuss deposition scheduling if you would simply agree to discuss with me our contemplated motion regarding your improper ex parte communications at the same time. Are you prepared to do so*? If so, please propose a time and date.

In terms of your three questions, I too have a number of questions I'd like you to answer in writing. These include when did you first learn that Chris Prentiss would be sending his *ex parte* email to our insurer? Did you or Mr. Nitti assist or authorize him in doing so? What was the reason why this communication took place, and why wasn't it done through my office, rather than directly to my client in violation of the California Rules of Professional Conduct? Why did you file the Motions to Compel yesterday without complying with Local Rule 37-2.2, including providing me with the completed Joint Stipulations one day before they were filed? Why did you insist on me sending you your portion of the Joint Stipulation by 5:00 p.m. Monday, October 4, 2010, telling me you would file it on that date; when you instead filed it last evening after 6:00 p.m.? Why didn't your office send me your portion of the Joint Stipulation relating to our Motion to Compel until after the noon hour when we specifically agreed to exchange our portions before noon?

Unfortunately, for better or worse, the Magistrate has ordered us to meet in person before a court reporter to confer regarding all of these matters. The Local Rules also require an in person meeting under Local Rule 37-1. Are you prepared to comply with the Magistrate's Order and the Local Rules? If so, I would be happy to discuss the questions you raise in your letter if you will simply be prepared to discuss the questions I raise above in advance of filing additional motions for attorney discipline and a motion to strike your Motions to Compel due to your failure to comply with the Local Rules.

LA1 57239v1 10/06/10

Charles J. Harder, Esq.
October 6, 2010
Page 4

Please let me know how and when you would like to proceed.

Sincerely,

*James E. Doroshow*

James E. Doroshow

JED:cl

cc:    Thomas A. Nitti, Esq. (Via facsimile)

# EXHIBIT C

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA


GRASSHOPPER HOUSE, LLC, dba )
PASSAGES MALIBU, a          )
California Limited Liability )
Company,                    )
                            )
            Plaintiff,      )
                            )
      vs.                   )  Case No.
                            )  CV 09-08128 DMG (PLAx)
ACCELERATED RECOVERY CENTERS,)
LLC, a Georgia Limited       )
Liability Company,           )
                            )
            Defendant.      )
_____ )
                            )
AND RELATED CROSS-ACTION.   )
_____ )


REPORTER'S TRANSCRIPT OF PROCEEDINGS

TAKEN ON:  THURSDAY, SEPTEMBER 23, 2010

REPORTED BY:  R. Jerrod Jones, CSR No. 11750


# Certified Copy

# Dianne Jones
& Associates    certified
                shorthand
                reporters

**DISK
ENCLOSED**

PO Box 1736
Pacific Palisades CA  90272

tel: 310.472.9882
fax: 310.454.0942
www.diannejonesandassociates.com

Case 2:09-cv-08128-DMG-PLA   Document 100-1   Filed 10/08/10   Page 105 of 110   Page ID
#:4045
Grasshopper House v. Accelerated Recovery                    Transcript of Proceedings

1          REPORTER'S TRANSCRIPT OF PROCEEDINGS

2          taken at 1800 Century Park East, Suite 300,

3          Los Angeles, California, on Thursday,

4          September 23, 2010, at 11:53 a.m., before

5          R. Jerrod Jones, CSR No. 11750

6

7

8   APPEARANCES:

9

10  FOR THE PLAINTIFFS, GRASSHOPPER HOUSE, LLC, dba
     PASSAGES MALIBU; PAX PRENTISS:
11

12          WOLFE, RIFKIN, SHAPIRO, SCHULMAN &
           RABKIN, LLP
           BY:  CHARLES J, HARDER, ESQ.
13        11400 West Olympic Boulevard
           9th Floor
14        Los Angeles, California  90064
           (310) 478-4100
15

16  FOR THE DEFENDANT, ACCELERATED RECOVERY CENTERS, LLC:

17

18          FOX, ROTHSCHILD, LLP
           BY:  JAMES E. DOROSHOW, ESQ.
19        1800 Century Park East
           Suite 300
20        Los Angeles, California  90067
           (310) 228-6990
21

22  ALSO PRESENT:

23          (None)

24

25

                                      2

1    LOS ANGELES, CALIFORNIA; THURSDAY, SEPTEMBER 23, 2010

2                        11:53 A.M.

3

4          MR. DOROSHOW:  Mr. Harder, there are

5    several issues that we need to discuss this morning.

6    As a courtesy to you, I just received a letter from

7    you this morning, and I'm prepared to address those

8    issues with you today --

9          MR. HARDER:  Okay.  Great.

10         MR. DOROSHOW:  -- in the hope that we can

11   reach some closure.  Let's take those first, if we

12   can.

13         In terms of our expert disclosures, we

14   disagree with your position.  The reason why Mr. Roth

15   at this point is not able to prepare his report is

16   because you have yet to produce financial information

17   to us.  So it's your failure to produce financial

18   records to us that makes us incapable of preparing a

19   damage report for you at this point.

20         MR. HARDER:  Well, let me ask you this,

21   though:  You have counterclaims in this case.  As far

22   as our claims, there's a pending motion to dismiss

23   those claims.  As far as your counterclaims against

24   us --

25         MR. DOROSHOW:  We need your financial

                                                          3

Grasshopper House v. Accelerated Recovery                    Transcript of Proceedings

```
 1    records.
 2                MR. HARDER:  -- you need our financial
 3    records --
 4                MR. DOROSHOW:  Of course.
 5                MR. HARDER:  -- in order to have your
 6    expert prepare?  Can you explain why?
 7                MR. DOROSHOW:  Sure.  Under the Atlanta
 8    Act for unfair competition, among other remedies,
 9    there's a remedy for discouragement of profits based
10    on false statements.  We have not gotten any
11    financial profit information from your client today.
12    I can't have a damage expert prepare a report on what
13    discouragement is appropriate or what amount of
14    damages should be awarded until I have that financial
15    data made available to me.
16                MR. HARDER:  Okay.  And then once you get
17    the financial data, I'm going to get the expert
18    report?
19                MR. DOROSHOW:  Assuming we get everything
20    we need in one shot, and we don't have to do this
21    piecemeal, that's true.
22                MR. HARDER:  In what time frame?
23                MR. DOROSHOW:  We can probably do that
24    within 30 days after receiving your data, assuming we
25    get everything we need.
```

4

Grasshopper House v. Accelerated Recovery                    Transcript of Proceedings

```
 1              MR. HARDER:  Well, 30 days is more than 30
 2    days after the expert disclosure cutoff.
 3              MR. DOROSHOW:  Counsel, I've stated my
 4    position.  If you want to disagree with me, that's
 5    fine.
 6              MR. HARDER:  Well, I do disagree with it.
 7    What about section two of your disclosures?
 8              MR. DOROSHOW:  The same problem.
 9              MR. HARDER:  What's the problem?
10              MR. DOROSHOW:  The problem is we don't
11    have your discovery.  We're still waiting for
12    discovery responses from you.
13              MR. HARDER:  You do have some discovery
14    responses.  What specifically do you need in order to
15    be able to designate an expert as to the industry
16    with respect to the term cure?  I don't understand
17    that.
18              MR. DOROSHOW:  Do you want me to explain
19    it to you?
20              MR. HARDER:  I do.  But let me say one
21    more thing.  You have Chris Prentiss's book.  You
22    have copies of the Passages' website and prior
23    versions of it.  You have the discovery that would
24    allow you to identify an expert on this topic.  And
25    you didn't do it by the discovery disclosure
```

5

Grasshopper House v. Accelerated Recovery                    Transcript of Proceedings

1    deadline.  So I just -- you know, I don't see any

2    excuse for this one.

3              MR. DOROSHOW:  Okay.  Do you want me to

4    speak now?

5              MR. HARDER:  Well, yes, you can.

6              MR. DOROSHOW:  Okay.  All right.  Your

7    client has not had his deposition taken yet, and

8    neither as Pax Prentiss.  And the reason we haven't

9    taken their depositions yet is because you are not

10   complying with the discovery order.  We don't have

11   all of your documents.  We only get one chance to

12   depose your clients.

13             The reason that we've waited to depose

14   them at the end of this discovery period is because

15   of your failure to produce records.  I want to do a

16   complete examination.  Until I get all of your

17   preliminary discovery, which was served over six

18   months ago in this case, have a chance to review it

19   and to take an examination of your clients, which I

20   was intending to do next week, until you told me they

21   were not available, we can't have an expert prepared

22   or ready to designate in this case in terms of

23   exactly what they are going to be saying and provide

24   an expert report.  That's the problem.

25             So by delaying and producing preliminary

6

1    discovery in this case for months, you are backing up

2    everything.   That's why I asked your office to

3    stipulate to extend the deadlines in this case.   When

4    you declined to do so, I did my best to designate who

5    I could at this point with the limited information I

6    have available.

7              MR. HARDER:  I'm reserving my right to

8    strike section two of your disclosure --

9              MR. DOROSHOW:  You have that right.

10             MR. HARDER:   -- and also whatever remedies

11   are available as to section one as well.

12             MR. DOROSHOW:  You have that right.   You

13   have that right.   You can reserve your rights.   I'm

14   reserving mine.

15             All right.   I'm going on now to the second

16   topic, unless you have anything more to add on that

17   subject?

18             MR. HARDER:  I don't.

19             MR. DOROSHOW:  Okay.   The depositions of

20   your clients scheduled for next week, when are your

21   clients available for their deposition?

22             MR. HARDER:  Well, they would be

23   available -- I'd have to check their schedules

24   precisely.   But once I can get your clients' depos --

25   if your clients' depositions happen in Atlanta, then

7