James E. Doroshow (State Bar No. 112920)
    jdoroshow@foxrothschild.com
Alan Chen (SBN 224420)
    achen@foxrothschild.com
FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Tel 310.598.4150 / Fax 310.556.9828

Attorneys for Defendant/Counterclaimant
Accelerated Recovery Centers, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRASSHOPPER HOUSE, LLC, a California limited liability company doing business as Passages Malibu, PASSAGES SILVER STRAND, LLC, a California limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> ACCELERATED RECOVERY CENTERS, LLC, a Georgia limited liability company, <br><br> Defendant. <br><br>_____ <br> And Related Counterclaims. | Case No. CV09-08128-DMG (PLAx) <br><br> **DISCOVERY MATTER** <br> **MAGISTRATE PAUL L. ABRAMS (LOCAL RULE 37)** <br><br> DECLARATION OF JAMES E. DOROSHOW IN OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION TO COMPEL DEPOSITIONS AND IN SUPPORT OF ACCELERATED'S REQUEST FOR MONETARY SANCTIONS <br><br> Hearing Date:  TBD <br> Time:          10:00 a.m. <br> Courtroom:    Courtroom G, 9th Floor <br><br> Discovery Cut-Off:  Nov. 1, 2010 <br> Pretrial Conf.:      Jan. 25, 2011 <br> Trial Date:           Feb. 22, 2011 |

LA1 57724v1 10/08/10

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150  Fax: (310) 556-9828

I, JAMES E. DOROSHOW, declare and state as follows:

1.      I am a partner at the law firm of Fox Rothschild LLP, attorneys for Defendant/Counterclaimant Accelerated Recovery Centers, LLC ("Accelerated") in this action.  I am duly licensed to practice law in the State of California and the United States District Court, Central District of California.  I know the following facts based upon personal knowledge, and if called to testify as a witness, I could and would testify competently to such facts.

The Parties.

2.      As it is set forth in the attached Declaration of my client, Kevin Kelly (Exhibit 1 hereto), Defendant Accelerated Recovery Centers, LLC ("Accelerated") is an alcohol treatment provider located in Atlanta, Georgia.  Accelerated specializes in a unique treatment alternative to the traditional 12 step method of treating alcoholism, featuring private, medically-supervised detoxification services, and continuing with intensive individualized treatment and alcoholism counseling programs tailored to the needs and schedules of each of its clients. Kelly Decl ¶ 2.

3.      In their Complaint, Plaintiffs Grasshopper House, LLC and Passages Silver Strand, LLC (collectively, "Grasshopper") allegedly they are operators of alcohol and drug treatment centers in Malibu, California.  *See* First Amended Complaint ("FAC").  Based upon information I have obtained in this lawsuit, it is my understanding that Grasshopper is owned and operated by Cross-defendants Chris Prentiss and his son, Pax Prentiss.  In its FAC, Grasshopper claims to own the unregistered marks "passages" and "passages malibu," including the right to exclude others from using such marks in connection with the treatment of addictive disease.  *See* First Amended Complaint at ¶ 15-27. [1]

---

[1]   Grasshopper maintains that Accelerated is engaged in "keyword advertising", and purchasing "sponsored links" so that when Goggle, Yahoo! and Bing users searched the Internet using keywords such as "Passages" or "Passages Malibu", "sponsored links" would appear in a special section of the Web page, allowing a user who had searched for the term "passages" to click on a link that would take him to the Accelerated Website.  Grasshopper alleges that such keyword advertising constitutes unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), and state law. (See FAC, D.I. 52, ¶¶ 15-27).

2

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150  Fax: (310) 556-9828

The Oregon Litigation.

4.      It is my understanding that this is the second lawsuit Grasshopper has filed against Accelerated based on allegations that Accelerated has violated the Lanham Act and other unfair competition laws through its use of keyword advertising using the "passages" and "passages malibu" marks.  I am informed that Grasshopper filed its first lawsuit against Accelerated in the District of Oregon *in July 2009, more than a year ago*. Copies of the Complaint and docket sheet from the Oregon case are attached hereto as Exhibit 2.

5.      I understand that Grasshopper sued Accelerated in Oregon despite the fact that Accelerated had no contacts there.  In his Opinion and Order dismissing the case for lack of jurisdiction, United States District Court Judge Haggerty wrote at page 6: "In fact, it appears the only connection this case has with the State of Oregon is the location of plaintiffs' counsel."  A copy of Judge Haggerty's Opinion and Order is attached hereto as Exhibit 3.

The History of Grasshopper's Claims in this Litigation.

6.      As appears of record herein, on November 5, 2009, after the Court dismissed the Oregon case, Grasshopper sued Accelerated again in this Court, again asserting alleged violations of the Lanham Act based on Accelerated's keyword advertising tied to the words "passages" and "passages malibu" on the internet.  Based upon my review of the allegations and claims in the Oregon Complaint and those in this action, most of the allegations in the complaint in this action are identical to those in Grasshopper's complaint in the Oregon action. (Compare D.I. 1 to Ex. 2 hereto.)

7.      On December 23, 2009, Accelerated filed an Answer denying the material allegations in Grasshopper's Complaint; together with Counter-claims against Grasshopper and its principals, Chris and Pax Prentiss (collectively, "Prentiss"), alleging, *inter alia*, false advertising under the Lanham Act (15 U.S.C. § 1125(a)) based upon Counterdefendants false assertion that they can "cure"

CASE NO. CV09-08128 DMG (PLAx)                                Declaration of James E. Doroshow

1   alcoholism and drug addiction when they know that there is no cure for such

2   addictive diseases.  On May 10, 2010, Accelerated filed its Amended Counter-

3   claims.

4       8.      On February 22, 2010, this Court (the Honorable Dolly M. Gee)

5   entered its Scheduling and Case Management Order for Jury Trial ("Scheduling

6   Order").  In the Scheduling Order, the Court ordered all discovery (including

7   hearings of *all* discovery motions) be completed no later than November 1, 2010.

8   The Court also included the following order with respect to discovery motions:

9           "*Any motion challenging the adequacy of response to*

10          *discovery must be filed, served and calendared sufficiently in*

11          *advance of the discovery cut-off date to permit the responses to*

12          *be obtained before that date, if the motion is granted*."

13          (Emphasis added).

14  *See* Scheduling Order at para. ¶ A. 3, pp. 2-3.

15      9.      Just five months ago, on April 5, 2010, almost a full year after

16  Grasshopper first filed its claims in Oregon, Grasshopper filed a motion for leave to

17  amend its claims in this case.  In the memorandum of points and authorities

18  submitted in support of this motion, plaintiffs' counsel represented that he had

19  recently substituted as counsel and then after "analyzing the facts and the law"

20  determined to seek leave to file the First Amended Complaint, including the same

21  unfair competition allegations related to keyword advertising Grasshopper

22  previously asserted in Oregon and in the original complaint in this case.  (D.I. 43 at

23  page 5 of 6, page *Id*., #440, lines 2-5.)  Plaintiff's counsel's April 5, 2010

24  declaration in support of the motion similarly recites that the First Amended

25  Complaint reflected his analysis of the facts and the law.  (D.I. 43-1 at page 4 of 5,

26  page i.d .# 444, line 27.)

27      10.     The Court granted the motion for leave to amend, and on May 10,

28  2010, *just four months ago*, Grasshopper filed its First Amended Complaint, which

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150  Fax: (310) 556-9828

CASE NO. CV09-08128 DMG (PLAx)                    Declaration of James E. Doroshow

LA1 57724v1 10/08/10

1  includes the same unfair competition allegations that formed the basis for the

2  Oregon case and the original complaint in this case, and which Grasshopper now

3  seeks to dismiss at this late date.  (*See* D.I. 52.)

4      <u>Grasshopper's Recently Filed Motion to Dismiss Its First Amended</u>

5      <u>Complaint</u>.

6      11.    On July 23, 2010, Grasshopper's counsel sent me a letter enclosing a

7  proposed stipulation to dismiss its First Amended Complaint.  A true and correct

8  copy of this July 23, 2010 letter and proposed stipulation from Plaintiffs' counsel is

9  attached hereto as Exhibit 4.

10     12.    As appears of record herein, Plaintiffs' counsel's July 23, 2010 letter

11 and proposed stipulation (Ex. 3) was sent to me three (3) days before Grasshopper

12 filed its Opposition to Accelerated's Motion to Compel Responses to Accelerated's

13 First Set of Interrogatories and First Set of Document Requests that resulted in this

14 Court's August 27, 2010 Discovery Order sanctioning Grasshopper and ordering

15 Grasshopper to respond fully to my client's outstanding discovery.  *See*

16 Grasshopper's Memorandum of Points and Authorities in Opposition to

17 Accelerated's Discovery Motion dated July 26, 2010.  Given the timing of

18 Plaintiffs' counsel's July 23, 2010 letter and proposed stipulation, and the filing

19 three (3) days later of Grasshopper's Opposition to my client's Motion to Compel,

20 it is clear that Grasshopper and its counsel offered to dismiss their claims in the

21 hopes of persuading this Court it would not be necessary to respond to a significant

22 amount of my client's outstanding discovery.  In fact, among other arguments

23 Grasshopper made in opposing Accelerated's Motion to Compel, even though it

24 had not yet filed a Motion to Dismiss its First Amended Complaint, Grasshopper

25 argued:

26         "Other demands have been rendered moot by Plaintiffs'

27         dismissal of the First Amended Complaint, such as Request for

28         Production Nos. 6, 7, 8, 9, 10, 11, 15, 16, 17, 18, 19, 21, 22,

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150  Fax: (310) 556-9828

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150  Fax: (310) 556-9828

1   23, 24, 25, 26, 27, 28, 29, 34, 42, 65, 67, 70, 88, 89 (document

2   [sic] relating to allegations in the First Amended Complaint)."

3   *Id*. At p. 6:2-7.2. [2]

4       13.    Despite telling this Court in its July 26, 2010 opposition to

5   Accelerated's Motion to Compel it was dismissing its First Amended Complaint,

6   *Grasshopper in fact waited six more weeks to file its Motion to Dismiss*.  In the end,

7   it was not until September 2, 1010, *after a year and a half of litigation and ten*

8   *months after this lawsuit was* filed, that Grasshopper filed a Motion with this Court

9   to dismiss all of its claims as stated in its First Amended Complaint.[3]

10      14.    Notwithstanding the Court's consideration and rejection of this

11  argument, Grasshopper remained defiant.  Thus, even though this Court (Hon.

12  Magistrate Abrams) granted Accelerated's Motion to Compel and ordered

13  Grasshopper, *inter alia*, to "provide all supplemental responses to Accelerated's

14  Interrogatories" that were the subject of the Motion, "without objections," no later

15  than ten (10) court days from the filing date of the Discovery Order (or on or before

16  September 13, 2010), on September 13, 2010, Grasshopper served Supplemental

17  Responses to Accelerated's Interrogatories stating, in two instances (in response to

18  Interrogatories Numbers 7 and 14) that:

19          "The information is relevant only to responding party's

20          first amended complaint.  Responding party has filed a Motion

21          to Dismiss its first amended complaint, which is set for hearing

22

23  [2]  This Court rejected this argument in its Discovery Order dated August 27, 2010, stated:  "To date, it appears no agreement [among counsel] concerning the proposed dismissal has been reached … No request for dismissal has

24  been filed with this Court.  Accordingly, contrary to Grasshopper's assertion, there is no indication that any discovery requests are now moot."  *See* Discovery Order, p. 9, fn 2.

25  [3] The stated basis for Grasshopper's desire to dismiss its claims, *i.e.*, that Accelerated has stopped using keyword

26  advertising tied to Grasshopper's alleged trademarks, is a pretext.  As stated in my client's attached Declaration (Exhibit 1 hereto), Accelerated continues to this day to place keyword advertisements on the Google, Yahoo!, and Bing search engines.  (*See* Kelly Decl. ¶ 2.)  Accelerated's advertisements display when the user searches the

27  keywords "passages" and/or "passages malibu."  (*Id*.)Currently, as in the past, if one searches Google, Yahoo! or Bing for the word "passages" or the words "passages malibu," depending on one's location, the time of day, and

28  other variables contained in those search engines' proprietary algorithms, one may see an advertisement for Accelerated displayed along with the search results.  *Id*. ¶ 3.

CASE NO. CV09-08128 DMG (PLAx)                                    Declaration of James E. Doroshow

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150  Fax: (310) 556-9828

1   on October 4, 2010.  If the motion is granted, the interrogatory

2   will be moot.  If the motion is denied, then responding party

3   will promptly provide the information required."

4   A true and correct copy of pages 13-14, 27-28 of Grasshopper's September 13,

5   2010 Supplemental Responses to Accelerated's First Set of Interrogatories is

6   attached hereto as Exhibit 5.  *To this day*, Grasshopper is still not in complete

7   compliance with this Court's Discovery Order.  Thus, among other records clearly

8   missing from Grasshopper's supplemental production, Grasshopper has failed to

9   produce underlying financial and accounting records since Grasshopper has merely

10  produced summaries of its revenues and profits, not the supporting accounting

11  records themselves.

12      16.    Thus, for its part, Grasshopper has refused to respond to Accelerated's

13  discovery (*even in the face of a Discovery Order directing it to comply*) while now

14  demanding (months after my client's responses were served) that Accelerated

15  respond fully to discovery, including discovery related to Grasshopper's claims as

16  found in its First Amended Complaint, and which Grasshopper has stated it

17  intended to dismiss.

18              The Discovery That Is Now the Subject of Plaintiffs'

19              Belated Motions to Compel.

20      17.    Although this lawsuit was filed *almost eleven months ago on*

21  *November 5, 2009,* Grasshopper has done virtually nothing to prepare this action

22  for trial in February 2011.  In fact, it is apparent Grasshopper never intended to

23  bring this case to trial.  While apparently assuming Accelerated would fold and

24  settle as others had done before it, my office has aggressively defended this action.

25  Not only has Accelerated vigorously defended Grasshopper's trademark claims, it

26  filed counterclaims on its own alleging, *inter alia*, that Grasshopper and its owners

27  (Chris and Pax Prentiss) were engaged in false advertising, including by falsely

28  claiming that they can "cure" alcoholism and other addictive diseases.  However,

1  now that Grasshopper realizes it has no support for its trademark claims and is

2  facing serious liability on Accelerated's false advertising claims, Grasshopper is

3  now asking the Court to allow it to dismiss its claims in the hope this will force a

4  global resolution of the entire litigation.[4]

5       18.     While my client and my office have been busy trying to prepare this

6  case for trial, including serving and moving to obtain written discovery, as well as

7  taking depositions, for its part, Grasshopper has done virtually nothing in ten

8  months to prosecute this action.  In fact, until September 2010, two months before

9  the November 1, 2010 discovery cutoff, Grasshopper merely served two sets of

10  interrogatories (one on behalf of Plaintiff Grasshopper and a second on behalf of

11  Plaintiff Silver Strand); as well as one set of document requests (on behalf of

12  Grasshopper).

13       Grasshopper's First Set of Interrogatories (Nos. 1-25).

14       19.     On April 23, 2010, *over five months* ago Plaintiffs served Accelerated

15  with Grasshopper's First Set of Interrogatories.  These interrogatories, *which are*

16  *now the subject of Grasshopper current Motions to Compel* scheduled to be heard

17  by this Court on October 26, 2010, relate to Accelerated's thirteen affirmative

18  defenses in this action, including Grasshopper's request for information relating to

19  facts, witnesses and documents that support my client's affirmative defenses.

20  Accelerated responded to these interrogatories on *June 4, 2010*, *over four months*

21  *ago.  For two months, Accelerated heard nothing from Grasshopper relating to this*

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150   Fax: (310) 556-9828

---

4  Grasshopper knows Accelerated is being defended by an insurer in this litigation.  The reason why it now wants to dismiss its claims one month before the discovery cutoff and five months before trial is because it hopes that by dismissing its claims, this will stop Accelerated's insurer from continuing to fund this litigation and force Accelerated to settle its counterclaims.  If this were not already clear enough from the manner this litigation has been conducted by Grasshopper, it has now been laid to rest by the conduct of Grasshopper and its counsel after Grasshopper filed it Motion to Dismiss its First Amended Complaint.  Indeed, after Grasshopper filed its Motion, Chris Prentiss and his counsel began a series of highly unethical *ex parte* communications with Accelerated's insurer trying to convince the insurer to settle the litigation and stating that Accelerated was somehow being unreasonable in refusing to settle.  While my office has requested Prentiss' counsel to meet in advance of filing a motion for attorney discipline based upon this ethical violation, counsel have failed to do so.  A true and correct copy of an email that I understand Chris Prentiss recently sent to my client's insurer (Hanover) after Plaintiffs filed their Motion to Dismiss is attached hereto as Exhibit 6 showing the improper *ex parte* communications with our insurers.

CASE NO. CV09-08128 DMG (PLAx)                    Declaration of James E. Doroshow

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150  Fax: (310) 556-9828

1  *discovery*.  In fact, as shown above, during this two months of inactivity (*i.e.*, on

2  July 23, 2010), Grasshopper's counsel contacted my office proposing to dismiss its

3  First Amended Complaint,

4      20.    Nevertheless, while Grasshopper was proposing to dismiss its claims,

5  and while refusing to respond to Accelerated's discovery (including arguing to this

6  Court in its *July 26, 2010* Opposition to Accelerated's Motion to Compel that it

7  need not respond to Accelerated's discovery because it was "moot" because of

8  Grasshopper's decision to dismiss its First Amended Complaint), Grasshopper

9  pressed my client for additional responses to Grasshopper's interrogatories, *even*

10  *though they related solely to Accelerated's defenses to Grasshopper's claims.*

11      21.    *On August 3, 2010*, over two months after Accelerated responded to

12  the discovery from my client, and while Grasshopper was refusing to respond to

13  any discovery relating to its claims, Grasshopper's counsel sent me an 8-page letter

14  demanding, *inter alia*, that my office confer with Grasshopper to discuss

15  supplementing its interrogatory responses relating to its affirmative defenses.  A

16  true and correct copy of counsel's August 3, 2010 letter is attached hereto as

17  Exhibit 7.

18      22.    If this were not unusual enough, when I made myself available to meet

19  with opposing counsel, and prepared myself to discuss this discovery with

20  opposing counsel, Grasshopper's counsel appeared at our August 20, 2010 meet

21  and confer and advised me *for the first time that he no longer needed the discovery*

22  *because Grasshopper intended to file a Motion to Dismiss its First Amended*

23  *Complaint*.  Immediately following the August 20, 2010 meeting, I sent

24  Grasshopper's counsel (Nicholas Merkin) the following confirming email:

25      "Your August 3, 2919 Correspondence and My Client's

26      Discovery Responses.  Even though you asked me to prepare

27      to discuss the discovery issues with you addressed in your

28      August 3rd correspondence, and I took time to prepare to do so,

9

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150  Fax: (310) 556-9828

1   you told me this morning that, because your client now

2   intended to file a motion to dismiss it claims, you considered

3   any issues related to our interrogatory responses to be "moot."

4   As such, I now consider this issue dead.  In terms of my

5   client's documents, you insisted that you still needed some

6   documents from my client because our Counterclaims

7   continued.  However, when I asked you to inform me which of

8   your document requests you wanted documents for, you

9   indicated you could not tell me and gave no indication that you

10   would parse the discovery to take into account the fact that you

11   now wanted to dismiss your affirmative claims.

12   A true and correct copy of my August 20, 2010 email to Mr. Merkin is

13   attached hereto as Exhibit 8.

14       23.    Even though Grasshopper initially asked to meet to discuss

15   Accelerated's responses to Grasshopper's interrogatories, there has never been any

16   follow-up, including any request to respond further to these interrogatories.  Thus, I

17   now understand them to be without dispute as outlined in my August 26, 2010

18   email.  (Exhibit 9).

19       <u>Silver Strand's First Set of Interrogatories (Nos. 1-13)</u>.

20       24.    On April 23, 2010, *over five months ago*, Plaintiff Silver Strand also

21   served Accelerated with a set of interrogatories.  These interrogatories, *which are*

22   *now the subject of one of Grasshopper's two Motions to Compel*, are scheduled to

23   be heard by this Court on October 26, 2010, and relate to Accelerated's

24   counterclaims, including asking for facts and witnesses that support Accelerated's

25   counterclaims.  *Accelerated also responded to this discovery on June 4, 2010, four*

26   *months ago*.  However, even though Grasshopper asked Accelerated to confer

27   about Grasshopper's interrogatories in August 2010, and Silver Strand is

28   represented in this action by the same counsel as Grasshopper, *I never heard*

CASE NO. CV09-08128 DMG (PLAx)                    Declaration of James E. Doroshow

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150  Fax: (310) 556-9828

1  *anything from Silver Strand's counsel relating to these interrogatory responses,*

2  *including in counsel's August 3, 2010 correspondence asking that Accelerated meet*

3  *to discuss Plaintiffs' other written discovery.*[5]

4        25.    Instead*, it was not until September 20, 2010, six weeks before the*

5  *November 1, 2010 discovery cutoff, and almost four months after Accelerated*

6  *responded to Silver Strand's Interrogatories, that Grasshopper first asked me to*

7  *meet to discuss Accelerated responses to these Interrogatories.*   At that time, Silver

8  Strand's counsel sent me a letter stating for the first time that, in his opinion, "very

9  little" information had been provided in response to "Grasshopper's [sic]

10  interrogatories," and that his office had purportedly been "waiting months for

11  responses;" and demanding "[f]ull and complete" responses within five days.   In

12  fact, as noted, I heard nothing from Silver Strand's counsel on my client's

13  discovery responses for over four months after responding to Silver Strand's

14  interrogatories.   A true and correct copy of Silver Strand's counsel's September 20,

15  2010 letter to me is attached hereto as Exhibit 10.[6]

16        26.    The next day, on September 21, 2010, I met with Silver Strand's

17  counsel at his office before a court reporter.   Remarkably, *even though I had heard*

18  *nothing from Silver Strand's counsel on the subject of Silver Strand's*

19  *interrogatories for almost four months after they were served on June 4, 2010,*

20  Silver Strand's counsel (Charles J. Harder) stated during the meet and confer that

21  his client "always expected full and complete responses to the Interrogatories."   A

22

23

24  [5]   In a transparent and fabricated effort to try to "cover its tracks," Grasshopper's counsel sent me a letter on
September 21, 2010 stating, *inter alia,* that he was supposedly following up on "previous meet and confer efforts

25  regarding this discovery" when in fact there had been none.   A true and correct copy of this September 21, 2010
letter is attached hereto as Exhibit 9.

26  [6]   Contrary to Local Rule 37-1, Silver Strand's letter failed to identify any specific issue on discovery requests
in dispute, and failed to state Silver Strand's position other than counsel believed all of the interrogatories were

27  purportedly incomplete.   Accordingly, prior to meeting, I asked Silver Strand's counsel to send me a letter
complying with these requirements of the rule.   Counsel failed to do so, instead demanding when I appeared at his

28  office on September 20, 2010 that I spend hours going through each and every discovery request (including 13
interrogatories and 133 document requests) to learn *for the first time* which specific discovery was in dispute.

1    true and correct copy of relevant pages of the September 21, 2010 transcript

2    containing Mr. Harder's comments are attached hereto as Exhibit 11.

3         27.    Yet, when I asked Mr. Harder why he and his client had waited nearly

4    *four months* after responses were served to raise any concerns about the responses,

5    and to do for the first time on the even of the discovery cutoff, Mr. Harder had no

6    explanation other than to state:  "[T]he discovery is still ongoing.  The discover

7    [sic] has not closed.  *I'm allowed to meet and confer with you anytime I want*

8    *during the discovery period*." *Id.*

9         28.    Having done nothing for four months, Silver Strand has now filed a

10   Motion to Compel on October 5, 2010, *less than a month before the November 1,*

11   *2010 discovery cutoff*.  Making matters worse, this Court is now being asked to

12   hear Silver Strand's Motion on October 26, 2010, *5 days before the November 1,*

13   *2010 discovery cutoff*.  The Motion is clearly untimely and brought in direct

14   violation of the Court's Scheduling and Case Management Order dated February

15   22, 2010, which provides, in relevant part, that:  "*[a]ny Motion challenging the*

16   *adequacy of responses to discovery must be filed, served and calendared*

17   *sufficiently in advance of the [November 1, 2010] discovery cutoff date to permit*

18   *the responses to be obtained before that date if the motion is granted*."  *See*

19   Scheduling Order at p. 2, ¶ 3 (emphasis added).

20        Grasshopper's Document Requests (Nos. 1-133).

21        29.    Like its two sets of interrogatories, Grasshopper served its First Set of

22   Responses for Production of Documents ("Document Requests") on April 23,

23   2010, *over five months ago*.  As my client did with Plaintiffs' other written

24   discovery, Accelerated responded to the Document Requests *on June 4, 2010,*

25   *nearly four months ago*.

26        30     After serving Accelerated's Responses, I again heard nothing from

27   Grasshopper's counsel asking for any documents to be produced *for two months*

28

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150   Fax: (310) 556-9828

CASE NO. CV09-08128 DMG (PLAx)                          Declaration of James E. Doroshow

LA1 57724v1 10/08/10

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150  Fax: (310) 556-9828

1  *until August 3, 2010*, when Accelerated's counsel demanded that all responsive

2  documents be produced within fifteen (15) days.  *See* Exhibit 6 hereto.

3       31.     Yet, as is evident from Grasshopper's Document Requests, many (if

4  not most) of the Requests ask for documents relating to Plaintiffs' claims as stated

5  in their First Amended Complaint.  *See e.g.*, Request Nos. 5-22, 49-41, 45, 54, 112-

6  117 (all relating to the term "passages" and other marks that are the subject of

7  Plaintiffs' trademark claim); Request Nos. 23, 37, 131-132 (relating to

8  Accelerated's online advertising and other marketing and sales activities, again all

9  related to Plaintiffs' trademark claim;)  Request Nos. 38-39 (relating to customer

10 confusion, also relevant to Plaintiffs' trademark claim); Request No. 42 (relating to

11 Plaintiffs' trademark claims); Request No. 42 (relating to potential customers and

12 their degree of care in selecting a service provider, again relating to Plaintiffs'

13 trademark claim); Request Nos. 46-57 (relating to Accelerated's revenues, profits

14 and customers, again relating to Plaintiffs' trademark claim); and Request Nos. 101

15 (other lawsuits involving trademark claims against Accelerated).

16      32.     When I met with Grasshopper's counsel on August 20, 2010, as

17 Grasshopper had done with its interrogatories relating to Accelerated's affirmative

18 defenses, Grasshopper's counsel again told me that since it intended to dismiss its

19 First Amended Complaint, *Grasshopper did not need documents from Accelerated*

20 *relating to Grasshopper's claims*. Again, see my August 20, 2010 confirming email

21 to Mr. Merkin's (Exhibit 8, para. 4) quoted in relevant part at paragraph 22 above.

22 At the same time, *Grasshopper's counsel was unprepared to parse its Documents*

23 *Requests to designate any documents it still needed due to the continued pendency*

24 *of Accelerated's counterclaims, including Accelerated's counterclaim for false*

25 *advertising under the Lanham Act*.

26      33.     Finally, due to the absence of a protective order at this time, I told

27 Grasshopper's counsel at the August 20, 2010 meeting that, when and if documents

28

CASE NO. CV09-08128 DMG (PLAx)                         Declaration of James E. Doroshow

1   were produced which were confidential in nature, the parties would need a

2   protective order in advance of production, if any.[7]

3       34.    In fact, although a protective order was entered by this Court on

4   August 27, 2010, *Grasshopper did not even send me a meet and confer letter*

5   *demanding any production until September 20, 2010, three weeks after the*

6   *protective order was entered and five and one-half weeks before the discovery cut-*

7   *off in this action.*  See Exhibit 9 hereto.

8       35.    Moreover, *contrary to the position that Grasshopper is now taking*

9   *with this Court in its Motion about how it now wants all documents responsive to*

10  *all 133 of its Requests*, in counsel's meet and confer letter dated September 20,

11  2010, *Grasshopper's counsel told me that he merely wanted documents relating to*

12  *Accelerated's counterclaims.*[8]  In Mr. Harder's words:  "Passages' [Grasshopper's]

13  Requests for Production to Accelerated request all documents *that support or relate*

14  *to each of Accelerated's Counterclaims in this action.*  If no documents are going to

15  be produced, then we request that Accelerated enter into a stipulation stating that it

16  has no documents in its possession, custody or control *that support its*

17  *Counterclaims.*  Otherwise, the documents should be produced by the end of this

18  week." .

19      36.    This exact statement was repeated by Mr. Harder at counsel's meet

20  and confer on September 21, 2010.  Again, in Mr. Harder's words:

21      "We've always expected full and complete Responses to

22      the Request for the Production of Documents *as it pertains to*

23      *the Counterclaims and all issues that have anything at all to*

24      *do with the Counterclaims.*

25

26  [7]  Grasshopper is now trying to argue that the absence of a protective order *is the only reason* Grasshopper didn't

27  push for production earlier.  This is clearly inconsistent with my emails following the August 20, 2010 meeting memorializing what was discussed and agreed upon. *Id.,* Ex. 7 (para. 4).

28  [8]  Remarkably, at the same time that it has refused to engage in discovery relating to its claims because Grasshopper states it intends to dismiss those claims, Grasshopper still insists that Accelerated [albeit belatedly] respond to discovery relating to claims Plaintiffs state they now intend to dismiss.

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150  Fax: (310) 556-9828

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150  Fax: (310) 556-9828

1   *As to the Interrogatories and document requests that are*

2   *specific that only deal with the First Amended Complaint only*

3   *… [w]e agree to put that off until after the Court has ruled on*

4   *our motion to dismiss the First Amended Complaint.*"

5   A true and correct copy of the transcript from the September 21, 2010

6   meeting at which Mr. Harder made this statement to me is attached

7   hereto as Exhibit 12.  (See Tr. at p.10, line 15 – p. 11, line 2).

8       37.    Notwithstanding these unequivocal written and oral statement by

9   Grasshopper's counsel to me, *later that same day*, on September 21, 2010,

10  Grasshopper's counsel faxed me a letter stating that he now wanted (within 8 days)

11  "all…responsive, non-privileged documents to each of the 133 document requests."

12  See Exhibit 8 hereto.  When I again conferred with Mr. Harder on September 23,

13  2010, I reminded him that until his September 21, 2010 letter he and his client had

14  only asked for documents relating to Accelerated's Counterclaims, Mr. Harder took

15  the position with me *for the first time* that, in his new view of the world, all of 133

16  documents requests were somehow relevant to Accelerated's Counterclaims.  A

17  true and correct copy of the relevant pages from the September 23, 2010 meeting

18  where Mr. Harder made this statement to me are attached hereto as Exhibit 13.

19      38.    As such, having sat on its rights: (i) for *five months* after serving its

20  document requests *on April 23, 2010*; (ii) *four months* after Accelerated served its

21  responses on June 4, 2010; (iii) *one month* after this Court entered its protective

22  order on August 27, 2010; and (iv) having previously told me that it no longer

23  needed any documents on discovery relating to Grasshopper's claims because of its

24  intent to dismiss them; Grasshopper now appears before this Court *ten months after*

25  *this lawsuit was filed and five days before the November 1, 2010 discovery cutoff*

26  demanding that this Court order Accelerated to produce documents responsive to

27  all 133 separate document requests!

28

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150  Fax: (310) 556-9828

<u>Plaintiffs' Belated Deposition Notices</u>.

39.     Although my office has noticed and taken four depositions in this action, *for ten months* Plaintiffs have never shown any interest in taking a single deposition in this action.  At the same time, they have been fully aware of this Court's Scheduling Order and the existing November 1, 2010 discovery cutoff.  In fact, until filing their current *ex parte* Application, Plaintiffs and their counsel have repeatedly taken the position with me that they would *not agree to any extension of the pretrial or trial deadlines in this action*.  Plaintiffs' efforts to now persuade this Court to extend the November 1, 2010 discovery cutoff is therefore directly contrary to the position they have taken with me on this issue in the past.

40.     Having never served a single deposition notice in this action *for ten months, on September 21, 2010, six weeks before the November 1, 2010 discovery cutoff*, Plaintiffs' counsel first served me with five deposition notices.  True and correct copies of the notices are attached as Exhibits 1 through 5 to Mr. Harder's Declaration in Support of Plaintiffs' *ex parte* Application.  Although Plaintiffs served these notices six weeks before the November 1, 2010 discovery cutoff, Plaintiffs and their counsel never informed me in advance of serving these notices of their intention to take any depositions in this action.  Nor did they contact me in advance of serving these notices to determine whether the dates they selected in Atlanta, Georgia (*i.e.*, October 6-8, 2010) were convenient for me or my clients.

41.     In fact, it is my understanding that my clients, Jan and Kevin Kelly, have two school age children.  As such, they cannot both possibly fly to California on short notice at the same time rather than have their depositions taken in Georgia where they reside, which is the location Plaintiffs originally noticed their depositions.  Moreover, the additional witnesses Plaintiffs seek to depose (including Dr. Richardson and Nurse Certain) have patients to care for.  Accelerated cannot shut down its facility for three days or longer simply because

CASE NO. CV09-08128 DMG (PLAx)                                    Declaration of James E. Doroshow
LA1 57724v1 10/08/10

1  Plaintiffs have now decided it is more convenient for them to take my clients'

2  depositions in Los Angeles.

3       42.    On September 22, 2010, having finally received more supplemental

4  information and documents from Plaintiffs in response to this Court's August 27,

5  2010 Discovery Order, I noticed the depositions of Counterdefendants Chris and

6  Pax Prentiss (and Grasshopper's bookkeeper, Anna James) to take place in my

7  office on September 30, and October 1 and 4, 2010.  True and correct copies of

8  these deposition notices are attached hereto as Exhibits 14-16.

9       43.    After serving these deposition notices, Plaintiffs' counsel (Charles J.

10  Harder) notified me that his clients would not appear for their depositions as

11  noticed.  He also insisted that his depositions of my clients take place first.

12       44.    In an effort to try to cooperate with  Mr. Harder, I told him I would

13  agree to allow him to proceed with my clients' depositions first if he would simply

14  apprise me within a week of mutually convenient dates for his clients' depositions.

15  This is clearly reflected in a letter I sent to Mr. Harder on October 6, 2010, a true

16  and correct copy of which is attached hereto as Exhibit 17.

17       45.    Despite this agreement, Mr. Harder failed to provide me with dates for

18  his clients' depositions.  Accordingly, on Monday, September 27, 2010, *a week*

19  *before Mr. Harder claims he first learned the Georgia depositions would not*

20  *proceed on the dates he selected*, I sent Mr. Harder an email stating that:  *"You'll*

21  *get dates from me [for my clients' depositions] when I get yours….*  Otherwise tell

22  them [your clients] to show up this week [for their depositions] as noticed."

23  (Emphasis added).  That same day, I sent Mr. Harder a second email stating:

24       *"My client Kevin Kelly will be in Los Angeles next*

25       *Monday for the hearing on your motion.  I'm going to suggest*

26       *you depose him next Tuesday [in Los Angeles] as a Rule 306b*

27       *witness and individually rather than in Atlanta.*

28

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150  Fax: (310) 556-9828

17

> *I'm reserving the right to produce the remainder of the
> people you want to depose until after we coordinate your
> clients depositions*."  (Emphasis added).

True and correct copies of my September 27, 2010 emails to Mr. Harder
are attached hereto as Exhibits 18 and 19.

46.   Despite these emails, *Mr. Harder did not respond and failed to
provide me with dates for his clients' depositions that week as we had agreed.*
Moreover, even though he and his clients are now seeking to compel Mr. Kelly to
come to Los Angeles for Accelerated's Rule 306b deposition and Mr. Kelly's
individual deposition, Mr. Harder never responded to my September 27, 2010
email proposing to produce Mr. Kelly for his deposition in Los Angeles earlier this
week.  Accordingly, on October 2, 2010, I sent Mr. Harder another email
confirming what I had clearly told him almost a week earlier on September 27,
2010:

> "Since  your have not agreed to produce your clients for their
> depositions, *as I told you*, we will not be producing ours next
> week.  This was your decision not mine.  *I postponed your
> clients depositions last week with the understanding I would
> have new dates from you last week.  They haven't been
> provided.  We are therefore not producing our clients for
> depositions in Atlanta next week.*"  (Emphasis added).

A true and correct copy of my October 2, 2010 email to Mr. Harder is
attached hereto as Exhibit 20.

47.   Given these clear communications, Mr. Harder's statements
about how he supposedly learned this "past weekend" for the first time
that my clients' depositions would not take place the week of October 6
to 8, 2010 is, of course, completely false and contrived.

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150  Fax: (310) 556-9828

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150   Fax: (310) 556-9828

48.     Equally false is Mr. Harder's assertion that: "[he and I] agreed to a meet and confer conference [on October 5, 2010] at 1:00 p.m. at [his] office to discuss this issue, but then [I] cancelled the meeting earlier today, before it occurred."  In fact, I was fully prepared to come to Mr. Harder's office on October 5, 2010 at 1:00 p.m. to discuss deposition scheduling, and merely asked that Mr. Nitti attend the meeting before a court reporter so that we could discuss Mr. Harder's and Mr. Nitti's improper *ex parte* communications with Accelerated's insurer at the same time.  As my emails on this subject plainly state, this was done so that we could avoid the cost of having two court reporters attend two separate meetings.  Also, as Mr. Harder was and is well aware, I had been asking Mr. Harder and Mr. Nitti for weeks to meet to discuss this matter, yet they failed and refused to do so in clear violation of Local Rule 7-3.[9]

49.     Contrary to Mr. Harder's statements in his Declaration (¶ 10), this is not an insignificant issue.  In fact, while it was Chris Prentiss who called Accelerated's insurer and sent them emails trying to convince them to settle this litigation without my knowledge or consent, Rule 2-100 of the California Rules of Professional Conduct plainly states that, while representing a client, an attorney shall not communicate "directly or indirectly" about the subject matter of the representation the attorney knows to be represented by another lawyer.  This includes communications with a represented party where as here an attorney has used his client to "lure" an opposing party into a conference behind

---

[9]  While Mr. Harder now states in his Declaration (¶10) that he and I had supposedly discussed this issue "in a prior meet and confer conference," as Mr. Harder knows, and in fact acknowledges in his Declaration *(Id.)*, he is not Chris Prentiss' counsel, Mr. Nitti is.  To date, Mr. Nitti has refused to meet with me to discuss this matter despite my repeated requests he do so.  In fact, he has never responded to any of my requests to meet to discuss this subject.

CASE NO. CV09-08128 DMG (PLAx)                                    Declaration of James E. Doroshow

1  opposing counsel's back.  See *Ables v. State Bar*, (1973) 9 Cal.3d 603,

2  607.

3       50.    Nevertheless, in my October 6, 2010 letter (Ex. 17 hereto), I told Mr.

4  Harder I remained willing to meet with him to discuss deposition scheduling.

5  Specifically, as my October 6th letter states:

6          "As you have repeatedly been told, *I stand ready,*

7  *willing and able to meet to this day with you and Mr. Nitti this*

8  *week to discuss deposition scheduling if you would simply*

9  *agree to discuss with me our contemplated motion regarding*

10  *your improper ex parte communications at the same time.  Are*

11  *you prepared to do so*?  If so, please propose a time and date.

12       51.    There is obvious linkage between further deposition

13  scheduling and the ethical issues raised by Plaintiffs' counsels' improper

14  *ex parte* communication with Accelerated's insurer in this case. In fact, it

15  was and is logical to discuss further discovery in this case with opposing

16  counsel while we discussed this ethical issue since opposing counsel may

17  have to recuse themselves if the Court finds an ethical violation has taken

18  place.  *See e.g.*, *Mills Land Water Co. v. Golden West Refining Co.*,

19  (1986) 106 Cal.App.3d 116, 128.  My office will be filing a motion with

20  this Court on this matter early next week.  Until then, this Court should

21  obviously be reluctant to grant current counsel the right to continue

22  prosecuting this action, including taking depositions of my clients at least

23  until the Court considers the ethical issue as well.

24       52.    At the same time I asked counsel to meet, I reminded Mr. Harder in

25  my October 6, 2010 letter (Ex. 17) of our obligations to do so.  Specifically, I

26  reminded him that Magistrate Abrams had ordered us to meet in person before a

27  court reporter to confer regarding all of discovery matters; and that the Local Rules

28  also require an in person meeting under Local Rule 37-1.  *Id.*

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150  Fax: (310) 556-9828

CASE NO. CV09-08128 DMG (PLAx)            Declaration of James E. Doroshow

FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-3005
Telephone: (310) 598-4150  Fax: (310) 556-9828

53.     Despite my October 6, 2010 letter, Mr. Harder again never responded. Instead, having failed and refused to meet with me, he filed this *ex parte* Application with this Court at 5:45 p.m. the following day, on October 7, 2010.

54.     *I never received notice of this ex parte Application from Mr. Harder or anyone else before it was filed.  In fact, I only learned of the Application when I received electronic notice from the Court on the evening of October 7, 2010.* Although I have since emailed Mr. Harder asking him why he never gave me notice of this Application, Mr. Harder again has never responded.

55.     Plaintiffs are in fact in the position they are in today because of their own ten months of nonfeasance and delay in prosecuting this action.  Having sat on their rights until the eve of the discovery cutoff, there is no basis for compelling Accelerated to comply with discovery which Plaintiffs could have moved on months ago and which they told Accelerated they did not need.[10]

56.     I have spent in excess of five hours in drafting this Opposition to Plaintiffs' *ex parte* Application.  My standard hourly rate is $550.  Accordingly, my client and my office request the sum of no less than $2,750 to compensate them for the expense of having to oppose this Application.

I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct.

Executed this 8th day of October, 2010 at Los Angeles, California.

By:  /s/ James E. Doroshow

---

[10]  Plaintiffs would also like this Court to believe Accelerated has been remiss in failing to provide final expert reports.  This too is completely false and disingenuous.  What Plaintiffs fail to inform this Court is that, notwithstanding an August 27, 2010 Discovery Order directing them to comply with their long overdue discovery obligations within ten (10) days of the filing of the Order, until recently, Plaintiffs failed to produce information and documents needed for Accelerated's experts to complete their analysis and reports, including information which the Magistrate ordered Plaintiffs to provide weeks ago.  Plaintiffs' counsel knows this because counsel discussed the matter before a court reporter and he acknowledged the problem his clients and he had created by this delay.  See Doroshow Decl., Ex. ¶ 57.  In addition, until this Court rules on Plaintiffs' Motion to Dismiss Grasshopper's First Amended Complaint, Accelerated obviously cannot determine what experts will be needed for trial, or what their expected testimony will be.