1  WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
   CHARLES J. HARDER (BAR NO. 184593)
2    charder@wrslawyers.com
   CHRISTOPHER J. HECK (BAR NO. 174647)
3    check@wrslawyers.com
   RYAN J. STONEROCK (BAR NO. 247132)
4    rstonerock@wrslawyers.com
   11400 West Olympic Boulevard, Ninth Floor
5  Los Angeles, California  90064-1582
   Telephone: (310) 478-4100/Facsimile:  (310) 479-1422
6
7  Attorneys for Plaintiffs/Counterdefendants
   GRASSHOPPER HOUSE, LLC and
   PASSAGES SILVER STRAND, LLC
8  and Counterdefendant PAX PRENTISS

9               UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11

12
   GRASSHOPPER HOUSE, LLC, a            Case No.: 2:09-cv-08128-DMG-PLA
13 California limited liability company
   doing business as "Passages Malibu," 
14 PASSAGES SILVER STRAND, LLC,         MEMORANDUM OF POINTS AND
   a California limited liability company, AUTHORITIES IN SUPPORT OF
15                                        OPPOSITION TO MOTION
                Plaintiffs,              FOR PROTECTIVE ORDER AND
16                                        FOR EVIDENTIARY HEARING
         v.                              AND SANCTIONS
17
   ACCELERATED RECOVERY
18 CENTERS, LLC, a Georgia limited
   liability company,                    Date:      November 8, 2010
19                                        Time:      10:00 a.m.
                Defendant.               Location:  Courtroom 7
20
21 AND RELATED COUNTER-CLAIM

22
        Plaintiff and Counterdefendants GRASSHOPPER HOUSE, LLC and
23
   PASSAGES SILVER STRAND, LLC and Counterdefendant PAX PRENTISS
24
   ("Plaintiffs" or "Grasshopper") hereby submit the following memorandum of
25
   points and authorities in support of their opposition to Defendant and
26
   Counterclaimant ACCELERATED RECOVERY CENTERS, LLC's ("Defendant"
27
   or "Accelerated") Motion for Protective Order to Prevent "Further Improper,
28
   Unsolicited, *Ex Parte* Communications," and Motion for Evidentiary Hearing and

1   For Sanctions.[1]

2

3                **MEMORANDUM OF POINTS AND AUTHORITIES**

4   **I.      INTRODUCTION**

5           Accelerated's motion is a misleading sideshow based on false premises.

6   First, there were no "ex parte" communications between counsel and any

7   represented party.  Rather, as the motion itself shows, the only communications

8   were between Chris Prentiss, Director of Grasshopper, and John Colleton of

9   Hanover Insurance Group, who is not even a party to this case.  Contrary to the

10  statements in Accelerated's brief, the communications themselves appear to have

11  been for the purpose of facilitating settlement.  Mr. Prentiss recounts past

12  settlement proposals and expresses his frustration that Accelerated refused

13  multiple settlement offers and refused even to allow Grasshopper to dismiss its

14  claims, because, as Accelerated's counsel admits in paragraph 3 of his declaration

15  in opposition, allowing Grasshopper to dismiss its claims would take away

16  Accelerated's insurance coverage, because that there is no coverage for a party to

17  pursue its affirmative counterclaims.  There should be nothing sanctionable about

18  a party discussing settlement with the insurer of another party.

19          Second, the request for an *in camera* review of documents and an

20  evidentiary hearing is baseless.  Any materials demanded by Accelerated's counsel

21  are plainly subject to the attorney client privilege.  Under the circumstances, the

22  only conceivable basis for a court to order an in camera inspection of privileged

23  documents is if the party seeking the inspection makes a showing that "*in camera*

24  review of the materials may reveal evidence to establish the claim that the crime-

25  _____

26          [1] Grasshopper objects to the untimely and improper filing of this motion.

27  Accelerated violated Local Rule 6-1 by filing the instant motion only twenty-seven (27)
    days prior to the scheduled hearing date. Local Rule 6-1 states, in pertinent part: "The

28  notice of motion shall be filed with the Clerk not later than twenty-eight (28) days
    before the date set for hearing…"

OPPOSITION TO MOTION FOR PROTECTIVE ORDER

1   fraud exception [to the attorney client privilege] applies." *United States v. Zolin*,

2   491 U.S. 554, 572 (1989).  No such showing is made or even attempted by

3   Accelerated in this motion.  Nor can Accelerated hope to establish some sort of

4   waiver of the privilege that would justify production of privileged materials to

5   anyone.

6        Third, Accelerated cites to no authority for why a party to this litigation

7   should be precluded from talking to another party.  Parties are free to talk to other

8   parties, and nothing about that raises any issues of professional conduct.

9        Fourth, Accelerated does not provide a single case to support its argument

10  that a court should sanction a party or its counsel for communications between the

11  represented parties.  No such authority exists.

12       The real purpose of this motion seems to be to distract from the implied

13  admission made by Accelerated's counsel in its opposition to Grasshopper's

14  motion to dismiss its own case, namely, that it does not want this case against its

15  clients to end, because it wants to keep getting its fees paid by its insurer

16  presumably to pursue its counterclaims for free.  Needless to say, Accelerated's

17  counsel, in taking this position, has become an obstacle to the settlement of this

18  matter.  Thus, Mr. Prentiss, on his own behalf and on behalf of Grasshopper, has

19  every right to communicate with another party directly.

20  **II.    ARGUMENT**

21       **A.    There Were No "Ex Parte" Communications Between Counsel**

22            **and a Represented Party, Only Permitted Communications**

23            **Between Represented Parties, and No "Protective Order" is**

24            **Warranted or Appropriate**

25       The California Rules of Professional Conduct, including Rule 2-100, apply

26  only to lawyers, not to represented parties.  As the Discussion to Rule 2-100

27  makes clear:

28

-2-

> Rule 2-100 is not intended to prevent the parties themselves from communicating with respect to the subject matter of the representation, and nothing in the rule prevents a member from advising the client that such communications can be made.

Indeed, a party to a litigation has a right to communicate with other parties, and that right is not somehow abrogated by the mere fact that both parties are represented in a particular matter.  Moreover, Accelerated cites no authority for its implicit argument that a represented party somehow must first seek permission from the other represented party's counsel before communicating with that other represented party.  No such authority exists. In fact, the old prohibition on represented parties communicating directly with other represented parties was removed to allow such communications and to further the sound policy of encouraging settlement between parties to a lawsuit.

Here, of course, the only communications, a phone call and an email, were between Chris Prentiss, Director of Grasshopper, and John Colleton of Hanover Insurance Group, Accelerated's insurer.  The telephone conversation apparently took place on September 17, 2010 and the email was sent later that same day.  See Doroshow Decl. Ex. E.  As the email states on its face, the materials being forwarded were being sent "as per [Mr. Prentiss'] telephone conversation with [Mr. Colleton] today," suggesting that Mr. Colleton knew these materials were forthcoming.

In addition, the communication itself is not for any ulterior or improper purpose, such as to seek informal discovery or to invade any privilege between Accelerated, its counsel, or its insurer.  Rather, it pertains to settlement, by providing information about settlement discussions to date, about the impasse reached due to what Mr. Prentiss believes is Accelerated's intransigence, and Mr. Prentiss' opinion as to the reason for Accelerated's peculiar refusal to "take yes for an answer" and allow Grasshopper to dismiss its case against it (namely, that if Grasshopper's claims are dismissed, Hanover will stop paying its counsel's legal

-3-

1  bills).  *See* Doroshow Decl. Ex. E.  None of the statements in the email are false;

2  they rely on the contents of written settlement offers and the statements in Mr.

3  Doroshow's own declaration in Opposition to Grasshopper's Motion to Dismiss

4  its First Amended Complaint, including his own statement of his fees and his

5  admission that, if Grasshopper's claims against Accelerated are dismissed,

6  Hanover will stop paying Mr. Doroshow's legal fees.  *See id.*  Where he is

7  estimating, as in the case of Accelerated's counsel's fees since July 2010, Mr.

8  Prentiss says so.  *See id.*

9        Based on this alone, the Court should disregard Accelerated's counsel's

10  hyperbolic assertions that the "sole purpose" of these communications from Mr.

11  Prentiss was to "deprive Accelerated of financial resources and thereby coerce

12  Accelerated into dismissing its counterclaims."  The obvious purpose was to

13  report regarding settlement efforts and obstacles.  And, Mr. Prentiss was well

14  within his rights as a litigant to do what he did.

15        Nor is there any rule that counsel must somehow discourage a client from

16  communicating with other represented parties.  While the old rule recommended

17  that counsel dissuade a client from communicating with another party, that has

18  changed.  Indeed, the State Bar of California's Formal Opinion No. 1993-131

19  (attached as Exhibit A to the Doroshow Declaration), recognizes that such

20  communications between represented parties can be "beneficial" and that attorneys

21  "may be failing to act competently by foreclosing opportunities to efficiently settle

22  or resolve the dispute" if they discourage such communications.

23        Accordingly, it follows that no protective order, such as that sought by

24  Accelerated or its counsel, is necessary here.  Nevertheless, to avoid any future

25  misunderstandings and wasteful motions like this, Grasshopper would not oppose

26  an order of this Court, equally applicable to all parties, that would require the

27  parties, through counsel, to alert the other party's counsel prior to initiating any

28  communications between the parties.

-4-

**OPPOSITION TO MOTION FOR PROTECTIVE ORDER**

**B.** **The Materials, If Any, Sought by Accelerated Are Privileged, and There is No Basis Whatsoever for An *In Camera* Production of Documents or An Evidentiary Hearing**

Acclerated's counsel is demanding production of notes, memoranda, correspondence, and electronic communications concerning the phone call and email between Mr. Prentiss and Mr. Colleton for *in camera* inspection by the Court. There can be no reasonable dispute that the documents that Accelerated is demanding be produced for inspection are subject to the attorney-client privilege. The attorney-client privilege is "the oldest and arguably most fundamental of the common law privileges recognized under Federal Rule of Evidence 501." *In re Napster, Inc. Copyright Litigation*, 479 F.3d 1078, 1090 (9th Cir. 2007). The privilege is "central to the legal system and the adversary process" and "deserving of unique protection by the courts." *Id.* at 1095 (*citing and quoting United States v. Hodge & Zweig*, 548 F.2d 1347, 1355 (9th Cir. 1977)). The policy of encouraging persons to seek legal advice without fear of adverse consequences precludes drawing a negative inference from a party's assertion of the attorney-client privilege. *Nabisco, Inc. v. PF Brands, Inc.* 191 F.3d 208, 226 (2nd Cir. 1999). Invalid disclosure of attorney-client communications creates "serious prejudice" and potentially irreparable consequences, even on any subsequent retrial *Bittaker v. Woodford*, 331 F.3d 715, 718 (9th Cir. 2003) (en banc).

Here, the only conceivably relevant exceptions the attorney-client privilege would be the crime fraud exception or some form of waiver. Turning to the first issue, where a party, such as Accelerated, seeks to have the court conduct an *in camera* review of potentially privileged communications, the United States Supreme Court has made the law crystal clear:

> Before engaging in *in camera* review to determine the applicability of the crime-fraud exception, the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person . . . that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.

-5-

*United States v. Zolin*, 491 U.S. 554, 572 (1989); *see also Unites States v. Chen*, 99 F.3d 1495, 1502-03 (9th Cir. 1996) (*citing and quoting Zolin*).

To make such a showing, Accelerated would have to demonstrate that Mr. Prentiss "was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further that scheme," and that the attorney-client communications, if any were "'sufficiently related to' and were made in furtherance of [the] intended, or present, continuing illegality." *Napster*, 479 F.3d at 1090 (*quoting In re Grand Jury Proceedings*, 87 F.3d 377, 381-82 (9th Cir. 1996)). Further, even if such a showing is made, the court must then consider, among other things, "the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through *in camera* review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply." *United States v. Zolin, supra,* 491 U.S. at 572.

Here, there is absolutely no evidence of any crime or fraud. Indeed, Accelerated does not make such a showing, nor even attempt to make one. Accelerated does not, and cannot with a straight face, claim that these communications were in furtherance of some scheme of criminal or fraudulent conduct. At most, Accelerated is claiming that there might have been a violation of the California Rules of Professional Conduct, a claim which Grasshopper vigorously denies. If Accelerated and its counsel want to make that complaint to the State Bar, they are free to do so. But any alleged violations of the ethical rules do not give Accelerated the right to compel disclosure of, or *in camera* review of, privileged communications, and Accelerated cites no authority suggesting otherwise. Moreover, in this instance, the communications sought by Accelerated are wholly unrelated to the subject matter of the dispute between the parties.

In that same vein, no issue of waiver is presented. No communications between Grasshopper's counsel and Grasshopper were disclosed, either

-6-

1  intentionally or inadvertently.[2] Fed. R. Evid. 502.  Nor is there any basis for the

2  Court to find some kind of implied waiver of the privilege.  Courts are very

3  cautious about finding an implied waiver of the attorney-client privilege.  *In re*

4  *Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)* 348 F.3d 16,

5  23 (1St Cir 2003) ("[W]e start with the unarguable proposition that the

6  attorney-client privilege is highly valued. Accordingly, courts should be cautious

7  about finding implied waivers.") It has been further noted that "case law reveals

8  few genuine instances of implied waiver. *Id.*  As such, courts find implied waiver

9  under only three circumstances, including when a client: "(i) testifies concerning

10  portions of an attorney-client communication, (ii) places the attorney-client

11  relationship itself at issue, or (iii) asserts reliance on an attorney's advice as an

12  element of a claim or defense)." *In re Keeper of Records , supra,* 348 F.3d at 24;

13  *See also Sedco Intern., S. A. v. Cory* 683 F.2d 1201, 1206 (8th Cir 1982).  None of

14  these circumstances is present here.

15          Further, when considering whether an implied waiver has occurred, the

16  Ninth Circuit conducts the following analysis:

17          First, the court considers whether the party is asserting the
        "privilege as the result of some affirmative act, such as

18          filing suit." (Citations).   Second, the court examines
        whether "through this affirmative act, the asserting party

19          puts the privileged information at issue." (Citation).
        Finally, the court evaluates whether "allowing the privilege

20          would deny the opposing party access to information vital
        to its defense." (Citation.)

21
   *U.S. v. Amlani* 169 F.3d 1189, 1195 (9th Cir 1999).  "Typically, the holder of the
22
   privilege resisting waiver voluntarily injects the content of the privileged
23
   communication into the suit by affirmatively asserting e.g., advice of counsel to
24

25

26  _____

27          [2]   Indeed, Mr. Harder, counsel for Grasshopper, was cognizant of this issue
   when questioned on the record by counsel for Accelerated, and he properly
28  refused to answer questions that could reveal attorney-client privileged
   information. *See* Doroshow Decl. Ex. H, at 12-13.

-7-

1  establish non-wilfulness." *Genentech, Inc. v. Insmed Inc.* 234 F.R.D. 667, 670
2  (N.D. Cal. 2006).[3]

3      In this instance, Plaintiffs have not done any affirmative act, such as filing
4  suit (or claiming an affirmative defense), that voluntarily injects their attorney-
5  client communications into the litigation.  Instead, Plaintiffs are asserting the
6  privilege in response to the instant motion.  Furthermore, and perhaps most
7  important, the purported attorney-client communications sought do not in any way
8  pertain to any defense or claim alleged by Plaintiffs or Accelerated.  Instead,
9  Accelerated has sought to create a sideshow that is ancillary to this case in
10 retaliation for Mr. Prentiss' truthful communications with the insurance company
11 that is admittedly paying defendants' attorneys' fees.

12     In sum, Accelerated and its counsel offer absolutely no authority to support
13 its request for an *in camera* review of documents or an evidentiary hearing.  This
14 is an irrelevant sideshow, and should be of no concern to this Court.
15 Accelerated's motion accordingly should be denied.

16 **C.    The Request for Sanctions is Unfounded and Frivolous**

17     Although not specified in its proposed order, Accelerated and its counsel
18 ask, in their notice of motion and point and authorities, for sanctions "including
19 dismissal, with prejudice, of Grasshopper's First Amended Complaint, and an
20 award of attorneys' fees and costs."  Accelerated cites no authority for this request,

21

22     [3]In *Bittaker v. Woodford* 331 F.3d 715, 720 (9th Cir 2003), the Ninth Circuit
23 described implied waiver of the attorney-client privilege as follows: "The court
imposing the waiver does not order disclosure of the materials categorically;
24 rather, the court directs the party holding the privilege to produce the privileged
materials if it wishes to go forward with its claims implicating them.  The court
25 thus gives the holder of the privilege a choice:  If you want to litigate this claim,
26 then you must waive your privilege to the extent necessary to give your opponent
a fair opportunity to defend against it. See, e.g., Amlani, 169 F.3d at 1195 (holding
27 that courts must evaluate 'whether allowing the privilege would deny the opposing
party access to information vital to its defense' (internal quotation marks omitted))
28 (Citation)."

-8-

1   and it merely seems to be a repackaging of its position in its opposition to

2   Grasshopper's motion to dismiss its first amended complaint.  In its lengthy

3   discussion of this Court's inherent powers to sanction, the motion fails to cite a

4   single case that would support these kinds of sanctions for a communication

5   between two parties to a lawsuit.  Instead, none of the cases cited are even

6   remotely like the instant case.

7        For example, in *Chambers v. Nasco, Inc.* (1991) 501 U.S. 32, 41, the

8   District Court imposed a sanction of attorneys' fees on defendants, because the

9   defendants had "(1) attempted to deprive this Court of jurisdiction by acts of fraud,

10  nearly all of which were performed outside the confines of this Court; (2) filed

11  false and frivolous pleadings, and (3) attempted, by other tactics of delay,

12  oppression, harassment and massive expense to reduce plaintiff to exhausted

13  compliance."  In *Aloe Vera of America, Inc. v. U.S.* (9th Cir 2004) 376 F.3d 960,

14  965, sanctions were awarded against Aloe Vera because the District Court found

15  that it had "willfully violated" its order by "attempting to disclose...confidential

16  information to a broader audience than the court had authorized."  The court in

17  *Nat'l Hockey League v. Metro. Hockey Club, Inc.* (1976) 427 U.S. 639, 640-641

18  upheld or dismissed plaintiffs' antitrust action for failure to comply with its

19  discovery order, stating:

20      After seventeen months where crucial interrogatories

21  remained substantially unanswered despite numerous extensions granted at the eleventh hour and, in many instances, beyond the eleventh hour, and notwithstanding

22  several admonitions by the Court and promises and commitments by the plaintiffs, the Court must and does

23  conclude that the conduct of the plaintiffs demonstrates the

24  **callous disregard** of responsibilities counsel owe to the Court and to their opponents. The practices of the plaintiffs exemplify **flagrant bad faith** when after being expressly

25  directed to perform an act by a date certain, Viz., June 14, 1974, they failed to perform...(Emphasis added.)

26       Moreover, in *Fink v. Gomez* (9th Cir 2001) 239 F.3d 989, 994, the Ninth

27  Circuit reversed the District Court's finding that sanctions could not be imposed

28  for "an attorney's reckless misstatements of law and fact", holding that "an

-9-

1    attorney's reckless misstatements of law and fact, when coupled with an improper

2    purpose, such as an attempt to influence or manipulate proceedings in one case in

3    order to gain tactical advantage in another, are sanctionable under a court's

4    inherent power."

5          Finally, in *Roadway Express v. Piper* (1980) 447 U.S. 752, 754-756, the

6    counsel for the plaintiffs were sanctioned, in the form of attorneys' fees, for (1)

7    failing to provide interrogatory responses in violation of a court order; (2) failing

8    to produce at least one of their clients' for deposition; (3) failing to file a certain

9    brief as ordered by the Court; and (4) failing to inform their clients that the case

10   was a class action.  In awarding sanctions, the District Court "sharply criticized

11   the [attorneys] for their 'deliberate inaction' in handling the case" and "concluded

12   that the three lawyers 'improvidently enlarged and inadequately prosecuted' the

13   action." *Id* at p. 756.

14         As stated above, the conduct in this instance were merely communications

15   between a party and the opposing party's insurance carrier that were designed to

16   facilitate settlement.  It is undisputed that these types of communications are

17   encouraged, as they often facilitate settlement of a case.  The mere fact that

18   counsel for the insured and insurer did not approve of the content of the direct

19   communication of the parties does not mean that such communications are

20   sanctionable under the authorities cited in the moving papers.

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

OPPOSITION TO MOTION FOR PROTECTIVE ORDER

## III.   <u>CONCLUSION</u>

Based upon the foregoing, Plaintiffs respectfully request that the Court deny Accelerated's motion in its entirety or, at the very most, issue the protective order discussed above.

DATED: October 18, 2010          WOLF, RIFKIN, SHAPIRO
                                 SCHULMAN, & RABKIN LLP


                                 By:   /s/ Christopher J. Heck
                                       CHRISTOPHER J. HECK
                                       Attorneys for Plaintiffs and
                                       Counterdefendants
                                       GRASSHOPPER HOUSE, LLC,
                                       PASSAGES SILVER STRAND, LLC,
                                       and Counterdefendant PAX PRENTISS

-11-

OPPOSITION TO MOTION FOR PROTECTIVE ORDER